# In the United States Court of Appeals for the Federal Circuit

JAMES R. RUDISILL,

*Claimant-Appellee,*

*v.*

ROBERT L. WILKIE,
Secretary of Veterans Affairs,

*Respondent-Appellant.*

**On Appeal from the United States Court of Appeals for Veterans Claims
No. 16-4134, Judges Schoelen, Bartley, and Allen**

## BRIEF OF RESPONDENT-APPELLANT ROBERT L. WILKIE, SECRETARY OF VETERANS AFFAIRS

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

MARTIN F. HOCKEY, JR.
Deputy Director

OF COUNSEL

Y. KEN LEE
Deputy Chief Counsel

BRYAN THOMPSON
U.S. Department of Veterans Affairs
810 Vermont Ave
Washington, DC 20420

GALINA I. FOMENKOVA
Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 514-5495

*Attorneys for the Secretary*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF RELATED CASES .................................................. 1

STATEMENT OF THE ISSUE .......................................................... 2

JURISDICTIONAL STATEMENT ...................................................... 2

STATEMENT OF THE CASE SETTING FORTH RELEVANT FACTS ............. 3

    I.    The Statutory Scheme ........................................................ 3

        A.    38 U.S.C. § 3322 ...................................................... 6

        B.    38 U.S.C. § 3327 ...................................................... 8

        C.    38 U.S.C. § 3695 .................................................... 10

    II.    Mr. Rudisill's Service And Use Of Education Benefits ..................... 11

    III.    The Veterans Court Majority Decision ............................... 13

    IV.    The Veterans Court Dissent ........................................... 16

SUMMARY OF THE ARGUMENT ................................................... 20

STANDARD OF REVIEW ............................................................. 23

ARGUMENT ........................................................................... 23

    I.    The Veterans Court Erroneously Disregarded § 3327, Which Specifically And Directly Addresses Mr. Rudisill's Situation .......... 23

        A.    § 3327(a) Defines The Veterans To Whom It Applies ............. 24

        B.    § 3327(d) Limits The Benefits These Veterans Can Receive ................................................................ 27

        C.    The History Of § 3327 Confirms That Congress Did Not Intend To Exclude Veterans With Multiple Periods Of Service ................................................................ 28

        D.    The Veterans Court's Decision Is Not More "Veteran-Friendly" ....................................................... 31

    II.    The Veterans Court Erred In Holding That § 3322(d) Only Applies To Veterans With A Single Period Of Service ..................... 33

        A.    § 3322(d) On Its Face Applies To All Veterans With Dual Entitlement ....................................................... 33

      B.      § 3322(h) Confirms That § 3322(d) Applies To All Veterans With Dual Entitlement, Including Veterans With Multiple Periods of Service ...............................................36

III.     The Veterans Court's Interpretation Of § 3322(a) And § 3695 Cannot Change The Unambiguous Directives Of § 3322(d) And § 3327 ..........................................................................................41

      A.      The "Ambiguity" Perceived By The Veterans Court In § 3322(a) Does Not Affect The Plain Meaning Of §§ 3322(d) And 3327 ................................................................41

      B.      Enforcing The Plain Meaning Of § 3322(d) And § 3327 Does Not Nullify § 3695 ...........................................44

IV.     Policy Arguments Are For Congress Not The Courts .......................46

CONCLUSION .......................................................................................48

ii

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ali v. Fed. Bureau of Prisons*,
    552 U.S. 214 (2008)........................................................ 22, 26, 47, 48

*Carr v. Wilkie*,
    No. 19-2441 (Fed. Cir. June 11, 2020) ....................................... 45, 46

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000)..................................................................... 43

*Frederick v. Shinseki*,
    684 F.3d 1263 (Fed. Cir. 2012) .................................................. 3, 23

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
    140 S. Ct. 768 (2020).................................................................. 47

*Loughrin v. United States*,
    573 U.S. 351 (2014)........................................................... 22, 36, 40

*Montelongo v. OPM*,
    939 F.3d 1351 (Fed. Cir. 2019) ................................................... 26

*Nat'l Advanced Sys. v. United States*,
    26 F.3d 1107 (Fed. Cir. 1994) ...................................................... 26

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005)..................................................................... 29

*O'Brien v. Wilkie*,
    948 F.3d 1339 (Fed. Cir. 2020) ................................................... 47

*Park 'n Fly v. Dollar Park & Fly*,
    469 U.S. 189 (1985)............................................................... 22, 24

*Pitsker v. Office of Pers. Mgmt.*,
    234 F.3d 1378 (Fed. Cir. 2000) ................................................... 40

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012)............................................................... 22, 45

*Russello v. United States*,
464 U.S. 16 (1983) ........................................................................ 36, 40

*Sucic v. Wilkie*,
921 F.3d 1095 (Fed. Cir. 2019) ................................................... 23, 24

*United States v. Clintwood Elkhorn Mining Co.*,
553 U.S. 1 (2008) ................................................................................ 30

*United States v. Naftalin*,
441 U.S. 768 (1979) ............................................................................ 47

*Wanless v. Shinseki*,
618 F.3d 1333 (Fed. Cir. 2010) ......................................................... 25

*Williams v. Principi*,
275 F.3d 1361 (Fed. Cir. 2002) ........................................................... 3

*Williams v. Taylor*,
529 U.S. 362 (2000) ............................................................................ 40

## STATUTES

38 U.S.C. § 3011 ............................................................... 4, 29, 31, 32

38 U.S.C. § 3311 .................................................................... 4, 29, 35

38 U.S.C. § 3322 .................................................... 6-8, 14, 21, 33-36, 42

38 U.S.C. § 3327 ....................................... 8-10, 21, 24, 27, 28, 30, 32, 42, 45

38 U.S.C. § 3695 ................................................................ 10, 11, 44, 45

38 U.S.C. § 7292 .................................................................................. 2

## REGULATIONS

38 C.F.R. § 21.4022 ......................................................................... 43, 45

38 C.F.R. § 21.9550 ......................................................................... 43, 45

38 C.F.R. § 21.9635 ............................................................................... 45

iv

38 C.F.R. § 21.9690 ......................................................................... 43, 45

## OTHER AUTHORITIES

110 P.L. 252, 122 Stat. 2323 ............................................... 8, 9, 23, 30, 34

111 P.L. 377, 124 Stat. 4106 ........................................................... 35

114 P.L. 315, 130 Stat. 1536 ...................................................... 23, 34

S. Hrg. 110-379 ........................................................................... 4, 29

S. Hrg. 110-675 ......................................................................... 4, 5, 29

S. Rpt. 111-346 ............................................................................ 37, 44

## STATEMENT OF RELATED CASES

No appeal from this civil action was previously before this or any other appellate court, other than the Court of Appeals for Veterans Claims from which the decision is being appealed.

Per the Practice Note to Rule 47.5, counsel is not aware of any case that is currently pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUE

Whether the Court of Appeals for Veterans Claims (Veterans Court) misinterpreted the plain language of 38 U.S.C. §§ 3322 and 3327 in holding that the election provisions expressly contained therein do not apply to Mr. Rudisill because he had multiple periods of qualifying service.

## JURISDICTIONAL STATEMENT

This Court possesses jurisdiction to review a decision of the Veterans Court "with respect to the validity of a decision of the Court on … any statute or regulation … or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision."  38 U.S.C. § 7292(a).  In this case, the Veterans Court's decision is predicated on its misinterpretation of 38 U.S.C. § 3322 and erroneous disregard of 38 U.S.C. § 3327, statutes which govern the coordination of education benefits under multiple programs, including specifically the Montgomery GI Bill (MGIB) and the Post-9/11 GI Bill (Post-9/11) that are at issue in this case.  The court misconstrued § 3322(a) as rendering §§ 3322(d) and 3327 not applicable to veterans with multiple periods of qualifying service and held that the election provisions contained in those statutes, therefore, do not apply to Mr. Rudisill.  *See* Appx9-30. The Secretary's challenge to that statutory interpretation constitutes a question of law within this Court's jurisdiction.  *See* 38 U.S.C. § 7292(d)(1).

After announcing the statutory interpretation challenged in this appeal, the Veterans Court reversed the Board of Veterans' Appeals (Board) decision under review and remanded this matter to the Board for further proceedings. Appx30. That remand does not deprive this Court of jurisdiction to consider this appeal.

This Court has held that "non-final" remand orders from the Veterans Court are nevertheless reviewable "when the Veterans Court has rendered a clear and final decision on a legal issue that will directly govern the remand proceedings, and there is a substantial risk that the issue will not survive a remand." *Frederick v. Shinseki*, 684 F.3d 1263, 1265 (Fed. Cir. 2012) (citing *Williams v. Principi*, 275 F.3d 1361, 1364 (Fed. Cir. 2002)). Those requirements are satisfied here "because the appeal presents the question of the proper interpretation of a statute." *Frederick*, 684 F.3d at 1265.

## STATEMENT OF THE CASE SETTING FORTH RELEVANT FACTS

I.    The Statutory Scheme

This case is principally about Post-9/11 education benefits, which were established by Congress through the Post-9/11 Veterans Educational Assistance Act of 2008 (Act), codified at Chapter 33 of Title 38. Specifically, this case is about the interaction Congress intended between the Post-9/11 program and the MGIB program, which was the main educational assistance program in existence

for active duty servicemen before the Post-9/11 bill was enacted.[1]

The Post-9/11 bill provides for 36 months of education benefits for veterans who served on active duty after September 11, 2001; under MGIB, veterans are eligible to receive 36 months of benefits for active duty service after June 30, 1985.  Appx3.  Thus, service after September 11, 2001 could count toward eligibility for either or both programs.

The programs are structured similarly in that each requires a minimum amount of active duty service to qualify for benefits, and under both GI bills the length of service (up to certain thresholds) may increase the amount of benefits that would be paid out.  However, unlike the MGIB program, the Post-9/11 bill counts *aggregate*, rather than only continuous service—in other words, in enacting the Post-9/11 program, Congress specifically envisioned veterans serving multiple, possibly intermittent, tours of duty, and relying on the sum total of that service to obtain benefits.  *Compare*, *e.g.*, 38 U.S.C. § 3311(b)(1)(A) (allowing aggregate service) with 38 U.S.C. § 3011(a)(1)(A)(i) (requiring continuous service); *see also* S. Hrg. 110-379 at 9 (Question 2), available at https://www.govinfo.gov/content/pkg/CHRG-110shrg38292/pdf/CHRG-110shrg38292.pdf; S. Hrg. 110-675 at 66-

---

[1]  MGIB benefits based in whole or in part on active duty service are codified in Chapter 30 of Title 38; MGIB benefits based exclusively on reserve duty are codified in Chapter 1606 of Title 10.  Unless otherwise noted, we will use "MGIB" to refer to chapter 30 benefits as Mr. Rudisill had active duty service.

67, available at https://www.govinfo.gov/content/pkg/CHRG-110shrg42406/pdf/

CHRG-110shrg42406.pdf.

In addition, the way that the education benefits are calculated is different: MGIB pays out a fixed monthly stipend, regardless of the cost of tuition, and does not separately pay for books or living expenses; whereas, as of 2011, the Post-9/11 program pays the net cost for in-state tuition and fees, a monthly stipend equal to the basic monthly military housing allowance in the area in which the campus is located, and a lump sum payment for books. Appx3-4. In most cases, the Post-9/11 benefits—tied at least in part to the actual costs to the veteran—will exceed MGIB's flat rate.[2] There are a number of other differences between the two programs, but the specifics of the benefits on offer is not at issue here.

In enacting the Post-9/11 GI bill, Congress departed from its past practice with GI bills in several respects, most notably for purposes of this case, by creating a situation where two education programs for active duty service run in parallel. First, Congress did not sunset or otherwise eliminate the MGIB program (all prior iterations of the GI bill were either self-terminating or were terminated upon the passage of a new program), and second, Congress established the eligibility criteria for Post-9/11 benefits retroactively to include a period of service that was already

---

[2] The fixed MGIB stipend could exceed the variability of the Post-9/11 benefits when cost of living and cost of tuition are both low, such as, for example, a community college in a low-cost-of-living area.

covered by the exiting MGIB program (some prior GI bills were retroactive in defining the eligible service, and MGIB allowed veterans to roll-over benefits from terminated programs, but in all prior iterations, each GI bill covered its own non-overlapping period of service). *See generally* Appx86-91 (Mr. Rudisill describing the history of GI bills at the Veterans Court). Therefore, when Congress created the Post-9/11 program, it faced, for the first time, the issue of how to coordinate benefits for active duty service between two overlapping and on-going programs.

Congress addressed the limits of dual eligibility and entitlement for Post-9/11 benefits, MGIB benefits, and other educational assistance programs that veterans and their families might be eligible for in several provisions—as most pertinent to this case, in 38 U.S.C. §§ 3322 and 3327, as part of the Post-9/11 bill itself, and in the catch-all provision, 38 U.S.C. § 3695.

A.    38 U.S.C. § 3322

Section 3322 establishes a presumptive "bar to duplication of educational assistance benefits," with subsections that address particular situations. Appx42-43. For example, § 3322(a) prohibits receipt of Post-9/11 benefits "concurrently" with other identified programs, including, but not limited to MGIB.[3] Sections

---

[3] In addition to Post-9/11 and MGIB (chapter 30), § 3322(a) covers eight other assistance programs: chapter 31 (Vocational Rehabilitation and Employment), chapter 32 (Post-Vietnam Era Veterans' Educational Assistance Program), chapter 35 (Survivors' and Dependents' Educational Assistance Program), chapter 107 (Selective Reserve Educational Assistance Program), chapter 1606 (MGIB,

3322(b), (c), and (h) prohibit double-counting a single period of service to meet the eligibility criteria for both Post-9/11 benefits and another program specified therein. The Post-9/11 program also allows an individual to receive benefits based on a family member's service, and §§ 3322(e) and (g) bar an individual who may claim multiple forms of transferred entitlement (*e.g.*, one from each parent) from using them concurrently for a single period of school. Section 3322(f) bars an individual from receiving enumerated non-education benefit payments after an individual begins an educational program under a particular provision of the Post-9/11 bill. None of these prohibitions or bars are directly at issue in this case, although it is notable that these seven of the eight provisions of § 3322 operate in the negative—they identify situations where multiple entitlements *cannot* be used.

Section 3322(d) is different. Unlike the other provisions of § 3322, § 3322(d) (in addition to being directly at issue here) imposes neither a prohibition nor a bar. Rather, entitled "additional coordination matters," § 3322(d) directs that for "individual[s] entitled to educational assistance under" both Post-9/11 and specified other programs,[4] the "coordination of entitlement to educational

_____

Selected Reserve), chapter 1607 (Reserve Educational Assistance Program), § 510 (National Call to Service), and the Hostage Relief Act of 1980.

   [4] The programs identified in § 3322(d) largely overlap with the programs identified in § 3322(a), but they are not identical. Section 3322(d) does not include § 510 (National Call to Service) (which § 3322(a) does), but does include individuals "making contributions toward entitlement toward educational

assistance" under these programs "shall be governed by the provisions of section 5003(c) of the Post-9/11 [Act]." Thus, if a would-be-student is not barred from using multiple programs by one of the other subsections of § 3322, § 3322(d) directs how these programs are to be coordinated, *viz.* under the terms of § 5003(c).

The overall structure of § 3322 forms a logical progression—an identification of situations where no coordination is necessary because the use of a second program is precluded, and a direction of where "additional coordination matters" are addressed for the delta, situations where receipt of benefits under multiple programs is not otherwise prohibited in § 3322.[5]

Section 5003(c) of the Post-9/11 Act—referenced in section 3322(d)—was later codified at 38 U.S.C. § 3327.

B.     38 U.S.C. § 3327

Of all of the statutory sections implicated by this case, only § 3327 (Appx43-46) has provisions that are exclusively focused on the interaction between the MGIB and Post-9/11 programs. Indeed, § 5003(c) of the Post-9/11 Act—which contained the same limitations that are at issue here that were later

_____

assistance under [MGIB], as of August 1, 2009" (which § 3322(a) does not).

  [5] This logical progression—establishing the rules for those individuals who passed through the gauntlet of the preceding restrictions—was even more obvious in the original enactment, when § 3322(d) was the last subsection. *See* 110 P.L. 252, 122 Stat. 2323, 2373-74.

8

codified as part of § 3327—was entitled "Applicability to Individuals Under Montgomery GI Bill Program." 110 P.L. 252, 122 Stat. 2323, 2375.

Section 3327(a) permits an individual who was eligible for MGIB (or the selected reserve duty programs) and meets the requirements for Post-9/11 benefits to "elect to receive educational assistance under" the Post-9/11 program. In other words, this section specifically addresses those veterans who have dual MGIB and Post-9/11 entitlement.

In particular, § 3327(a)(1)(A) authorizes veterans who have used some, but not all, of their MGIB benefits to switch to using Post-9/11 benefits. However, § 3327(d)(2)(A) limits the entitlement to Post-9/11 benefits for that particular subset of veterans to "the number of months of unused entitlement of the individual under" MGIB "as of the date of the election."

In addition to § 3327(a)(1)(A) and (d)(2)(A), which are directly implicated by Mr. Rudisill's election, § 3327 also includes a number of other provisions that address how the receipt of Post-9/11 benefits interacts with the receipt of MGIB benefits. For example, § 3327(b) allows the veteran to stop making contributions under MGIB once he or she elects to receive Post-9/11 benefits, and § 3327(f) repays the contributions previously made in order to become eligible for MGIB benefits, pro rata to the benefits relinquished by the election.[6]  Section 3327(g)

_____

[6] The Post-9/11 program, unlike MGIB, does not require contributions.

directs that the veteran can continue to receive certain additional payments that were available to the veteran under MGIB even after the election, *i.e.* it increases the Post-9/11 payments the veteran would otherwise receive.

Sections 3327(e) and (h) are ameliorative provisions, that soften the "irrevocable" nature of the election under § 3327(i).  Specifically, § 3327(e) allows VA to pay benefits at the MGIB level if an educational program is covered under MGIB but not Post-9/11, and § 3327(h) allows the Secretary to override an election between MGIB and Post-9/11 benefits that "is clearly against the interests of the individual."

Finally, the MGIB program allows individuals to transfer entitlement to family members in some circumstances, and § 3327(c) addresses the ability of an individual to revoke unused benefits previously transferred to another so that the eligibility becomes part of his or her own Post-9/11 entitlement instead.

C.    38 U.S.C. § 3695

38 U.S.C. § 3695 (which was amended to add a reference to the Post-9/11 program in 2008, but has been codified in some manner since 1968) establishes a catch-all aggregate cap of 48 months on the receipt of assistance under "two or more [of the listed] provisions."[7]  Notably, § 3695 does not affirmatively establish

---

[7] In circumstances not applicable here, this default can be extended.  *See* 38 U.S.C. § 3695(b) and (c).

the length of assistance to which a veteran would be entitled to under any particular program, it merely functions as an overall ceiling—notwithstanding the length of benefits provided by any listed program individually, a veteran receiving assistance from more than one program is limited to 48-months total across all the identified programs combined. Although both MGIB (chapter 30) and Post-9/11 (chapter 33) are included in the list, this section is not focused on these programs; indeed, the list covers more than a dozen others.

II.    Mr. Rudisill's Service And Use Of Education Benefits

There is no dispute that Mr. Rudisill met the eligibility criteria for both MGIB and Post-9/11 programs. Appx57. In total, Mr. Rudisill had three intermittent periods of active duty service in the United States Army and Army National Guard. Mr. Rudisill first enlisted in the Army from January 2000 to June 2002. Mr. Rudisill next served on active duty in the Army National Guard from June 2004 through December 2005. Appx57; Appx4. After each of these first two tours of duty Mr. Rudisill used MGIB benefits to pursue a college degree. In total, he used 25 months and 14 days of his 36-month benefit entitlement, leaving 10 months and 16 days of his MGIB entitlement unused. Appx57; Appx4-5. Upon obtaining a college degree with the help of his MGIB benefits, Mr. Rudisill served as a commissioned officer in the Army from November 2007 through August 2011. Appx57; Appx5.

After his third tour of duty, Mr. Rudisill applied to and was admitted to the Yale Divinity School graduate program. Instead of continuing to use the remainder of his MGIB benefits, in March 2015, Mr. Rudisill submitted an application to the VA electing to use Post-9/11 benefits. Appx58; Appx541-543. Consistent with the limitation set forth in § 3327(d)(2)(A) and its own regulations, the VA determined that Mr. Rudisill could receive 10 months and 16 days of Post-9/11 benefits as a result of that election, *i.e.* the unused remainder of his MGIB entitlement. Appx521.

Mr. Rudisill appealed that determination both in a letter to Congress and before the Board, arguing that the full 36 months of Post-9/11 benefits should be available to him based on his independently qualifying third tour of duty, regardless of his prior use of MGIB benefits. Appx508; Appx533-534. The Board rejected that argument and upheld the VA's initial determination. Appx56-64. The Board noted that Mr. Rudisill did not dispute that 10 months and 16 days was an accurate calculation of the unused remainder of his MGIB entitlement, Appx59, and held that Mr. Rudisill's election to use Post-9/11 benefits in lieu of MGIB benefits was irrevocable and limited his eligibility to the unused remainder of his MGIB entitlement, Appx60-61. Thus, the Board held that there was no basis on which the VA could award him additional months of education benefits beyond the 10 months and 16 days that were already awarded. Appx63-64.

Mr. Rudisill continued to appeal his case to the Veterans Court. In a split decision (2-1), the Veterans Court reversed the Board and held that the election provisions, including the limitation of Post-9/11 benefits to the unused portion of MGIB entitlement, do not apply to veterans like Mr. Rudisill, who have multiple periods of service to support their dual eligibility for both programs. Thus, the Veterans Court remanded the case back to the Board with instructions that Mr. Rudisill's election be nullified and his entitlement be recalculated. Appx30.

III.    The Veterans Court Majority Decision

The majority encapsulated the case as asking the following question: "how does the law treat a veteran who qualifies for the MGIB under one period of service and the Post-9/11 GI Bill under an entirely separate qualifying period or periods of service?" Appx9. The majority concluded that "Congress has not spoken to this issue," notwithstanding §§ 3322(d) and 3327, "making the statutory structure" in the majority's view, "ambiguous." Appx9-10. Because the majority decided that 38 U.S.C. §§ 3322(d) and 3327 do not apply to veterans, like Mr. Rudisill, who qualify for both programs, but have multiple periods of service, it held that Mr. Rudisill's voluntary election to irrevocably give up his MGIB benefits in favor of Post-9/11 benefits was a nullity, and the only limit on the combined amount of education benefits he is eligible to receive comes from the 48-month catch-all cap imposed by 38 U.S.C. § 3695. Appx29-30.

The majority began its analysis by considering whether Congress intended the two programs to co-exist, concluding that it did: "the Post-9/11 GI Bill didn't replace the MGIB program," "[t]he intent of Congress is clear that the MGIB and Post-9/11 GI Bill programs co-exist in a broader statutory scheme." Appx10-12.

Having concluded that the two programs are not "inherently duplicative," the majority "turn[ed] to logistics," and "how [Mr. Rudisill] may tap into those benefits." Appx11-12 (emphasis removed). The majority concluded that "the primary statutory provision" governing these logistics was 38 U.S.C. § 3322, which the majority found to be "ambiguous," and that its "interpretation of section 3322 demonstrates that section 3327 does not apply in this case." Appx12-13.

The majority's holding rests with § 3322(a), which states:

> IN GENERAL.—An individual entitled to educational assistance under this chapter [Post-9/11] who is also eligible for educational assistance under chapter 30 [MGIB], 31, 32, or 35 of this title, chapter 107, 1606, or 1607 or section 510 of title 10, or the provisions of the Hostage Relief Act of 1980 … may not receive assistance under two or more such programs concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which chapter or provisions to receive educational assistance.

See also Appx13-17. The majority found that this provision is ambiguous as to whether the veteran must elect under which chapter to receive benefits once for the duration of a program or whether it "allows [the veteran] to switch freely between programs" for each new "applicable payment period." Appx14-15. The majority

further tied the ambiguity it perceived in § 3322(*a*) as to how often an election under that subsection may occur to whether § 3322(*d*) ever applies to veterans who qualify for MGIB and Post-9/11 programs through multiple periods of service. *Id*.

Thus, in the majority's view, if § 3322(a) only allows the veteran to make an election once per program, the statute *must* "treat[] a person with multiple periods of service … functionally the same as one with a single period of service" and therefore § 3322(d) applies to both. On the other hand, if § 3322(a) allows the veteran to make a new election for each pay period, it *must* distinguish between veterans with dual entitlement based on a single period of service versus multiple periods of service and, for reasons nowhere explained by the majority, § 3322(d) only applies to the former. Appx15.

In other words, the majority concluded that the ambiguity it perceives in § 3322(*a*) about *how often* an election can occur, dictates to *whom* § 3322(*d*) applies based on how many periods of service the individual has. Having set up the question this way, the majority then explores the first piece—whether or not § 3322(a) answers, in general, how often an election may occur—concluding that "the better reading" is one where a veteran "may not receive assistance from more than one program during a single month, semester, or other applicable pay period, but may switch freely between programs." Appx23.

The majority then extrapolated from that conclusion that § 3322(d), and by

extension the election provisions in § 3327, do not apply to Mr. Rudisill and he can

obtain Post-9/11 benefits subject only to the 48-month aggregate cap imposed by

38 U.S.C. § 3695.[8]  Appx29-30.  Notably, in reaching this conclusion, the majority,

unlike the dissent, never analyzes the language of § 3322(d) or § 3327 to see

whether there is any indication in those provisions that Congress intended to limit

their application to veterans with a single period of service.[9]

Finally, the majority justifies its interpretation as being consistent with the

other parts of § 3322 and the VA's regulatory framework, "giv[ing] real meaning

to the 48-month aggregate cap" in § 3695, and being consistent with the majority's

understanding of the congressional purpose behind GI bills and the pro-veteran

canon of statutory construction.  Appx23-29.

IV.    The Veterans Court Dissent

The dissent (Bartley, J.) took a much simpler and less circuitous approach,

---

[8]  To the extent there is any relationship between the ambiguity the majority
identifies and the election provisions at issue here, it actually runs in the opposition
direction.  As discussed below, Argument Section III.A, § 3327 *resolves* the
ambiguity the majority found in § 3322(a), at least with respect to MGIB benefits.

[9]  The majority's discussion of § 3322(d) is limited to an attempt to square its
interpretation with § 3322(h), which expressly addresses veterans with dual
eligibility based on a single period of service.  Appx20-21, Appx24-25.  Having
decided that the by-contrast silent § 3322(d) also only applies to veterans with a
single period of service, the majority parses the application process ever so finely
to avoid having the so-limited § 3322(d) be rendered superfluous by § 3322(h).
Appx24-25.  *See also* Argument Section II.B, below.  Beyond acknowledging its
existence and title, the majority never addresses § 3327 at all.  *See* Appx12-13.

analyzing §§ 3322(d) and 3327 head-on, and concluding that Mr. Rudisill "meets the statutes' straightforward requirements and they are not ambiguous." Appx30. Rather than analyzing some other statutory provision, the dissent reasoned that "[t]o answer whether [Mr. Rudisill's] voluntary election under section 3322(d)/3327 is valid … we must look to the plain language of" those sections themselves. Appx34.

The dissent agreed with the majority that §§ 3322(d) and 3327 "can be read to apply to individuals with multiple entitlements under a single period of service as well as multiple entitlements under multiple separate periods of service." Appx35. But, the dissent reasoned, "that does not make [them] ambiguous" because "[b]ased on the plain language of the statute, applying the voluntary election process to *both* classes of individuals was the intent of Congress." Appx35 (emphasis added). The dissent concluded that "there is no reason to suppose that Congress intended 3322(d) to apply only to individuals with multiple entitlements based on a single period of service but not to those with multiple entitlements based on separate periods of service, but failed to say so." Appx37.

The absence of any distinction based on periods of service in § 3322(d) was especially salient to the dissent in light of the language of its sister subsection, § 3322(h), which expressly made just such a distinction. Cognizant of the rule that "Courts are required to give effect to Congress' express inclusions and exclusions,

not disregard them," the dissent reasoned that "it is undoubtedly significant that subsection 3322(h) explicitly states that it applies to those with a single period of service while subsection 3322(d) is silent on the matter." Appx36-37 (quoting *Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617, 631 (2018)).

Similarly, the dissent found that the legislative history of the Post-9/11 bill further supported the fact that Congress did not intend to exclude veterans with multiple periods of service from these election provisions. Congress amended the Post-9/11 bill twice: once in 2011, *inter alia*, to add § 3322(h), and again in 2016 codifying § 3327. At the time of these amendments the VA was applying the election provisions at issue to veterans with single and multiple periods of service alike, and yet Congress made no move to "modify, alter, clarify, or otherwise affect the classes of individuals who … were being included in the voluntary section 3322(d)/3327 election process." Appx39. This inaction by Congress in the face of the VA's approach, concluded the dissent, "confirms that Congress did not believe that it was erroneous to apply the plain language of the statute to include veterans like" Mr. Rudisill. Appx39.

Finally, the dissent disagreed with the majority that the latter's interpretation was either necessary to give meaning to the 48-month cap in § 3695, or more "veteran-friendly." The dissent noted (and the majority did not dispute) that under the VA's existing approach, if veterans exhaust their MGIB benefits before using

Post-9/11 benefits and then apply for Post-9/11 benefits, the 48-month cap would impose a restraint. Appx39; *see* Appx27-28. And while the dissent conceded that, in practice, it may be more likely that veterans will effectively pre-empt the 48-month cap by electing to use Post-9/11 benefits without exhausting their MGIB benefits, that "voluntary choice" "does not render [§ 3695] null." Appx39-40.

The dissent also pointed out that the majority's approach is not more "veteran-friendly" so much as more "intermittent-service-friendly": privileging intermittent service over continuous service. Appx40. But there is no evidence, the dissent argued, that Congress intended to "assign[] greater value and additional benefits to an individual with intermittent periods of active duty service than to individuals with a continuous period of active duty service" as the majority did. Appx40. "If Congress establishes such differing treatment, so be it," concluded the dissent, "[b]ut this Court should not, out of a misplaced sense of justice, construct differing treatment that is not contemplated by the law." Appx40.

At bottom, the dissent emphasized the entirely voluntary nature of the election at issue—there is no question that Mr. Rudisill was free to continue using MGIB benefits, and upon their exhaustion obtain 12 additional months of Post-9/11 benefits. Appx33-34. But, the dissent noted, Mr. Rudisill's voluntary election to switch to Post-9/11 benefits without exhausting his MGIB benefits came with clear and unambiguous strings. Appx32. The dissent, therefore,

criticized the majority for "pos[ing] misleading choices": enforcing the plain language of § 3327 does not "*bar* the receipt of benefits under both MGIB and Post-9/11 when a veteran has at least two separately qualifying periods of service," as the majority suggests; it "simply hold[s] [Mr. Rudisill] to the election he made to receive Post-9/11 benefits while being entitled to unused MGIB benefits." Appx33-34 (emphasis in original).

## SUMMARY OF THE ARGUMENT

There is very little in this case that is or ever was in dispute. There is no dispute that Mr. Rudisill intermittently served in the Army and these several periods of service made him eligible for educational benefits under both MGIB and Post-9/11 programs. There is no dispute that in between his periods of service Mr. Rudisill used 25 months and 14 days of MGIB benefits. There is no dispute that Mr. Rudisill was free to continue using his MGIB benefits, or that if he chose to do so, he would have 10 months and 16 days of such benefits available. There is no dispute that instead of using MGIB benefits, Mr. Rudisill decided that he wanted to use Post-9/11 benefits, and only Post-9/11 benefits, to continue his education, and there is no dispute that he can do so. Nor is there any dispute that Mr. Rudisill has never tried, or indicated that he wants to, use a mix of MGIB and Post-9/11 benefits or switch between the two programs on a pay-period-by-pay-period basis. The only question that is and has ever been at issue is how many months of

Post-9/11 education benefits Mr. Rudisill is eligible to use, if he elects to begin using them without exhausting his MGIB benefits first.

Conveniently, Congress not only envisioned just such a scenario, it directly answered this very question. 38 U.S.C. § 3327(d)(2)(A) states that "[i]n the case of an individual," like Mr. Rudisill, who "is entitled to basic educational assistance under [MGIB] and has used, but retains unused, entitlement under that chapter" when he elects to use Post-9/11 benefits, "the number of months of entitlement of the individual to educational assistance under [Post-9/11] shall be the number of months equal to the number of months of unused entitlement of the individual under [MGIB], as of the date of the election." In other words, if Mr. Rudisill wants his Post-9/11 benefits now—while he still has unused MGIB entitlement remaining—he is permitted to make that election and, in doing so, is eligible receive his unused period of MGIB entitlement, *i.e.* 10 months and 16 days of Post-9/11 benefits, precisely as the VA and the Board determined.

But the Veterans Court did not follow Congress's explicit directive; indeed, the majority "never g[o]t to" this language or § 3327 at all. Appx29 n.17. Nor did it heed Congress's further direction in § 3322(d), that the "coordination of entitlement to educational assistance" under the Post-9/11 program and other programs, including MGIB, "*shall* be governed by the provisions" now codified in § 3327. 38 U.S.C. § 3322(d) (emphasis added). *See* Appx25 (limiting § 3322(d)

to veterans with a single period of service).

Instead, the Veterans Court majority leveraged an ambiguity it perceived in a totally different part of the statute, on a question that was never at issue, to disregard these unambiguous (and repeated) instructions.  In doing so, the Veterans Court violated numerous canons of statutory construction.  The Veterans Court majority failed to "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."  *Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 194 (1985). It failed to give meaning to Congress's choice to omit any mention of periods of service from §§ 3322(d) and 3327, when Congress explicitly drew that distinction in a different subsection.  *See Loughrin v. United States*, 573 U.S. 351, 358 (2014). And the Veterans Court majority turned the "commonplace [rule] of statutory construction that the specific governs the general" on its head.  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (internal citation and quotation omitted).

At bottom, instead of doing what it "must" do—"giv[ing] effect to the text Congress enacted,"—the Veterans Court did precisely what even the Supreme Court is "not at liberty to" do:  it "rewr[o]te the statute to reflect a meaning [the majority] deem[ed] more desirable."  *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008).  This Court should reverse and enforce the unambiguous limit

that Congress imposed on the use of Post-9/11 benefits by veterans, like Mr.

Rudisill, who chose to switch from their existing, unused, MGIB benefits.

## STANDARD OF REVIEW

This Court "review[s] the Veterans Court's statutory interpretation *de novo*."

*Sucic v. Wilkie*, 921 F.3d 1095, 1098 (Fed. Cir. 2019); *see also Frederick*, 684 F.3d

at 1265 ("We review legal determinations by the Veterans Court independently

without deference.").

## ARGUMENT

I.  The Veterans Court Erroneously Disregarded § 3327, Which Specifically And Directly Addresses Mr. Rudisill's Situation[10]

This case began when Mr. Rudisill submitted an application to the VA,

electing to use Post-9/11 education benefits in lieu of the remainder of his MGIB

benefits.  Appx585-587.  Section 3327 is both what enables Mr. Rudisill to have

made such a choice and what controls the consequences thereof.  Surprisingly, the

Veterans Court majority refused to analyze the language of § 3327 at all when it

decided that this section is not applicable to Mr. Rudisill because it only applies to

veterans with a single period of service.  The majority's approach plainly violated

---

[10]  At the time that Mr. Rudisill made his election, § 3327 had not yet been codified, but the same provisions were enacted in § 5003(c) of the Post-9/11 Act. *See* 110 P.L. 252, 122 Stat. 2323, 2375-78; *see also* 114 P.L. 315, 130 Stat. 1536, 1558 (repealing § 5003(c) upon codification of § 3327).  We (as did the Veterans Court) will refer to the now-codified citations for convenience.

the long-standing first principle of statutory construction:  it "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'n Fly*, 469 U.S. at 194; *see also Sucic*, 921 F.3d at 1098 (collecting cases).

A.    § 3327(a) Defines The Veterans To Whom It Applies

There can be no question that Mr. Rudisill meets the plain language parameters of the statute: § 3327(a) defines an "individual" who "may elect to receive educational assistance under this chapter [*i.e.* Post-9/11]" as, *inter alia*, an individual who "as of August 1, 2009 is entitled to basic educational assistance under chapter 30 of this title [*i.e.* MGIB] and has used, but retains unused, entitlement under that chapter" and "as of the date of the individual's election under this paragraph, meets the requirements for entitlement to educational assistance under this chapter [*i.e.* Post-9/11]."  38 U.S.C. § 3327(a)(1)(A) & (2).

There is no dispute that as of August 1, 2009, Mr. Rudisill was entitled to MGIB benefits and had used, but retained unused MGIB benefits, and that as of the date of his election, he met the eligibility requirements for Post-9/11 benefits.  Appx57.  Mr. Rudisill fits squarely within the express terms of § 3327(a)(1)(A) and the statute imposes no other requirements or limitations beyond those Mr. Rudisill indisputably meets.  Notably the plain language of the statute draws no distinction between veterans with a single period of continuous service and

veterans with multiple intermittent periods of service.  And the Veterans Court did not identify any language in § 3327 to suggest it meant to exclude veterans with multiple periods of service, or that its reach was limited to veterans who meet its terms *plus* only had a single period of service.  Indeed, § 3327 never mentions periods of service at all.

Moreover, the statute's silence with respect to single versus multiple periods of service does not indicate an ambiguity in congressional intent.  As this Court has held, "silence alone does not create an ambiguity, especially if it can be reconciled with the statutory language."  *Wanless v. Shinseki*, 618 F.3d 1333, 1337 (Fed. Cir. 2010).  In this case, the silence confirms that the distinction between single versus multiple periods of service is not relevant.  *See* Appx35.

To illustrate, let us assume that Congress *did* want the election provisions of § 3327 to apply to veterans with multiple periods of service.  It is difficult to imagine how Congress would have written the statute differently.  To be sure, Congress could have further added a provision that preemptively dismisses this distinction, *e.g.*, some kind of hypothetical § 3327(a)(3) stating that this section applies to veterans with both single and multiple periods of service.  But imposing such a requirement (a) presumes that Congress should have anticipated that one day someone would try to draw such a distinction from thin air, and (b) raises the specter of what other distinctions the statute is currently silent on that would also

need to be affirmatively dismissed, not to mention (c) makes the already difficult task of statutory drafting needlessly more cumbersome.  Mercifully, no such exhaustive or preemptive renunciation is necessary.

Congress need not expressly set out all of the distinctions it is *not* drawing; it need only define those that it is.  Unsurprisingly, both the Supreme Court and this Court have previously refused to narrow the reach of congressional directives by drawing atextual distinctions when the plain terms of the statute were otherwise met.  *See*, *e.g.*, *Ali*, 552 U.S. at 227 ("Had Congress intended to limit § 2680(c)'s reach as petitioner contends, it easily could have written 'any other law enforcement officer *acting in a customs or excise capacity*.'  Instead, it used the unmodified, all-encompassing phrase 'any other law enforcement officer.'  Nothing in the statutory context requires a narrowing construction.") (emphasis in original); *Montelongo v. OPM*, 939 F.3d 1351, 1355 (Fed. Cir. 2019) ("Mr. Montelongo next urges us to adopt a distinction between 'pure' military service and 'not pure' military service, arguing that his cadet service is in the latter category and that it therefore should count under § 8410.  But nothing in the FERS statute makes that distinction."); *Nat'l Advanced Sys. v. United States*, 26 F.3d 1107, 1110 (Fed. Cir. 1994) ("Nor does the statute make any distinction between 'stand-alone' computers and 'imbedded' computers.  We reject NAS's attempts to engraft a limitation onto the tariff provision not clearly intended by Congress.").

Had Congress contemplated different treatment for veterans with single versus multiple periods of service and wanted to limit this section just to the former, it could have easily said so (as it did, for example in § 3322(h), discussed below, Argument Section II.B).  It did not.

At bottom, it strains logic to conclude—as the Veterans Court implicitly did—that Congress meant to limit § 3327(a) not to those individuals that it actually explicitly defined, but rather, *sub silentio*, to a subset of those individuals based on a characteristic it failed to ever even mention.

B.    § 3327(d) Limits The Benefits These Veterans Can Receive

Section 3327(d)(2), entitled "Limitation on entitlement for certain individuals" states:

> In the case of an individual making an election under subsection (a) who is described by paragraph (1)(A) of that subsection, the number of months of entitlement of the individual to educational assistance under this chapter [*i.e.* Post-9/11] shall be the number of months equal to—
>
> (A) the number of months of unused entitlement of the individual under [MGIB], as of the date of the election[11]

Paragraph (1)(A) describes precisely those individuals, like Mr. Rudisill, who have "used, but retain[] unused" MGIB benefits.  38 U.S.C. § 3327(a)(1)(A).  Thus, this

---

[11]  In certain circumstances, indisputably not applicable here, § 3327(d)(2)(B) also adds "the number of months, if any, of entitlement revoked by the individual under subsection (c)(1)."

section explicitly limits the Post-9/11 entitlement that veterans with unused MGIB benefits can receive to the "number of months of [their] unused" MGIB entitlement. There is no dispute that as of the date of his election, Mr. Rudisill "used, but retain[ed] unused" MGIB benefits, and that the "number of months of unused" MGIB entitlement that Mr. Rudisill had was 10 months and 16 days (precisely as the regional office and the Board adjudicated). Appx57, Appx59.

Once again, Mr. Rudisill's entitlement to Post-9/11 benefits as limited to his period of unused MGIB entitlement is exactly what the plain language of the statute directs. Notably, the only requirement set forth in § 3327(d)(2) to trigger its "limitation on entitlement" is for the veteran to be described by paragraph (a)(1)(A), *i.e.* to have entitlement to MGIB benefits and have "used, but retain[]" unused" MGIB benefits. The statute does *not* say that the individual must also have dual entitlement to MGIB and Post-9/11 benefits as a result of a single period of service. Indeed, although the Veterans Court majority failed to search at all, this Court would search in vain for any language in § 3327(d)(2)—or § 3327 more broadly—that would exclude veterans based on the fact that they had multiple periods of qualifying service.

C.      The History Of § 3327 Confirms That Congress Did Not Intend To Exclude Veterans With Multiple Periods Of Service

Section 3327 was codified in December 2016. But from the very inception of the Post-9/11 program, seven years prior, the VA had been limiting veterans

with unused MGIB benefits to the amount of that unused entitlement upon an election to use Post-9/11 benefits, regardless of whether they had single or multiple periods of service, under the identical language in § 5003(c) of the Post-9/11 Act.

As the Veterans Court dissent noted, Congress is "presum[ed]" to be "aware of settled judicial and administrative interpretations of terms when it enacts a statute." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 992-93 (2005) (internal citation, quotation, and alteration omitted); Appx38. Indeed, in this case even without that presumption, at least one member of Congress was directly aware of Mr. Rudisill's plight—and his attempt to draw a distinction based on his multiple periods of qualifying service—at the time that § 3327 was codified because Mr. Rudisill specifically wrote to Senator Tim Kaine about the issue. Appx530-534. Moreover, from the very inception of the Post-9/11 GI bill, Congress was aware of veterans serving multiple periods of service; indeed, that recognition helped drive Congress to depart from its past practice and allow *aggregate* service to establish eligibility for Post-9/11 benefits. *Compare*, *e.g.*, 38 U.S.C. § 3311(b)(1)(A) (using aggregate service) with 38 U.S.C. § 3011(a)(1)(A)(i) (requiring continuous service); *see also* S. Hrg. 111-379 at 9 (Question 2); S. Hrg. 110-675 at 66-67.

Thus, as the dissent recognized, if the VA's interpretation of the statute was erroneous and Congress had actually intended to limit the reach of § 3327 only to

veterans with a single period of service, Congress "would certainly have amended or clarified" the statute when it was codified. Appx39. It did not. Moreover, Congress *did* add to what was previously in § 5003(c) when codifying it as § 3327: § 3327(h), empowering the Secretary to fix an election that is "clearly against the interests of the individual," was added in December 2016. *Compare* 110 P.L. 252, 122 Stat. 2323, 2375-78 with 38 U.S.C. § 3327. And it had added provisions to the Post-9/11 statutes that were, explicitly, limited to veterans with a single period of service in prior amendments. *See* Argument Section II.B, below, discussing § 3322(h).

Plainly, Congress felt free to modify the election provisions, was aware that some veterans would have multiple periods of service, and knew how to draw distinctions between those veterans and those with only a single period of service, but saw no need to do so in § 3327.

Thus, not only does the plain language of the statute—the presumptive "express[ion of] congressional intent," *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 11 (2008) (internal citation omitted)—unambiguously prove that Congress intended the election (and consequent limitations) of § 3327 to apply to all veterans with dual MGIB and Post-9/11 eligibility without regard to whether the veteran had a single or multiple periods of service, this subsequent history further confirms it.

D.    The Veterans Court's Decision Is Not More "Veteran-Friendly"

The Veterans Court majority justified its holding in part by suggesting that it is supported by the pro-veteran canon of construction—a doctrine of interpretation that, in the face of ambiguity, doubt should be resolved in veterans' favor.  *See* Appx29 (citing *Brown v. Gardner*, 513 U.S. 115 (1994)).  "If [the doctrine], would ever have a real effect on an outcome," the majority postulates, "it would be here." Appx29.  The "pro-veteran" effect that the majority identifies is that under its construction more veterans—*viz.*, those who served multiple times—may be able to obtain an extra 12 months of education benefits.  Indeed, the undercurrent of the majority opinion seems to be a question of whether it is fair for a veteran who served twice (or more) to be, in certain circumstances, limited to the same amount of education benefits as one who only served once (even if, as the dissent points out, they may have served the same overall amount of time, and, in any event, could always obtain more, simply by exhausting MGIB benefits first).  Ultimately, that question is up to Congress—and Congress gave an unambiguous answer.

But by dismissing § 3327 entirely for veterans with multiple periods of service, the majority also leaves this group—which the majority plainly believes deserves at least as much, if not more, generosity from Congress—adrift and cut-off from provisions that are unambiguously beneficial for veterans.  For example, the MGIB program requires contributions from the veteran.  *See* 38 U.S.C.

§ 3011(b).  Sections 3327(b) and (f), respectively, stop any future contributions and repay the unused portion of contributions already made back to the veteran. Under the Veterans Court's holding, veterans with multiple periods of service are not eligible for either this cessation or repayment.[12]  Section 3327(g) continues additional benefits that increase the amount of money paid even after the veteran otherwise opts into the Post-9/11 program.  Again, this provision is unambiguously to the benefit of veterans, and under the Veterans Court's holding, unavailable to veterans with multiple periods of service.  And § 3327(h) empowers the Secretary to ensure that a veteran chooses between MGIB and Post-9/11 benefits consistent with his or her best interests:  if the veteran makes an election (or fails to make an election) that is "clearly against [his or her] interests," the Secretary "may make an alternative election on behalf of the individual."  Once again, this section is designed to benefit the veteran, but under the Veterans Court's holding would be unavailable to veterans with multiple periods of service.

At bottom, the pro-veteran canon of statutory construction cannot be used to disregard clear congressional directives, and even if it could, does not support

---

[12]  These provisions further only work because the election in § 3327 is irrevocable.  38 U.S.C. § 3327(i).  If the veteran was free to continue to switch back and forth between Post-9/11 benefits and MGIB benefits, there would remain the possibility that the veteran could use more MGIB benefits in the future.  This open-ended possibility would mean that it would not be appropriate to stop contributions and it would be impossible to calculate what contributions should be returned (or else any contributions returned would be at risk for re-collection).

excluding veterans with multiple periods of service from the ambit of § 3327 here.

II. **The Veterans Court Erred In Holding That § 3322(d) Only Applies To Veterans With A Single Period Of Service**

    A.     § 3322(d) On Its Face Applies To All Veterans With Dual Entitlement

The limitation codified in § 3327(d)(2)(A) is unambiguous and resolves this case on its face. If that was all that existed, it would already have been legally erroneous for the Veterans Court to ignore it. That is, the Veterans Court's assumption that § 3327 *only* applies when directed by § 3322(d) is itself erroneous. Even if § 3322(d) was limited to veterans with only a single period of service—as discussed below it plainly is not—that still would not resolve the question of whether § 3327, a free-standing, independently valid law, is so limited.

But what § 3322(d) does do, is reiterate and further confirm that the election provisions now codified in § 3327—including the limitations and entitlements therein—are intended to govern the coordination of MGIB and Post-9/11 benefits for all veterans with this dual eligibility, regardless of their of periods of service.

In other words, far from "not [speaking] to this issue," as the Veterans Court suggests, Appx9-10, Congress made its intentions explicitly clear and did so twice.

Section 3322(d) states:

> In the case of an individual entitled to educational assistance under chapter 30 [*i.e.* MGIB], 31, 32, or 35 of this title, chapter 107, 1606, or 1607 of title 10, or the provisions of the Hostage Relief Act of 1980, or making contributions toward entitlement to educational assistance

under chapter 30 of this title, as of August 1, 2009, coordination of entitlement to educational assistance under this chapter [*i.e.* Post-9/11], on the one hand, and such chapters or provisions, on the other, shall be governed by the provisions of section 5003(c) of the Post-9/11 Veterans Educational Assistance Act of 2008.

Section 5003(c) of the Post-9/11 Veterans Educational Assistance Act of 2008 contains the identical provisions that were later codified as § 3327(a) and § 3327(d), discussed above. *See* 110 P.L. 252, 122 Stat. 2323, 2375-77; 114 P.L. 315, 130 Stat. 1536, 1555-56, 1558; Argument Section I. Thus, § 3322(d) directs (and further confirms) that for individuals who have dual entitlement to both Post-9/11 and, *inter alia*, MGIB benefits, "coordination of [that] entitlement" "shall be governed" by the election provisions now captured in § 3327.

Once again, the only requirement set forth in the statutory text is for the individual to be "entitled to educational assistance under" Post-9/11 and one of the other listed programs. There is no dispute that Mr. Rudisill meets that requirement. Appx57. Just like § 3327, § 3322(d) on its face, does not draw any distinction between veterans with a single period of service and those with multiple periods of service; certainly, it does not exclude veterans with multiple periods of service from its reach. *See also* Argument Section I.A. Indeed, the contemporaneous "entitlement to educational assistance under" Post-9/11, presumed in § 3322(d), implies at least the possibility of multiple periods of service—among the key changes in the Post-9/11 program from the existing MGIB

program was using aggregate service to establish eligibility, *viz.* recognizing that veterans may serve multiple tours and adding up all of those periods. *See*, *e.g.*, 38 U.S.C. § 3311(b)(1)(A).

If anything, to the extent that § 3322(d) *could* be read to exclude a group of veterans based on their periods of service—and to be clear, we are not suggesting that it should be so limited—a more plausible textual argument suggests the inverse of the Veterans Court's conclusion, *i.e.* that after the passage of § 3322(h), § 3322(d) does *not* apply to veterans with a single period of service. Section 3322(d) requires the individual to be "*entitled* to educational assistance under," *inter alia*, MGIB, and presumes contemporaneous "*entitlement* to educational assistance under" Post-9/11. 38 U.S.C. § 3322(d) (emphasis added). Section 3322(h), discussed more fully below, requires that a veteran with a single period of service that "establishes *eligibility*" for both MGIB and Post-9/11 benefits to "elect under which [program] such service is to be credited." 38 U.S.C. § 3322(h) (emphasis added). Thus, while veterans with multiple periods of service may elect to credit separate periods to MGIB and Post-9/11, thereby being "entitled" to both to meet the criteria of § 3322(d), arguably a veteran with only a single period of service would not be *entitled* to benefits under both programs.[13]

_____

[13] The bar imposed by § 3322(h) has an effective date of August 1, 2011. 111 P.L. 377, 124 Stat. 4106, 4121. Therefore, even veterans with a single period of service, if it was served between September 11, 2001 and August 1, 2011, would

The Veterans Court erred when it inferred from silence that § 3322(d) was limited to veterans with a single period of service.  That inference was especially inappropriate here, where Congress explicitly addressed how veterans with a single period of service were to be treated differently from veterans with multiple periods of service in a different subsection of the same statute: § 3322(h).  "[W]hen 'Congress includes particular language in one section of a statute but omits it in another'—let alone in the very next provision—this Court 'presume[s]' that Congress intended a difference in meaning."  *Loughrin*, 573 U.S. at 358 (alteration added and in original, quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Unlike § 3322(d), § 3322(h), on its face, states that it addresses a "bar to duplication of eligibility *based on a single event or period of service*."  38 U.S.C. § 3322(h) (emphasis added).  Specifically, § 3322(h)(1) requires a veteran with a single period of service that could qualify to establish eligibility for a number of different benefits, including Post-9/11 and MGIB, to elect "under which authority such service is to be credited."

Moreover, the Senate Report confirms that Congress knew exactly how the

---

not be caught in this textual squeeze.  In any event, the bottom line here is that the VA properly interpreted § 3322(d) as applying to all veterans regardless of their periods of service, and certainly there is no reasonable way to read § 3322(d) as *excluding* veterans with *multiple* periods of service.

VA was applying the election provisions in § 3322(d) and § 3327 when it enacted § 3322(h).  In constructing a hypothetical veteran with dual eligibility, the report concluded:  "[s]ubject to the 48-month limitation on aggregate months of assistance under two or more programs provided for in section 3695 of title 38, this means that an individual, who *exhausts* entitlement to 36 months of training under the MGIB, can *subsequently* enroll and receive an additional 12 months of entitlement under the Post-9/11 GI Bill based on the same period of service." S. Rpt. 111-346 at 19, available at https://www.congress.gov/111/crpt/srpt346/ CRPT-111srpt346.pdf (emphasis added).  This statement recognizes two phenomena:  one, that the same period of service could (at that time) support dual entitlement, and two, with dual entitlement, the 48-month cap comes into play only upon *exhaustion* of MGIB benefits.  Congress only thought it necessary to address, and change, the first one.

Thus, the importance of § 3322(h) to this case is two-fold:  one, it leaves no doubt that if Congress wanted to draft provisions that only applied to veterans with a single period of service, it knew how to do so; and two, when this section was added in 2011, Congress made no move to alter or amend § 3322(d) to similarly limit it to veterans with a single period of service.

Together these two facts mean that in 2010, when Congress was specifically thinking about the distinction between veterans with single versus multiple periods

of service, revising the very statutory section that includes § 3322(d), and indisputably aware that the VA was drawing no such distinction in applying § 3322(d) and the consequences thereof, Congress chose to leave the broad all-encompassing language of § 3322(d) as is. It is difficult to imagine a clearer confirmation of congressional intent that § 3322(d) applies to all veterans with dual entitlement regardless of how many periods of service they have.

The Veterans Court majority acknowledged the express language in § 3322(h) that was notably missing from § 3322(d), but failed to correctly appreciate the consequences of that difference. Appx21. Indeed, the majority went so far as to suggest that its interpretation is correct because it gives meaning to § 3322(h). *See* Appx24. The majority arrives at this conclusion by parsing ever so finely the application process for education benefits into three "stages": "(1) application, (2) application pending, and (3) decision." Appx24. Thus, says the majority, § 3322(h) applies at the first stage—"to mandate a primary election, an initial choice among programs"—and § 3322(d) only applies to the further subset of those veterans who change their mind while their application is still pending. Appx25.

For reference, Mr. Rudisill submitted his application to use education benefits effective March 18, 2015, that application was received at the VA on March 19, 2015, and was processed to a decision by March 20, 2015 (which was

further revised from 90% to 100% benefit level based on subsequent information from the U.S. Army Human Resources Command Point of Contact on May 21, 2015). Appx512-513. In other words, Mr. Rudisill went through all three stages identified by the majority in at most two days.

It is difficult to imagine a scenario *so* common where a veteran would "want a second election" within 24 hours of making "an initial choice," Appx25, to justify the existence of an entire statutory scheme limited to just this set of circumstances. The majority's "blink and you'll miss it" application of § 3322(d) (and by extension § 3327) is absurd. The notion that in setting up the numerous election rights and consequences found in § 3327 Congress was contemplating the veteran who might change his or her mind while the application was pending—as group that may or may not materialize, but is likely to be vanishingly small—as opposed to all the veterans serving after September 11, 2001, who were, by congressional design, going to have overlapping eligibility for MGIB and Post-9/11 benefits, strains credulity and logic.

Thus, to read both § 3322(d) and § 3322(h) as only applying to the same set of veterans—those with a single period of qualifying service—one has to ignore the obvious difference in the text of the two subsections, and either render § 3322(d) superfluous or arrive at the kind of absurd conclusion that the Veterans Court majority was forced to embrace; a trifecta of violating the purpose and

canons of statutory construction.  *See Loughrin*, 573 U.S. at 358 (quoting *Russello*, 464 U.S. at 23 and *Williams v. Taylor*, 529 U.S. 362, 404 (2000)); *Pitsker v. Office of Pers. Mgmt.*, 234 F.3d 1378, 1383-84 (Fed. Cir. 2000).

The far less tortured reading is obvious:  § 3322(d) applies to all veterans who can actually draw from more than one of the specified programs, including those with multiple periods of service like Mr. Rudisill, and § 3322(h) limits veterans with multiple eligibilities in theory based a single period of qualifying service to just one program in practice.

\*      \*      \*

At bottom, the Veterans Court was able to conclude that "Congress has not spoken to [the] issue" of how the law treats veterans with dual eligibility for both MGIB and Post-9/11 benefits, Appx9-10, only by disregarding or subverting the statutory provisions where Congress did exactly that.

But a court may not selectively ignore the plain language of the statute no matter how generous its motivations.  In our system of divided government, it is Congress that controls the purse strings; and the generosity of educational benefits offered to veterans, including any limitations thereon, is a matter of congressional—not judicial—prerogative.

III.  The Veterans Court's Interpretation Of § 3322(a) And § 3695 Cannot Change The Unambiguous Directives Of § 3322(d) And § 3327

A.  The "Ambiguity" Perceived By The Veterans Court In § 3322(a) Does Not Affect The Plain Meaning Of §§ 3322(d) And 3327

The Veterans Court majority focuses its analysis on § 3322(a)[14] and specifically, whether its prohibition on "concurrent[]" receipt of educational assistance under more than one program applies at a program level or a pay-period level. Appx15; Appx23. The majority further suggests that the answer to this question somehow also dictates whether § 3322(d) (and by further unsubstantiated extension § 3327) apply to veterans with multiple periods of service. Appx12-15. The majority proclaims this connection exists without any explanation as to how or why, especially since neither § 3322(a) nor § 3322(d) cross-reference each other, nor do any of these provisions mention periods of service. The majority's decision thus rests on an analytical chain that fails at every step: § 3322(a) does not limit to whom § 3322(d) applies, and even if § 3322(d) was limited to veterans with a single period of service (it is not), that does not resolve whether § 3327 is also so limited (it also, independently, is not).

From the beginning, the majority frames the issue based on a logical connection that does not exist (at least not in the direction the majority tries to

---

[14] Ironically, the majority appears to have no qualms about applying § 3322(a) to veterans with multiple periods of service, even though it is equally silent on that point as § 3322(d) is.

apply it): whether and how often a veteran can switch between programs does not answer the question of how long the programs last. Standing alone, even if § 3322(a) permits a veteran to switch between educational assistance programs every semester, it does not speak to the issue at the core of this case, *viz.* how much entitlement exists under any of the programs of education it governs. In other words, it says nothing about whether that ability to switch programs lasts for 36 months, 48 months, or some other quantity of time dictated by the program of education being used.

Moreover, the ambiguity the Veterans Court majority identifies is *resolved* by § 3327 (at least for veterans who would be switching between Post-9/11 and MGIB benefits). That the Veterans Court does not like the outcome of that resolution does not permit it to limit § 3327 beyond its plain language or otherwise ignore it. Section 3322(a) bars the receipt of Post-9/11 benefits "concurrently" with several different programs, one of which is MGIB. For veterans that have dual entitlement specifically for MGIB, § 3327(i) makes an election to use Post-9/11 benefits "irrevocable." Plainly, a veteran with dual MGIB and Post-9/11 entitlement cannot both switch between the two programs on a pay-period-by-pay-period basis and make an irrevocable election. The Veterans Court resolves this tension by arbitrarily deciding that § 3327 must therefore not apply at all to a subset of veterans of its invention.

But in fact, the way statutory construction is supposed to work is just the opposite: courts look to the rest of the statutory context to see if it can help resolve an ambiguity, they do not ignore or dismiss other provisions because they are inconsistent with how the court would prefer the ambiguity be resolved in the abstract. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000) (collecting cases). In other words, the ambiguity the Veterans Court majority identified in § 3322(a) is resolved by § 3327(i), at least with respect to MGIB benefits; it neither renders §§ 3322(d) and 3327 ambiguous nor otherwise limits their unambiguous reach.

Ultimately, for the issues in this case it does not matter if the Veterans Court is correct that § 3322(a) is ambiguous as to whether its prohibition on "concurrent[]" receipt of benefits is meant at a program level or a semester level. And it matters even less how that ambiguity in § 3322(a), if it exists, gets resolved.[15] Not only does Mr. Rudisill's intended use of education benefits not raise the question—he has never suggested that he wants to use MGIB benefits at all in his future education pursuits, much less to alternate them with Post-9/11 benefits—if it did, the more specific § 3327(i) provides an unambiguous answer.

---

[15] Indeed, other than for programs subject to the "irrevocable" election in § 3327, the VA has always permitted switching between Post-9/11 benefits and the other programs listed in § 3322(a) without exhausting either entitlement. *See* 38 C.F.R. §§ 21.4022, 21.9690(b), 21.9550(b)(1).

Thus, the Veterans Court's analysis confirms VA's existing practice that a hypothetical veteran who was entitled to both Post-9/11 benefits and, for example, chapter 35 (Survivors' and Dependents' Educational Assistance Program) benefits, could switch between the two on an on-going basis. But it cannot help Mr. Rudisill here.

B.    Enforcing The Plain Meaning Of § 3322(d) And § 3327 Does Not Nullify § 3695

The Veterans Court majority further justifies its interpretation as necessary to "give[] full meaning to section 3695" and the "48-month aggregate cap" therein. Appx27-28. But, in fact, the majority's tortured interpretation is not necessary. At the outset, while the majority questions the possibility that a veteran would (or could) exhaust his MGIB benefits before applying for Post-9/11 benefits, the majority does not dispute that in those circumstances the 48-month cap imposed by § 3695 would apply. Appx27-28. And contrary to the majority's speculation, Congress believed this possibility was sufficiently likely that it enacted § 3322(h) specifically to limit the availability of this practice only to veterans with multiple periods of service. S. Rpt. 111-346 at 19. If this scenario was enough to justify the enactment of new legislation, surely it can also support the viability of a long-standing provision like § 3695.

More fundamentally, the Veterans Court errs in treating § 3695 as if it *only* covers MGIB and Post-9/11 benefits. But § 3695 applies to more than a dozen

44

other programs.  *See* 38 U.S.C. § 3696(a)(1)-(8).  Thus, even if, hypothetically, *no* veteran receiving MGIB and Post-9/11 benefits would ever be subject to its 48-month cap that would still not render the statute superfluous.  Even in that extreme counterfactual scenario, § 3695 would still limit the benefits those veterans could receive from one of the other dozen programs listed therein.

At bottom, § 3695 functions in the way all catch-all provisions do—as a broad, indiscriminate ceiling applicable to "any person."  By contrast, the "limitation on entitlement" set forth in § 3327(d)(2)(A) is laser-focused on just that subset of veterans who, like Mr. Rudisill, "has used, but retains unused," MGIB benefits when they elect to begin using Post-9/11 benefits instead.  38 U.S.C. §§ 3327(d)(2)(A) & (a)(1)(A).  "[I]t is a commonplace of statutory construction that the specific governs the general.  That is particularly true where, [as here,] Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions."  *RadLAX*, 566 U.S. at 645 (alteration in original and added, internal citation and quotation omitted).[16]

As this Court recently held, "unlike the individual benefits program chapters, Chapter 36 itself is not a source of veterans benefits.  There is no such

---

[16]  The Veterans Court majority commits the parallel error when analyzing the VA regulatory scheme, focusing on VA's general regulations instead of the ones implementing the election of Post-9/11 benefits while having unused MGIB entitlement specifically.  *See* Appx25-27 (discussing 38 C.F.R. §§ 21.4022, 21.9635(w), and 21.9690, instead of § 21.9550(b)(1)).

thing as 'Chapter 36 benefits.' Rather, Chapter 36 provisions like § 3695 sit above and apply across the chapter-specific programs, which each contain varied benefits accrual, duration, and termination provisions." *Carr v. Wilkie*, No. 19-2441, at 12-13 (June 11, 2020). "In such a scheme, it makes sense that the drafters of § 3695 would leave the details" of the duration of entitlement—like § 3327(d)(2)(A)—"to the programs that were providing benefits in the first place." *Id.*

IV. <u>Policy Arguments Are For Congress Not The Courts</u>

No doubt Mr. Rudisill will again point out the significant impact the additional 12 months of education benefits can have on his life (and potentially the lives of other veterans), the importance of higher education, especially in a struggling economy, and the sacrifices he (and his fellow veterans) have made in service to this country to qualify for these benefits. *See*, *e.g.*, Mt. to Expedite, ECF 7, at 5, 7-8.

We are not unsympathetic to these concerns, nor do we minimize the value of Mr. Rudisill's service, but the proper audience for such arguments is Congress, not this Court. Certainly, Congress could have written the statute the way Mr. Rudisill (and the Veterans Court majority) advocates, just like it could have done any number of other things: sunset the MGIB program entirely as it has done with every GI bill in the past, not grant Post-9/11 benefits retroactively to overlap with MGIB eligibility, mandate the exhaustion of MGIB benefits, or even eliminate

education benefits entirely, etc.  Any of these choices would have direct and significant consequences on the nature and amount of education benefits veterans, including Mr. Rudisill, could obtain, and could be subject to similar economic and equitable arguments Mr. Rudisill has made here.  "The short answer"—no matter how compelling these arguments may otherwise be—"is that Congress did not write the statute that way."  *United States v. Naftalin*, 441 U.S. 768, 773 (1979).

And Congress remains free to revisit its past choices and make new ones, but the decision to do so lies with Congress, not the Veterans Court or this Court. "If policy considerations suggest that the current scheme should be altered, Congress must be the one to do it."  *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 778 (2020); *see also O'Brien v. Wilkie*, 948 F.3d 1339, 1342 (Fed. Cir. 2020) ("We regret that the Veterans' Benefits code currently precludes support for the families of veterans like Mr. O'Brien who do not fit within its constrained familial configurations.  However, it is for Congress—not this court—to remedy such policy concerns.").

Although reasonable people may disagree as to what Congress *could* or even *should* have done with respect to veterans who wish to begin using Post-9/11 benefits with unused MGIB entitlement remaining, there is no room for disagreement as to what Congress actually *did*.  And that is what this Court must now enforce.  *Ali*, 552 U.S. at 228 (2008) ("We are not at liberty to rewrite the

statute to reflect a meaning we deem more desirable.  Instead, we must give effect to the text Congress enacted.").

<u>CONCLUSION</u>

The decision of the Veterans Court should be reversed.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/  Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Deputy Director

| | |
|---|---|
| OF COUNSEL | /s/  Galina I. Fomenkova |
| | GALINA I. FOMENKOVA |
| Y. KEN LEE | Trial Attorney |
| Deputy Chief Counsel | United States Department of Justice |
| | Civil Division |
| BRYAN THOMPSON | Commercial Litigation Branch |
| U.S. Department of Veterans Affairs | P.O. Box 480 |
| 810 Vermont Ave | Ben Franklin Station |
| Washington, DC 20420 | Washington, DC 20044 |
| | (202) 514-5495 |
| | (202) 307-0972 (Facsimile) |
| | galina.fomenkova@usdoj.gov |
| | |
| June 15, 2020 | *Attorneys for the Secretary* |

# ADDENDUM

# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-4134

BO,[1] APPELLANT,

v.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 2, 2018                                    Decided August 15, 2019)

*Timothy L. McHugh*, with whom *Kevin S. Elliker* and *David J. DePippo*, all of Richmond, Virginia, for the appellant.

*Lavinia A. Derr*, with whom *Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; and *James B. Cowden*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before SCHOELEN, BARTLEY, and ALLEN, *Judges*.

ALLEN, *Judge*, filed the opinion of the Court. BARTLEY, *Judge*, filed a dissenting opinion.

ALLEN, *Judge*: Congress has been generous in providing a wide array of benefits to those who served in the Armed Forces. An example of that generosity is support for veterans' educational endeavors. This appeal calls on us to discuss two such education-related programs. In particular, we address an important interplay between the Montgomery GI Bill education program (MGIB), chapter 30 of title 38 of the United States Code, and the Post-9/11 GI Bill education program (Post-9/11 GI Bill), chapter 33 of that title.

The appellant BO served the Nation honorably in the United States Army. BO had more than one period of service in the Army, having been both an enlisted person as well as an officer. As described in more detail below, BO's separate periods of service independently qualified him to receive benefits under both the MGIB and the Post-9/11 GI Bill. At its core, this case is about

---

[1] For reasons not relevant to the subject of this appeal, the record in this case has been sealed pursuant to Rule 48(b) of the Court's Rules of Practice and Procedure, and the veteran is identified only as "BO."

whether he, and others like him with two separate periods of qualifying service, may obtain the full benefits of both programs (subject to an overall cap).

In this appeal, which is timely and over which the Court has jurisdiction under 38 U.S.C. §§ 7252(a) and 7266(a), the appellant specifically contests a July 14, 2016, Board of Veterans' Appeals (Board) decision denying him entitlement to educational assistance benefits for more than 10 months and 16 days under the Post-9/11 GI Bill. This was the amount of unused benefits the appellant had under the MGIB. The Board rejected the appellant's argument that he should be entitled to the full amount of Post-9/11 GI Bill benefits because, BO contends, his entitlement under that program was based on a period of qualifying service separate from the one that allowed him to receive benefits under the MGIB. This matter was referred to a panel of the Court with oral argument to address whether a veteran such as BO with more than one period of separately qualifying service must relinquish or exhaust entitlement under the MGIB program before receiving education benefits under the Post-9/11 GI Bill program. We hold that statutes require neither relinquishment nor exhaustion. Rather, they allow such a veteran to receive entitlement under both programs subject to a 36-month cap on utilization of each of the two separate programs and a 48-month cap overall. The Court will accordingly reverse the Board's decision and remand the matter for further proceedings consistent with this opinion.

## I. STATUTORY FRAMEWORK

The Nation has a long history of providing educational benefits to veterans. In 1944, Congress, faced with more than 16 million veterans returning from military service in World War II and reentering civilian life, enacted the Servicemen's Readjustment Act of 1944, Pub. L. 78-346, 58 Stat. 284, better known as the GI Bill. Record (R.) at 1245. This landmark legislation provided veterans with education benefits to avoid high levels of unemployment, aid servicemembers in readjusting to civilian life, and afford returning veterans an opportunity to receive the education and training they could not pursue while serving in the military. *Id.* Since the GI Bill's inception, Congress has established several iterations of education benefits for subsequent generations of veterans. *See* Veterans' Readjustment Assistance Act of 1952, Pub. L. No. 82-55, 66 Stat. 663 (Korean War GI Bill); Veterans' Readjustment Benefits Act of 1966, Pub. L. No. 89-358, 80 Stat. 12 (Cold War GI Bill); Veterans' Education and Employment Assistance

Act of 1976, Pub. L. 94-502, 90 Stat. 2393 (codified at 38 U.S.C. §§ 3201 *et seq.*) (Post Vietnam Era Veterans Educational Assistance Program).

In 1985, Congress, seeking a recruiting tool for an all-volunteer military force, established two versions of the MGIB: one for active-duty service, 38 U.S.C. §§ 3001 *et seq.*, and the other for service in the selected reserve, 10 U.S.C. §§ 16131 *et seq.* Department of Defense Authorization Act of 1985, Pub. L. No. 98-525, 98 Stat. 2492; *see* 38 U.S.C. § 3001 (MGIB benefits serve to "to aid in the recruitment and retention of highly qualified personnel for both the active and reserve components of the Armed Forces" and "to enhance our Nation's competitiveness through the development of a more highly educated and productive work force"). The MGIB provides education benefits to individuals who, among others, first entered on active duty after June 30, 1985, and continued to serve on active duty or received a qualifying discharge or release. 38 U.S.C. § 3011(a). An individual must have served continuously on active duty for 2 to 3 years depending on the obligated period of service. 38 U.S.C. § 3011(a)(1)(A)(i). An individual who meets the basic eligibility requirements is entitled to 36 months of education benefits. 38 U.S.C. § 3013. MGIB education benefits consist of a fixed monthly sum that varies based on length of service and school attendance. 38 U.S.C. § 3015; *see* MGIB Active Duty (chapter 30) Increased Educational Benefit, https://www.benefits.va.gov/GIBILL/resources/benefits_resources/rates /ch30/ch30rates100117.asp (effective Oct. 1, 2017) (for full-time school attendance and 3 years of continuous active service, the monthly rate is $1,928; for less than 3 years of continuous active service the monthly rate is $1,566).

In June 2008, Congress enacted the Post-9/11 Veterans Educational Assistance Act of 2008, which became effective on August 1, 2009. Pub. L. No. 110-252, tit. V, §§ 5001-03, 122 Stat. 2357 (2008) (codified at 38 U.S.C. §§ 3301 *et seq.*). The Post-9/11 GI Bill provides education benefits to each individual who served on active duty after September 11, 2001, and continued to serve on active duty or was discharged or released under specified conditions. 38 U.S.C. § 3311(a), (b). An individual who "serve[d] an aggregate of at least" 1 of 7 periods described in the statute as ranging from 90 days to 36 months is entitled to Post-9/11 education benefits. 38 U.S.C. § 3311(b).[2] An individual who meets the basic eligibility requirements is entitled to 36 months of education benefits. 38 U.S.C. § 3312(a). Post-9/11 education benefits, awarded per school term,

---

[2] The amount of benefits an individual receives under the Post-9/11 GI Bill depends on the aggregate amount of his or her service. *See* 38 U.S.C. § 3313(c). Nothing in this appeal turns on this aspect of the program.

include the net cost for in-state tuition and fees; a monthly stipend equal to the basic monthly military housing allowance in the area in which the campus is located; and a lump sum payment for books. 38 U.S.C. § 3313(a); *see* 38 C.F.R. § 21.9640(b) (2019). Because Post-9/11 education benefits include the net cost for in-state tuition and fees, the monthly Post-9/11 education benefits amount generally exceeds the corresponding amount of monthly MGIB benefits. *See* GI Bill Comparison Tool, https://www.vets.gov/gi-bill-comparison-tool/profile/11800116 (last visited Mar. 26, 2019) (for example, for full-time attendance at the University of Kansas and 3 years aggregate active service, i.e., factors warranting the 100% rate, the per semester rate is $5,412 for tuition and fees, $6,723 for housing allowance, and a $500 book stipend). The Post-9/11 GI Bill also includes several administrative provisions, 38 U.S.C. §§ 3322-27, some of which we will return to below.

Finally, for the moment on the statutory structure, several administrative provisions also guide an individual's entitlement to more than one education benefit program. Two of these provisions are particularly important here. Section 3695 provides that an eligible person may receive education benefits under all programs for a total of 48 months. 38 U.S.C. § 3695 (titled "Limitation on period of assistance under two or more programs"); *see* 38 U.S.C. §§ 3013(c) (explicitly subjecting entitlement to MGIB benefits to section 3695's 48-month limitation); 3312(a) (same for Post-9/11 GI Bill benefits). In addition, section 3681(b)(1) bars the concurrent receipt of education benefits under two or more programs. 38 U.S.C. § 3681(b)(1) (titled "Limitations on educational assistance"); *see* 38 U.S.C. §§ 3033(a)(1) (barring concurrent receipt of MGIB benefits and education benefits for which an individual "is also eligible"), 3322(a) (same for Post-9/11 GI Bill benefits).

## II.  FACTUAL AND PROCEDURAL HISTORY

The appellant first served on active duty as an enlisted person in the U.S. Army from January 2000 to June 2002. Record (R.) at 109. This service qualified him to receive benefits through the MGIB. From July 2003 to approximately May 2004, he received MGIB education benefits that he applied to expenses for undergraduate studies. R. at 67. From June 2004 to December 2005, he again served on active duty as an enlisted person with an Army National Guard unit, through which he deployed to Iraq. *See* R. at 5, 76, 108. After discharge from this second period of active duty service, the veteran re-enrolled in university studies and received MGIB

4

benefits from July 2003 to May 2007. R. at 67. Combined, these periods during which the appellant received benefits under MGIB total 25 months and 14 days. *Id.* From November 2007 to August 2011, he returned to active duty in the U.S. Army yet again, this time as a commissioned officer, and he deployed to Iraq and Afghanistan. R. at 107. This period of service qualified him for benefits under the Post-9/11 GI Bill. He has an aggregate of nearly 8 years of active duty service. *Id.*

BO left the Army in 2011. According to his brief (and this is not disputed), he hoped to return to the Army for yet another period of service, this time as a chaplain. *See* Appellant's Brief (Br.) at 4. To make that possible, he planned to attend Yale Divinity School, to which he had been admitted by 2015. *Id.*

On March 18, 2015, the appellant filed an electronic application for VA education benefits, VA Form 22-1990 (application), in connection with his plan to return to school. R. at 125. On the application, he stated that he was applying for Post-9/11 GI Bill education benefits "in [l]ieu of" MGIB benefits and acknowledged that choosing to do so constituted an irrevocable election and that his period of entitlement to Post-9/11 benefits would be limited to his remaining period of entitlement under MGIB. *Id.* On March 20, 2015, VA issued a certificate of eligibility (COE) for Post-9/11 benefits at the 90% level for a period of 10 months and 16 days, the difference between the 36-month MGIB entitlement and the 25 months and 14 days of MGIB benefits that BO had previously used. R. at 76-77.

Later that month, BO sent a congressional inquiry to his U.S. Senator asserting that his separate period of service as a commissioned officer qualified him for "full" Post-9/11 education benefits, including a combined 48-month entitlement, that is, 12 months more than the 36-month entitlement under either the MGIB or the Post-9/11 GI Bill program alone. R. at 72. He further stated that a VA education counselor suggested that he should revoke his claim for Post-9/11 GI Bill benefits and, "contingent upon VA accepting" the revocation, use his remaining 10 months under the MGIB. *Id.* The VA education counselor also informed him that if he exhausted his MGIB benefits he could reapply under the Post-9/11 GI Bill and receive additional months of eligibility under that program. *Id.*

In April 2015, a VA regional office (RO) responded to the congressional inquiry. R. at 67-69. The RO stated that by law those individuals eligible under the Post-9/11 GI Bill who are also eligible for benefits under the MGIB must relinquish their eligibility for that latter program to

5

receive benefits under the Post-9/11 GI Bill, and individuals who qualify for benefits under the Post-9/11 GI Bill are limited to the amount of MGIB entitlement they have remaining. R. at 67. The RO determined that the veteran made an irrevocable election to receive Post-9/11 GI Bill benefits in lieu of MGIB benefits, that he acknowledged the election was irrevocable, and that the election may not be changed. R. at 68. In May 2015, the RO issued another COE determining that the appellant was entitled to 10 months and 16 days of Post-9/11 GI Bill benefits at the 100% level based on an aggregate of his creditable active duty service. R. at 1177-78.

In October 2015, the RO issued a Statement of the Case (SOC) continuing its denial of the appellant's "claim for additional entitlement" to Post-9/11 GI Bill benefits. R. at 27-41. Once again, the RO determined that a claimant eligible for Post-9/11 GI Bill and MGIB benefits and wishing to use the Post-9/11 program is required to make an irrevocable election to relinquish MGIB benefits when seeking benefits under the Post-9/11 GI Bill. R. at 39. The RO found that, based on the veteran's irrevocable election to use Post-9/11 GI Bill benefits, the law dictates that VA grant entitlement under the Post-9/11 GI Bill not to exceed his remaining MGIB entitlement and nothing in the law allowed VA to grant additional entitlement to the veteran that exceeded his remaining MGIB entitlement. *Id.*

In July 2016, the Board issued the decision on appeal. It found that the veteran was qualified for VA educational assistance benefits under both the MGIB and Post-9/11 Bill programs. R. at 4. These are favorable findings that the Court may not disturb. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007). However, despite these findings, the Board rejected the appellant's arguments that he was entitled to additional Post-9/11 benefits. R. at 3-11.

The Board interpreted VA regulations to provide that an individual is only eligible for Post-9/11 GI Bill benefits if he or she meets the minimum service requirements and makes an irrevocable election to receive benefits under the Post-9/11 GI Bill by relinquishing eligibility under the MGIB. R. at 7 (citing 38 C.F.R. § 21.9520(c)(1) (2019)). The Board further stated that if an individual is eligible for benefits under the MGIB and he or she uses some of that entitlement before irrevocably electing to receive Post-9/11 GI Bill benefits in lieu of benefits under the MGIB, then that individual may be awarded the equivalent of the entitlement that remained unused under the MGIB program. *Id.* (citing 38 C.F.R. § 21.9550(b)(1) (2019)). The Board determined that no provision of law authorized additional months of entitlement under the Post-9/11 GI Bill program above the 36 total months of combined benefits under the MGIB and the Post-9/11 GI Bill. R. at

7-8. Therefore, the Board concluded that, as a matter of law, the veteran was ineligible for Post-9/11 GI Bill benefits in excess of 10 months and 16 days, the amount of time BO had remaining under the MGIB. R. at 11.

Furthermore, the Board found that the veteran's application accurately implemented the statutory and regulatory requirements that a veteran explicitly acknowledge that an election to receive Post-9/11 GI Bill benefits in lieu of MGIB benefits is irrevocable. R. at 9-10. The Board determined that, because the veteran submitted a properly completed electronic application for educational benefits, he had irrevocably elected to receive Post-9/11 benefits "in lieu of" MGIB benefits. *Id.* (citing 38 C.F.R. § 21.9520(c)(2)). This appeal followed.

## III. ANALYSIS

We find the Board erred as a matter of law when it denied the appellant educational assistance for more than 10 months and 16 days under the Post-9/11 GI Bill based on his use of MGIB benefits. As we explain below, the statutory scheme Congress enacted is ambiguous. By reviewing the statutory structure, giving full meaning to all the statutory provisions, and relying on the regulatory framework, congressional purpose, and the pro-veteran canon, we determine that Congress's statutory scheme is best interpreted to provide that separate periods of qualifying service allow a veteran such as BO to receive full benefits under both programs subject to an aggregate cap on all such benefits.

### A. Principles of Statutory Interpretation

The resolution of this appeal centers on the meaning of the various statutory provisions Congress enacted to provide educational benefits to veterans under the MGIB and the Post-9/11 GI Bill. Statutory interpretation is a pure question of law that the Court reviews de novo. *See Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018). The basics of statutory interpretation are well established. "In determining the meaning of a statutory provision, 'we look first to its language, giving the words used their ordinary meaning.'" *Artis v. District of Columbia*, 138 S. Ct. 594, 603 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)); *see Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) ("The starting point in interpreting a statute is its language."). This principle is directed not only to statutory interpretation by courts, but also by administrative agencies. "Where a statute's language carries a plain meaning, the duty of an

administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018).

Of course, this focus on statutory language does not mean that other indications of congressional intent are off the table. As the Supreme Court recently reminded us, considering the purposes behind a statutory scheme is a useful check on a court's interpretation of a specific statutory provision. *See Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018). Moreover, "the statutory scheme as a whole, the specific context in which [a] word or provision at issue is used, and the broader context of the statute as a whole" all inform any statutory provision's plain meaning. *Hornick v. Shinseki*, 24 Vet.App. 50, 52 (2010); *see also King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991); *Imazio Nursery, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1564 (Fed. Cir. 1995) (holding that all parts of a statute must be construed together without according undue importance to a single or isolated portion). Accordingly, the Court should construe a statute "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." 2A NORMAN J. SINGER ET AL., SUTHERLAND ON STATUTORY CONSTRUCTION § 46:6 (7th ed. 2007) [hereinafter SUTHERLAND]; *see Splane v. West*, 216 F.3d 1058, 1068-69 (Fed. Cir. 2000).

The goal of this interpretive endeavor is to identify and implement Congress's purpose in enacting a given statute. *See Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) ("[W]e assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'" (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962))). But there are times when these tools aren't sufficient to divine what Congress meant; in other words, the statute at issue is ambiguous. *See Tropf v. Nicholson*, 20 Vet.App. 317, 321 n.1 (2006) ("[A] statute is ambiguous only when the application of the ordinary meaning of the words and rules of construction to the plain language of the regulation fails to answer the question at issue."). "Ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more difference senses." SUTHERLAND § 45.2 at 13. An important indicator of ambiguity is whether a given term is "susceptible to multiple interpretations." *Schertz v. Shinseki*, 26 Vet.App. 362, 367 (2013). Moreover, ambiguity may be created by legislative silence as well as by express statutory language. *See, e.g., Cox v. McDonald,* 28 Vet.App. 318, 323-24 (2016). "Where ambiguity persists after application of the standard tools of statutory construction, legislative history may be used to

resolve any such ambiguity." *Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012). A court will also consider "preenactment history to determine the circumstances under which the enactment was passed and the problem it was intended to remedy." *Camarena v. Brown*, 6 Vet.App. 565, 567 (1994).

When a statute is ambiguous, and an agency entrusted with implementation of that statute has promulgated a regulation addressing the ambiguity, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). It perhaps goes without saying that if an agency has not promulgated regulations addressing the statutory ambiguity, there is nothing to which a court could defer.

"Where a court concludes that *Chevron* deference is inapplicable, the court proceeds with the task of statutory interpretation guided by the principles of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)." *Cook v. Snyder*, 28 Vet.App. 330, 340 (2017); *see Jensen v. Shulkin*, 29 Vet.App. 66, 71 (2017). Pursuant to *Skidmore*, the Court "may properly resort for guidance" to the Secretary's arguments. 323 U.S. at 140. "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* But the bottom line is that *Skidmore* deference (such that it truly is "deference") isn't controlling. *Id.* ("[T]he rulings, interpretations, and opinions of [the agency] . . . [are] not controlling upon the courts.").

Finally, there is a canon of statutory construction that is unique to veterans. "In the face of statutory ambiguity and the lack of a persuasive interpretation of the statute from the Secretary, the Court applies the rule that 'interpretative doubt is to be resolved in the veteran's favor.'" *Sharp v. Shinseki*, 23 Vet.App. 267, 275 (2009) (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)).

B. The statutory scheme is ambiguous.

The precise question the Court must answer in this appeal is: how does the law treat a veteran who qualifies for the MGIB under one period of service and the Post-9/11 GI Bill under an entirely separate qualifying period or periods of service? Must such a veteran choose between (or as the Secretary insists, irrevocably elect) which program he or she uses? Or, on the other hand, may such a person use one period of service to get the MGIB benefits and the other(s) to obtain Post-9/11 benefits, subject to any applicable aggregate cap? As we will see, Congress has not

spoken to this issue, making the statutory structure ambiguous.[3] Before turning to that point, however, we address an antecedent question concerning the general relationship between these two educational programs.

### *1. The MGIB and the Post-9/11 GI Bill co-exist.*

While there does not appear to be serious dispute about this issue, the Court makes clear that Congress didn't intend to replace the MGIB program with the Post-9/11 GI Bill program; the programs complement each other. In this regard, the veteran argues that "nothing about the Post-9/11 GI Bill statute deviates" from the statutory scheme that provides for entitlements to multiple educational assistance benefits. Appellant's Br. at 19-20. Specifically, he contends that 38 U.S.C. § 3695 (the provision providing for an aggregate 48-month cap on all education benefits), incorporated by reference in the Post-9/11 GI Bill's statutory scheme, permits entitlement to and the usage of both MGIB and Post-9/11 GI Bill benefits at separate times and therefore he is entitled to a full period of MGIB benefits and another full period of Post-9/11 GI Bill benefits. *Id.* at 16-19. The Secretary argues that, because statutes outlining the parameters of Post-9/11 GI Bill entitlement and payment use the term "individual," additional periods of service add to the eligible Post-9/11 GI Bill benefit level, but do not extend the duration of combined entitlement under the MGIB and Post-9/11 GI Bill programs. Secretary's Br. at 9-10 (citing 38 U.S.C. §§ 3311 and 3313).

The Court agrees, as the veteran argues, Appellant's Br. at 20, that the Post-9/11 GI Bill didn't replace the MGIB program. In enacting the Post-9/11 GI Bill, Congress determined that service on active duty in the Armed Forces since September 11, 2001, "has been especially arduous"; the then-current educational assistance program was "outmoded and designed for peacetime service"; and providing post-9/11 veterans with "enhanced educational assistance benefits that are worthy of such service and are commensurate with the educational assistance benefits provided by a grateful Nation to veterans of World War II" was "in the national interest

---

[3] Our dissenting colleague views the statutory scheme quite differently than we do. The different readings explain much of the "ships passing in the night" quality of the majority and dissenting opinions. We have not stopped at every point along the way of our complex analysis to explain that the dissent's different take on a given point is the result of a fundamentally different view of what the statutes say. As it is said, where you stand depends a lot upon where you sit. We ascribe no ill motive for these differences. This is undoubtedly a complex statute and reasonable minds can—and do—differ about what it means. Do not take our silence as ignoring the dissent. It's just that we would be repeating the same mantra: We read the statutes differently. For example, our dissenting colleague notes that BO made a voluntary choice to irrevocably elect to forego his MGIB benefits in lieu of Post-9/11 benefits. That is a powerful argument if one reads the statute as the dissent does. But if one reads it as we do, the argument is irrelevant because VA presented BO with a choice he was never required to make.

of the United States." Pub. L. No. 110-252, § 5002. Congress also recognized the increased role undertaken by reservists called to active duty service in the post-9/11 wartime environment. Furthermore, the 2008 Post-9/11 GI Bill made few changes to the statutory language of the MGIB or chapter 36, which concerns administrative chapter matters related to VA education benefits. *Id.*, 122 Stat. 2375.

The intent of Congress is clear that the MGIB and Post-9/11 GI Bill programs co-exist in a broader statutory scheme. *See Chevron U.S.A. Inc.,* 467 U.S. at 842-43. Plain language demonstrates this co-existence. For example, in the subchapter that guides the overall administration of education benefits, 38 U.S.C. § 3681 lists the MGIB and Post-9/11 GI Bill chapters individually as programs to which an individual may be separately entitled, but barred from receiving benefits concurrently. 38 U.S.C. § 3681(b)(1). Congress also details this statutory bar to concurrent receipt of GI Bill benefits under multiple programs in Chapters 30 and 33, the chapters for MGIB and Post-9/11 GI Bills respectively. *See* 38 U.S.C. §§ 3033(a), 3322(a). An individual who is entitled to Post-9/11 education benefits "who is also eligible" for, inter alia, MGIB education benefits "shall elect" under which program to receive those benefits. 38 U.S.C. § 3322(a)(1) (listing the MGIB education program as a separate program that an individual may "also" be eligible to receive). And vice versa for the MGIB education program. 38 U.S.C. § 3033(a)(1).

Further evidence of the co-existence of MGIB and Post-9/11 education benefits program is the clear 48-month cap that Congress imposed on the duration of their sequential receipt. In the administrative chapter, chapter 36, similar to the bar on concurrent use discussed above, 38 U.S.C. § 3695 individually lists the MGIB and Post-9/11 GI Bill chapters as programs for which the combination of receipt of benefits may not exceed 48 months. 38 U.S.C. § 3695(a)(4). Chapter 30 and chapter 33 each explicitly subject entitlement to their respective benefits to section 3695's 48-month limitation and identify each other as a separate chapter under which an individual may also be entitled to education benefits. 38 U.S.C. §§ 3013(c), 3312(a).

Accordingly, the statutory language is clear that the MGIB and the Post-9/11 GI Bill co-exist as separate programs. And thus we've established that Congress didn't replace the MGIB with the Post-9/11 Bill. So, the Post-9/11 *program* isn't inherently duplicative of the MGIB *program*. And here it bears repeating that the Board found that BO qualifies under both programs based on

all of his periods of service. R. at 4. We turn now to a consideration of the relevant statutes in terms of what they may (or may not) say about the issue we face.

Before diving into the deep statutory and regulatory waters we face, we pause to explain what may appear to be redundancy in our approach. Simply put, there's no good way to wrap one's hands around the web of statutes essential to our analysis. For ease of reference, we've provided several means to review the statutes and regulations at play. First, we're attaching a statutory appendix with the full versions of 38 U.S.C. §§ 3322 and 3327, the statutes that we and the dissent interpret and apply, at the end of the dissenting opinion. This will allow the reader to find those given provisions easily. But we'll also set out specific parts of the statutes and regulations (often more than once) at various places in our discussion so that a particular area of discussion will be more easy to follow. Though possibly redundant at times, this repetition should help ground the unfortunate but necessarily dense and complex analysis to which we now turn.

*2. The primary statutory provision, 38 U.S.C. § 3322, is ambiguous.*

Recognizing that the appellant is eligible for both the MGIB and the Post-9/11 GI Bill programs based on two separately qualifying periods of service (i.e., the appellant's first period of active service totaling more than 2 years of continuous service, on its own, qualified him to obtain MGIB benefits and his later periods of service, in the aggregate, qualify him to obtain Post-9/11 GI Bill benefits), we turn to logistics, and the question becomes *how* he may tap into those benefits. For our purposes, the key statutory provision concerning how VA will administer someone like the appellant's benefits is 38 U.S.C. § 3322. As Congress described, this section deals with a "[b]ar to duplication of educational assistance benefits." In this portion of our opinion, we will closely dissect this section. That discussion is necessary to understand fully why there is ambiguity here. While we will reproduce the specific subsections of this statute in our discussion below, we provide most of this section upfront now so that our introductory discussion is more accessible.

Before turning to our consideration of section 3322, we must mention one other part of the statutory structure because it is alluded to in this section and is a focus of the Secretary's argument. Section 3327 is entitled "[e]lection to receive educational assistance."[4] Though ultimately we never

---

[4] Section 3327 provides:

> (a) **Individuals eligible to elect participation in post-9/11 educational assistance.** An individual may elect to receive educational assistance under this chapter if such individual— (1) as of August 1, 2009—(A) is entitled to basic educational assistance under

12

get to this section based on our interpretation of 3322, the Secretary insists that section 3327 is important for this appeal because, as its title suggests, it provides support for making an irrevocable election of a program's assistance at the cost of continued receipt of another program's assistance—which, according to the Secretary, occurred in this case. However, as we will see, our interpretation of section 3322 demonstrates that section 3327 does not apply in this case. To meaningfully address why that is, however, we must return to 38 U.S.C. § 3322, "Bar to duplication of educational assistance benefits":

> **(a) In general.** An individual entitled to educational assistance under this chapter [33] who is also eligible for educational assistance under chapter 30, 31, 32, or 35 of this title, chapter 107, 1606, or 1607 or section 510 of title 10, or the provisions of the Hostage Relief Act of 1980 (Public Law 96-449; 5 U.S.C. 5561 note) may not receive assistance under two or more such programs concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which chapter or provisions to receive educational assistance.
>
> **(b) Inapplicability of service treated under educational loan repayment programs.** A period of service counted for purposes of repayment of an education loan under chapter 109 of title 10 may not be counted as a period of service for entitlement to educational assistance under this chapter.
>
> **(c) Service in Selected Reserve.** An individual who serves in the Selected Reserve may receive credit for such service under only one of this chapter, chapter 30 of this title, and chapters 1606 and 1607 of title 10, and shall elect (in such form and manner as the Secretary may prescribe) under which chapter such service is to be credited.
>
> **(d) Additional coordination matters.** In the case of an individual entitled to educational assistance under chapter 30, 31, 32, or 35 of this title, chapter 107, 1606, or 1607 of title 10, or the provisions of the Hostage Relief Act of 1980, or making contributions toward entitlement to educational assistance under

---

chapter 30 of this title and has used, but retains unused, entitlement under that chapter; (B) is entitled to educational assistance under chapter 107, 1606, or 1607 of title 10 and has used, but retains unused, entitlement under the applicable chapter; (C) is entitled to basic educational assistance under chapter 30 of this title but has not used any entitlement under that chapter; (D) is entitled to educational assistance under chapter 107, 1606, or 1607 of title 10 but has not used any entitlement under such chapter; (E) is a member of the Armed Forces who is eligible for receipt of basic educational assistance under chapter 30 of this title and is making contributions toward such assistance under section 3011(b) or 3012(c) of this title; or (F) is a member of the Armed Forces who is not entitled to basic educational assistance under chapter 30 of this title by reason of an election under section 3011(c)(1) or 3012(d)(1) of this title; and (2) as of the date of the individual's election under this paragraph, meets the requirements for entitlement to educational assistance under this chapter.

Under section 3327(i), an election made under subsection (a) is irrevocable.

13

chapter 30 of this title, as of August 1, 2009, coordination of entitlement to educational assistance under this chapter, on the one hand, and such chapters or provisions, on the other, shall be governed by [section 3327].[5]

**(e) Bar to concurrent receipt of transferred education benefits and Marine Gunnery Sergeant John David Fry Scholarship Assistance.** An individual entitled to educational assistance under both sections 3311(b) (9) and 3319 may not receive assistance under both provisions concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which provision to receive educational assistance.

. . . .

**(g) Bar to concurrent receipt of transferred education benefits.** A spouse or child who is entitled to educational assistance under this chapter based on a transfer of entitlement from more than one individual under section 3319 may not receive assistance based on transfers from more than one such individual concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which source to utilize such assistance at any one time.

**(h) Bar to duplication of eligibility based on a single event or period of service.**

    **(1) Active-duty service.** An individual with qualifying service in the Armed Forces that establishes eligibility on the part of such individual for educational assistance under this chapter, chapter 30 or 32 of this title, and chapter 1606 or 1607 of title 10, shall elect (in such form and manner as the Secretary may prescribe) under which authority such service is to be credited.

    **(2) Eligibility for educational assistance based on parent's service.** A child of a member of the Armed Forces who, on or after September 11, 2001, dies in the line of duty while serving on active duty, who is eligible for educational assistance under either section 3311(b)(9) or chapter 35 of this title based on the parent's death may not receive such assistance under both this chapter and chapter 35 of this title, but shall elect (in such form and manner as the Secretary may prescribe) under which chapter to receive such assistance.

Section 3322 is ambiguous concerning the question before the Court because reasonably well-informed people can understand it in two or more different senses supporting either party's position. *See* SUTHERLAND § 45.2. We merely summarize these two potential readings of this provision now and then address them in more detail below.

A reasonably well-informed person *could* understand section 3322 to operate like so: subsection (a) bars the appellant "from receiving educational benefits under both Chapter 30 and Chapter 33 and [he] must elect under which chapter to receive educational assistance." Secretary's

---

    [5] Brackets replace the following text: "the provisions of section 5003(c) of the Post-9/11 Veterans Educational Assistance Act of 2008." Section 5003(c) of the public law is now codified at 38 U.S.C. § 3327.

Br. at 12. On this reading, the statute treats a person with multiple periods of service (like BO) functionally the same as one with a single period of service. Applying to individuals with dual entitlement based on *multiple* periods of service, subsection (d) explicitly allows the appellant to irrevocably elect Post-9/11 benefits via 38 U.S.C. § 3327. Applying to individuals with dual entitlement based on a *single* period of service, subsection (h) forces an election between programs. This reading leads to affirmance.

On the other hand, a reasonably well-informed person *could also* understand section 3322 to operate like so: subsection (a) bars someone from receiving assistance from more than one program during a single month, semester, or other applicable payment period, but allows that person to switch freely between programs. The subsection does not address the question concerning multiple periods of service. Applying to individuals with dual entitlement based on a *single* period of service, subsection (d) allows someone who already elected MGIB benefits to then irrevocably elect Post-9/11 benefits in the amount of the remaining, unused MGIB benefits for such period. But it says nothing about a person who has more than one period of qualifying service other than to the extent one of the periods qualified him or her for benefits under more than one program. Also, applying to individuals with dual entitlement based on a *single* period of service, subsection (h) imposes an election on an individual who's not yet elected any program attributable to his or her period of service. This reading leads to reversal.

Now let's explore the section in more detail to consider the alternate possibilities. A reasonably well-informed person would know the following information when seeking to understand section 3322's import. People can serve our country in a single period or in multiple blocks of time. Some veterans served, left service, and utilized MGIB benefits before Congress established the Post-9/11 program. Some of those same veterans then returned to service and amassed another period of service. The MGIB and Post-9/11 programs list partially overlapping dates for qualifying service, such that a single period of service on or after September 11, 2001, may meet the basic requirements for both programs. *See* 38 U.S.C. §§ 3011 (MGIB) and 3311 (Post-9/11). Every veteran who is deemed to have served multiple periods of service necessarily served two or more single periods of service. (This may sound ridiculously self-evident, but it bears repeating for reasons that will become apparent as the analysis proceeds.) Unless properly clarified, "educational assistance" or "benefits" could refer to either a collection of benefits programs, the collection of all periodic payments under a single program, or the money from a

discrete check distributed under a single program. Likewise, "election" of such "educational assistance" or "benefits" could refer to a choice between programs themselves or a choice of a single, discrete payment's program source. Congress didn't define these terms in the legislation.[6]

Looking at section 3322 more broadly, we see it bears the heading "[b]ar to duplication of educational assistance benefits." "Although section headings cannot limit the plain meaning of a statutory text, they supply cues as to what Congress intended." *Merit Mgmt. Grp., LP v. FTI Consulting Grp., Inc.*, 138 S. Ct. 883, 893 (2018) (citation and internal quotation marks omitted). We know from this heading that Congress is concerned with "duplication" or double-dipping. But if there's no "duplication," there's no cause for concern.[7]

Considering Congress's word choice in this heading, another way to word the precise question at issue in terms of congressional intent is whether Congress desired to bar the receipt of benefits under both the MGIB and Post-9/11 GI Bill when a veteran has at least two separately qualifying periods of service as "duplication." The face of the statute simply does not clearly answer this question.

For our purposes, section 3322's most important subsections are (a), (d), and (h). But the other portions of the statute provide context essential for our analysis. *See Hornick*, 24 Vet.App. at 52; *see also King*, 502 U.S. at 221; *Imazio Nursery, Inc.*, 69 F.3d at 1564.

### a. Section 3322(a)

Let's begin with subsection (a):

**In general.**--An individual entitled to educational assistance under this chapter [33] who is also eligible for educational assistance under chapter 30, 31, 32, or 35 of this title, chapter 107, 1606, or 1607 or section 510 of title 10, or the provisions of the Hostage Relief Act of 1980 (Public Law 96-449; 5 U.S.C. 5561 note) may not receive assistance under two or more such programs concurrently, but shall elect

---

[6] VA defines "educational assistance" to mean "the monetary benefit payable under 38 U.S.C. chapter 33 to, or on behalf of, individuals who meet the eligibility requirements for pursuit of an approved program of education under 38 U.S.C. chapter 33." 38 C.F.R. § 21.9505. But the use of "educational assistance" at the end of section 3322(a) specifically isn't restricted to chapter 33.

[7] "To duplicate" means "to do or cause to be done twice over," "to be a copy of," or "to make several copies of;" as an adjective, "double or twofold" or "exactly like another or several others;" as a noun, "a thing that is exactly like another or others" or "a second copy of a form or document." THE NEW LEXICON WEBSTER'S ENCYCLOPEDIC DICTIONARY OF THE ENGLISH LANGUAGE 289 (Deluxe ed. 1991) [hereinafter WEBSTER'S]; *see Nielson v. Shinseki*, 23 Vet.App. 56, 59 (2009) (noting that it is "commonplace to consult dictionaries to ascertain a term's ordinary meaning").

(in such form and manner as the Secretary may prescribe) under which chapter or provisions to receive educational assistance.

In isolation, one could read subsection (a) to support either party's views. It doesn't speak in terms of periods of service. Rather, it applies broadly to an "individual" entitled to Post-9/11 benefits "who is also eligible for educational assistance under" a list of other programs (including the MGIB) all connected by the conjunction "or." The only thing subsection (a) prohibits is concurrent receipt: such an individual "may not receive assistance under two or more such programs concurrently."[8]

Note also that subsection (a) provides that such an individual "shall elect (in such form and manner as the Secretary may prescribe) under which chapter or provisions to receive educational assistance." Though the election mechanism relevant to this subsection isn't immediately apparent, one thing is clear: it's not section 3327. The Secretary didn't prescribe section 3327; Congress did. Section 3327 is a square peg to section 3322(a)'s round hole. We'll revisit subsection (a)'s mystery election mechanism later.

There are many questions left after reading subsection (a). For example, as a general matter when it refers to an "individual . . . eligible for educational assistance . . ." does that mean that all periods of service no matter how distinct are lumped together for such an "individual"? Or does it mean that such an "individual" may be separately "eligible for educational assistance" more than one time based on distinct periods of service? The subsection just does not tell us, and, as we have indicated, either meaning is plausible.

An equally gaping hole in subsection (a) is a frame of reference for the bar on concurrent receipt and mandatory election: about which relevant period are we talking? The entire life of a program, such that one must exhaust a first program before touching the other? Or a single payment period, such as a month or semester, such that an individual only receives payment from one source per payment period? The first option is highly restrictive, and the other allows veterans more freedom of administration. Subsection (a) is ambiguous in this respect as well.

Though subsection (a) leaves us wanting, we can look to other subsections worded similarly to subsection (a) in an attempt to resolve this ambiguity.

b. Section 3322(e) and (g)

---

[8] "Concurrent" means "running alongside, existing or happening together;" "acting together, cooperating;" "directed to, or intersecting in, the same point;" or "having joint, equal authority." WEBSTER'S 203; *see Nielson*, 23 Vet.App. at 59.

At first glance, subsection (e) looks promising, but it is as impenetrable as subsection (a):

**(e) Bar to concurrent receipt of transferred education benefits and Marine Gunnery Sergeant John David Fry Scholarship Assistance.**--An individual entitled to educational assistance under both sections 3311(b) (9) and 3319 may not receive assistance under both provisions concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which provision to receive educational assistance.

But subsection (g) regarding transferred education benefits (that is, the ability of a veteran with qualifying service to transfer his or her benefits to others, such as children) also deals with this idea of concurrent receipt:

**(g) Bar to concurrent receipt of transferred education benefits.**--A spouse or child who is entitled to educational assistance under this chapter based on a transfer of entitlement from more than one individual under section 3319 may not receive assistance based on transfers from more than one such individual concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which source to utilize such assistance at any one time.

This subsection includes an extra phrase that perhaps sheds lights on subsection (a). Subsection (g) provides that individuals to whom it applies "shall elect (in such form and manner as the Secretary may prescribe) under which *source* to utilize such assistance *at any one time*." 38 U.S.C. § 3322(g) (emphasis added). Let's assume that, because subsection (a) doesn't include this language verbatim, it must mean something different than subsection (g). Consider how odd it would be if Congress intended to allow an entitled person *who didn't personally serve in the military* to receive up to 48 months of *transferred* benefits under subsection (g), mandating only that the person elect the source of the payments at any given time, but—through silence—also intended to prevent a servicemember him- or herself from receiving extra benefits based on multiple, separately qualifying periods of service on the condition of a similar election mechanism. This arguably absurd result should arouse suspicion that such a result is what Congress wanted to achieve. *See McNeill v. United States*, 563 U.S. 816, 822 (2011) (adopting an interpretation that "avoids the absurd results that would follow" from an alternate interpretation); *United States v. Wilson*, 503 U.S. 329, 334 (1992) (citing *United States v. Turkette*, 452 U.S. 576, 580 (1981) ("[A]bsurd results are to be avoided . . . .")); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998) (applying "the canon that a statutory construction that causes absurd results is to be avoided if at all possible").

Recall the information that a reasonably well-informed person would bring to this analysis. Unclear from subsection (a)'s wording is whether it prohibits someone from tapping into Post-9/11

18

benefits as a whole program (i.e., the collection of all the months of entitlement) while he or she is tapping into the MGIB benefits as a whole program, or whether it simply prohibits someone from benefiting from two checks from two different programs *in the same payment period*. We could word the options thus: (1) Someone who is using one educational assistance program may not receive assistance from another program until he or she has exhausted his or her total entitlement under the first program, but then he or she may start to receive assistance from the second program; or (2) Someone may not receive assistance from more than one program during a single month, semester, or other applicable payment period, but may switch freely between programs as the Secretary provides. Both of these options are feasible; thus section 3322(a) is ambiguous, capable of being understood by reasonably well-informed persons in two or more different senses. *See* Sutherland § 45.2.

c. Section 3322(b) and (c)

Moving to 38 U.S.C. § 3322(b) and (c)—these subsections may seem irrelevant to our inquiry at first glance. But notice that subsection (b) discusses the purposes for which "a period of service" may count, albeit in a very different context.

> **(b) Inapplicability of service treated under educational loan repayment programs.**--A period of service counted for purposes of repayment of an education loan under chapter 109 of title 10 may not be counted as a period of service for entitlement to educational assistance under this chapter.

Basically, it says that one can't double count a single period of service to get two benefits. In other words, it forbids double-dipping in benefits based on a single period of service for repayment of an educational loan.

Similarly, subsection (c) requires Selected Reserve servicemembers to choose under which chapter to credit their service, presumably to prevent another manifestation of potential double-dipping based on certain service:

> **(c) Service in Selected Reserve.**--An individual who serves in the Selected Reserve may receive credit for such service under only one of this chapter, chapter 30 of this title, and chapters 1606 and 1607 of title 10, and shall elect (in such form and manner as the Secretary may prescribe) under which chapter such service is to be credited.

Congress clearly and understandably disfavored double-dipping in these respects, but note that no provision indicates that Congress worried more broadly about two full, separate program entitlements (subject to 38 U.S.C. § 3695's 48-month cap) based on *two or more* separate periods of service.

19

d. Subsections 3322(d) and (h) and Coordination of Benefits

Now let's consider subsection (d):

> **(d) Additional coordination matters.**--In the case of an individual entitled to educational assistance under chapter 30, 31, 32, or 35 of this title, chapter 107, 1606, or 1607 of title 10, or the provisions of the Hostage Relief Act of 1980, or making contributions toward entitlement to educational assistance under chapter 30 of this title, as of August 1, 2009, coordination of entitlement to educational assistance under this chapter, on the one hand, and such chapters or provisions, on the other, shall be governed by [section 3327].

This provision is significant because it is the portion of section 3322 that directs one to the election provisions in section 3327. Once again, the subsection does not cure the ambiguity in subsection (a). In fact, it reflects a similar ambiguity. Does section 3322(d) govern the coordination of the appellant's entitlement to desired Post-9/11 benefits tied to one period of service and his entitlement to MGIB benefits tied to another? If so, it supports the Secretary. Or, rather, might it govern the coordination of the appellant's entitlement to MGIB and Post-9/11 benefits tied to a single period entitling him to both, and leave his existing MGIB benefits tied to an entirely different period alone? This would support the appellant.

Both possibilities are feasible. And both possibilities' feasibility indicates ambiguity; section 3322(d) is capable of being understood by reasonably well-informed persons in two or more different senses. *See* SUTHERLAND § 45.2.

The possible relationships between 38 U.S.C. § 3322(d) and (h) also evidence section 3322's ambiguity. Subsection (h)[9] states:

> **(h) Bar to duplication of eligibility based on a single event or period of service.**--
>
> **(1) Active-duty service.**--An individual with qualifying service in the Armed Forces that establishes eligibility on the part of such individual for educational assistance under this chapter, chapter 30 or 32 of this title, and chapter 1606

_____

[9] In January 2011, Congress amended the Post-9/11 GI Bill to stop VA's practice of awarding two benefits (under two different programs for up to 48 months) for the *same* period of service. *See* S. REP. NO. 111-346, at 19 (2010), *reprinted in* 2010 U.S.C.C.A.N. 1503. VA had been improperly awarding an additional 12 months of Post-9/11 benefits after veterans exhausted Montgomery GI Bill benefits, to award a total of 48 months for a veteran with a single period of service. *See id.* The U.S. Senate Committee on Veterans' Affairs explained that this practice necessitated an amendment because current "law" (i.e., the VA's interpretation) allowed "an individual, who entered into service on September 1, 2002, and who completed three years of service . . . [to establish] eligibility for 36 months of educational assistance under the [Montgomery GI Bill] in addition to eligibility for 36 months of educational assistance under the Post-9/11 GI Bill," subject to section 3695's 48-month cap. *Id.* Thus, Congress added subsection (h) requiring election of authority under which to credit a single period of service. *Id.*

20

or 1607 of title 10, shall elect (in such form and manner as the Secretary may prescribe) under which authority such service is to be credited.

**(2) Eligibility for educational assistance based on parent's service.**--A child of a member of the Armed Forces who, on or after September 11, 2001, dies in the line of duty while serving on active duty, who is eligible for educational assistance under either section 3311(b)(9) or chapter 35 of this title based on the parent's death may not receive such assistance under both this chapter and chapter 35 of this title, but shall elect (in such form and manner as the Secretary may prescribe) under which chapter to receive such assistance.

The Secretary argues that, because subsection (h) explicitly refers to a single period of service, subsection (d)'s silence as to periods of service must necessarily mean that Congress intended it to apply to coordinate entitlements based on at least two periods of service. Oral Argument at 48-50, *BO v. Wilkie*, U.S. Vet. App. No. 16-4134 (argued May 2, 2018), http://www.uscourts.cavc.gov/oral_arguments_audio.php (appearing under the 2018 tab). We disagree and decline to assume a meaning in subsection (d)'s silence that automatically disadvantages veterans in practice.

Subsections (d) and (h) can still co-exist even if they both apply only to a single period of service. As mentioned at the beginning of this discussion, subsection (d) could allow someone who already elected MGIB benefits to irrevocably elect Post-9/11 benefits in the amount of the remaining, unused MGIB benefits for a single period of service. Subsection (h) could impose an election on an individual who's not yet elected any program attributable to his or her period of service. The co-existence of these two understandings means ambiguity; a reasonably well-informed person could understand their relationship in at least these two senses. *See* Sutherland § 45.2.

The truth is that no matter how closely one reads section 3322, or no matter how one parses its various subsections, it is ambiguous. It is possible to read this provision to require a person like BO with two distinct qualifying periods of service entitling him to benefits under two programs to choose irrevocably between them. But it is equally possible to read the section as being limited to addressing what to do when a person qualifies for two programs based on a single period of service. In sum, Congress hasn't spoken directly to the precise question at issue—at least not clearly. *See Chevron*, 467 U.S. at 842-43. Thus, our inquiry continues.

C. The relevant regulations parrot the ambiguous statutes;
therefore, we afford them no *Chevron* deference.

Because we consider section 3322 ambiguous for our purposes, we next consult the implementing regulations to see whether VA adopted a permissible interpretation of such ambiguity, and if so, we defer to it. This is what *Chevron* commands. *See id.* at 844-45.

It turns out that the *Chevron* inquiry is quite straightforward in this case. The implementing regulations that cite section 3322 as authority and could possibly offer a permissible interpretation of the statutory ambiguity are 38 C.F.R. §§ 21.4022, 21.9635(w), and 21.9690.[10] Neither the Board nor the Secretary cited any of these regulations, much less argued that, through them, VA adopted a permissible interpretation of section 3322's ambiguity that is favorable to the Secretary's position now. Checking them independently for such a permissible interpretation, we find none. At minimum, the regulations essentially "repeat" the silence in the statute about how to treat a veteran with two distinct periods of qualifying service entitling him or her to benefits under different programs. At most, they point toward an interpretation that is more favorable to appellant than the Secretary; we dig deeper into this point in our next section about the best interpretation. Thus, these regulations are not ones to which *Chevron* deference applies, at least with respect to the question before the Court. *See Cook v. Snyder*, 28 Vet.App. 330, 339 (2017) (noting *Chevron* deference is not appropriate when regulation does not resolve statutory ambiguity but merely repeats it), *aff'd sub. nom. Cook v. Wilkie*, 908 F.3d 813 (Fed. Cir. 2018).[11]

Because VA didn't adopt regulations addressing the relevant statutory ambiguity, we assume the task of independently determining the best interpretation on the meaning of the statutory scheme. *See Chevron*, 467 U.S. at 844-45. We turn to that endeavor next.

---

[10] The full list of implementing regulations comprises 38 C.F.R. §§ 21.3022, 21.4022, 21.5022, 21.7642, 21.9505, 21.9570, 21.9635, and 21.9690. Of those, the other five aren't directly relevant and can't possibly be read to adopt a clear, permissible interpretation of the statutory ambiguity. *See* §§ 21.3022, 21.5022, and 21.7642 (concerning the relationships between different chapters (i.e., not chapter 30) and chapter 33), 21.9505 (offering a definition for active duty), 21.9570 (concerning transfer of entitlement).

[11] In theory, we might have been called on to accord controlling deference to the Secretary's interpretation of his regulations. *See Auer v. Robbins,* 519 U.S. 452 (1996). Whatever the continued viability of this doctrine is today, *see Kisor v. Wilkie,* 139 S. Ct. 2400 (2019), no *Auer*-like deference would be due to the Secretary's position in this appeal. Because the Secretary is at most providing his view on the regulations, and the regulations do nothing more than copy the ambiguity in the statute, his interpretation is simply an argument about the statute. That is not subject to *Auer* deference. *See Gonzales v. Oregon*, 546 U.S. 243, 257 (2006) ("An agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language."). In terms of deference, this would leave us with *Skidmore*. As we noted above, *see supra* Part III.A, a court may look to an agency's interpretation of a statute for guidance in a looser sense of "deference." The utility of such guidance depends at its core on the persuasiveness of an agency's reasoning. *See Skidmore*, 323 U.S. at 140. As we discuss in the next section, the Secretary's arguments about the meaning of the statutory scheme (as well as his regulations) lack the "power to persuade."

D. Section 3322 is best interpreted to allow BO to receive benefits under both programs.

We have no reason to think that any one of section 3322's provisions is the result of obvious mistake or error, so we have an obligation to construe it so that effect is given to all its provisions; so that no part will be inoperative or superfluous, void or insignificant; and so that one section will not destroy another. *See* SUTHERLAND § 46:06; *see Splane*, 216 F.3d at 1068-69. We conclude that the best interpretation favors the appellant, *see Chevron*, 467 U.S. at 844-45, and that the Secretary's arguments aren't persuasive, *see Skidmore*, 323 U.S. at 140.

We begin by returning to the statutory text. Our interpretation of subsection (a) is the heart of our more global interpretation of section 3322:

> **In general.**--An individual entitled to educational assistance under this chapter [33] who is also eligible for educational assistance under chapter 30, 31, 32, or 35 of this title, chapter 107, 1606, or 1607 or section 510 of title 10, or the provisions of the Hostage Relief Act of 1980 (Public Law 96-449; 5 U.S.C. 5561 note) may not receive assistance under two or more such programs concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which chapter or provisions to receive educational assistance.

The language of subsection (a) prohibits someone from benefiting from two or more checks from two or more different programs in the same payment period. Recall the options for subsection (a)'s potential meanings we outlined earlier in the analysis. That section could be concerned with preventing "duplication" in terms of programs or "duplication" with respect to multiple payments made during a given period of time. We believe the better reading is that the duplication with which Congress was concerned was the latter. In other words, someone may not receive assistance from more than one program during a single month, semester, or other applicable pay period, but may switch freely between programs, as the Secretary provides.

We conclude this is the best reading of the statute for several reasons, acknowledging that Congress was silent on this question. First, our interpretation is consistent with and gives meaning to the other parts of section 3322. Second, our reading makes sense in the context of the Secretary's regulations. Indeed, any other meaning makes much of the regulatory framework largely meaningless. Third, this interpretation gives real meaning to the 48-month aggregate cap, something that loses force as a practical matter under an alternate construction of the statute. Fourth, our interpretation is consistent with congressional purpose and the history of the creation of educational benefits programs more generally. And finally, the pro-veteran canon of statutory

construction removes any doubt that the ambiguity in this statute should be resolved in the manner we have suggested. We address each of these matters in turn.

*1. Giving Meaning to All Statutory Provisions*

First, our interpretation of subsection (a) fits comfortably with how we have interpreted the balance of section 3322, thereby giving meaning to all the statute's provisions. A prime example is the relationship between subsections (d) and (h). For ease of reference, here they are again:

> **(d) Additional coordination matters.**--In the case of an individual entitled to educational assistance under chapter 30, 31, 32, or 35 of this title, chapter 107, 1606, or 1607 of title 10, or the provisions of the Hostage Relief Act of 1980, or making contributions toward entitlement to educational assistance under chapter 30 of this title, as of August 1, 2009, coordination of entitlement to educational assistance under this chapter, on the one hand, and such chapters or provisions, on the other, shall be governed by [section 3327].

> **(h) Bar to duplication of eligibility based on a single event or period of service.**--

> > **(1) Active-duty service.**--An individual with qualifying service in the Armed Forces that establishes eligibility on the part of such individual for educational assistance under this chapter, chapter 30 or 32 of this title, and chapter 1606 or 1607 of title 10, shall elect (in such form and manner as the Secretary may prescribe) under which authority such service is to be credited.

> > **(2) Eligibility for educational assistance based on parent's service.**--A child of a member of the Armed Forces who, on or after September 11, 2001, dies in the line of duty while serving on active duty, who is eligible for educational assistance under either section 3311(b)(9) or chapter 35 of this title based on the parent's death may not receive such assistance under both this chapter and chapter 35 of this title, but shall elect (in such form and manner as the Secretary may prescribe) under which chapter to receive such assistance.

Subsection (h) proclaims a single period of service as its relevant frame of reference when considering elections between programs. But this clarity need not necessitate exclusivity of control over individuals with a single period of service. Subsection (d) may also regulate individuals with a single period of service who qualify for multiple programs. Each subsection applies to individuals with a single period of service at different stages of the educational assistance application process.

For purposes of our discussion, the relevant stages are (1) application, (2) application pending, and (3) decision. *See* U.S. Dep't of Veterans Affairs, *Education and Training: Apply for Benefits*, VA.GOV, https://benefits.va.gov/gibill/apply.asp (last visited Mar. 6, 2019) (providing

application options and an "interactive map to find out how quickly your regional office is processing education claims," and summarizing post-decision appeal options). Subsection (h) applies at the application stage to mandate a primary election, an initial choice among programs for those who haven't yet tried to use educational assistance attributable to a single period of service. Subsection (d) applies to those individuals with a single period of service already positioned to use MGIB benefits, with an application pending for or a decision awarding MGIB benefits, who'd prefer to use Post-9/11 benefits. In other words, individuals who've already made an election who want a second election.

This interpretation is also more faithful than the Secretary's to the spirit of subsection (d)'s subheading "[a]dditional coordination matters." "Additional" suggests that this subsection works secondary to other provisions. To coordinate means "to bring the parts or agents of a plan, process etc. into a common whole, to harmonize." WEBSTER'S 215; *see Nielson*, 23 Vet.App. at 59. In no way does "coordination" denote or connote restriction or limitation. Yet the Secretary's position treats subsection (d) and section 3327 as strings attached to educational assistance received under more than one program. Our interpretation embodies the enabling connotation of "coordination."

## 2. *Regulatory Framework*

Next we consider the regulatory structure the Secretary has created to implement these programs, principally 38 C.F.R. §§ 21.4022, 21.9635(w), and 21.9690. The Secretary's regulatory scheme supports our conclusion. Section 21.4022 ("Nonduplication—programs administered by VA") cites 38 U.S.C. § 3322 for its statutory authority and states:

> A veteran . . . who is eligible for educational assistance allowance . . . under more than one of the provisions of law listed in this section [including both MGIB and Post-9/11] . . . cannot receive such benefits concurrently. The individual must choose under which program he or she will receive benefits for the particular period(s) during which education or training is to be pursued. The individual may choose to receive benefits under another program (other than 38 U.S.C. chapter 33 [Post-9/11]) at any time, but not more than once in a calendar month. The individual may choose to receive benefits under 38 U.S.C. chapter 33 [Post-9/11] at any time, but not more than once during a certified term, quarter, or semester.

It's impossible to reconcile § 21.4022 with the Secretary's position concerning the meaning of section 3322. If someone with multiple periods of service has only two options, irrevocable election or exhaustion, he or she could *never* switch between programs, a possibility this regulation clearly contemplates. The Secretary's position thus would render his own regulation inoperable

25

surplusage, something we can't condone. *See* SUTHERLAND § 46:06; *see Splane*, 216 F.3d at 1068-69.

Next, § 21.9635(w), which poses similar problems for the Secretary's position, cites 38 U.S.C. § 3322(a) for its statutory authority and reads:

> Receipt of educational assistance allowance under another educational assistance program. An individual in receipt of educational assistance under this chapter [33] who is also eligible for educational assistance under [among others, the MGIB program] may choose to receive educational assistance under another program. VA will terminate educational assistance under [Post-9/11] effective the first day of the enrollment period during which the individual requested to receive educational assistance under [among others, the MGIB program].

This regulation presumes that someone receiving Post-9/11 educational assistance can switch and receive MGIB educational assistance. Again, such a reality is impossible in the Secretary's world. Just as with § 21.4022, the Secretary's position thus would render the relevant parts of § 21.9635(w) inoperable surplusage, and, again, we can't condone that. *See* SUTHERLAND § 46:06; *see Splane*, 216 F.3d at 1068-69.

Note also VA's response to public comments on proposed § 21.9635(w), pursuant to the Administrative Procedure Act, which "clarif[ied] that an election to receive benefits under an existing educational assistance program on or after August 1, 2009, does not negate the opportunity to elect or use the Post-9/11 GI Bill at a later date." 74 Fed. Reg. 14,654, 14,661 (Mar. 31, 2009) (emphasis added). Instead, § 21.9635(w) applies to "[i]ndividuals who are eligible for the Post-9/11 GI Bill and another educational assistance program at the same time" and allows them to "specify under which program they wish to receive payment."[12] *Id.* VA clarified that this regulation contemplates someone like the appellant tapping into either MGIB or Post-9/11 benefits "enrollment period" to "enrollment period," and its logistics support our following interpretation of 38 U.S.C. § 3322(a). *Id.*

Third, we have 38 C.F.R. § 21.9690 ("Nonduplication of educational assistance"), citing 38 U.S.C. § 3322 as authority. This regulation prohibits concurrent, but not consecutive, usage of Post-9/11 and other GI Bill benefits. 38 C.F.R. § 21.9690(a). Under this Post-9/11 GI Bill implementing regulation, VA identifies the notice-in-writing procedure veterans who are "eligible

---

[12] To be clear, we do not address whether § 21.9635(w) conflicts with other provisions such as 38 U.S.C. § 3322(h)(1) (requiring someone eligible for more than one program as of 2011 to credit their service under one authority) and 38 U.S.C. § 3327 (requiring some veterans to irrevocably elect a program in lieu of another) for veterans with a single period of service.

for educational assistance under more than one program" must use to "specify . . . which benefit he or she wishes to receive." § 21.9690(b). Those veterans "may choose to receive payment under another educational assistance program at any time, but may not change which benefit he or she will receive more than once during a term, quarter, or semester." *Id.* Again, this regulation contemplates someone like the appellant enjoying benefits under MGIB and Post-9/11 programs in a way that the Secretary's position precludes. Once more, the Secretary's position thus would render this regulation partially inoperable, and, again, we can't condone that. *See* Sutherland § 46:06; *see Splane*, 216 F.3d at 1068-69.

The provisions of § 21.4022 and § 21.9690 together seem to elaborate on section 3322(a)'s bar on concurrent receipt and to prescribe the mystery election mechanisms that section 3322(a) leaves to the Secretary. They allow veterans with multiple periods of service maximum freedom to coordinate their benefits under different programs if they don't double up during the relevant payment period, whether it be a calendar month, term, quarter, or semester. Section 21.9635(w), as a technical implementation of section 3322(a), syncs with section 3322(a) in a similar way.

### 3. 48-Month Cap Under Section 3695

Moreover, our interpretation gives real meaning to section 3695's 48-month aggregate cap. The Secretary's argument in this case makes the section largely a nullity.[13] That is something to be avoided. *See Husted v. A. Philip Randolph Inst.,* 138 S. Ct. 1833, 1842 (2018). The interpretation we adopt today yields many instances in which the aggregate cap can apply. Indeed, BO's circumstances provide a prototypical example. Our dissenting colleague asserts that a veteran like BO is not barred from reaching the 48-month aggregate cap under section 3695 because a veteran can decide to use his 36months of benefits under the MGIB program and then use 12 months of the Post-9/11 program, indicating that Congress intended for a veteran like BO could use both

---

[13] The Secretary's position would render section 3695's 48-month aggregate cap largely a nullity because he points to only a single route to 48 months of benefits: someone who's eligible for two programs must exhaust the first's 36 months and then may elect 12 extra months of the second. Oral Argument at 42:04-43:41, *BO v. Wilkie*, U.S. Vet. App. No. 16-4134 (oral argument held May 2, 2018), http://www.uscourts.cavc.gov/oral_arguments_audio.php (appearing under the 2018 tab). To the extent the Secretary asserts a statutory basis for this route, it's less than clear to us. And not only does he provide this single example, but VA has been inconsistent at best in informing veterans of this route. While the appellant's application may have informed him of this option, *see* R. at 125, 1156, a later application version doesn't seem to advise veterans such as the appellant to exhaust the MGIB benefits before applying for Post-9/11 benefits. *See* R. at 1151-52. We do not note this for the purposes of factfinding, but to address the absurdity of the Secretary's position. Indeed, even if the route still exists (exhaustion of 36 months under one program and then applying for 12 months under another program), the 48-month cap is a practical nullity if no one takes the route because they don't know it's there.

programs to obtain the full 48 months of benefits under section 3695. However, nowhere in the statute does it state that a veteran may use 36 months under the MGIB program and then use 12 months under the Post-9/11 program. It is unclear where VA or the dissent has found the authority for this interpretation. Our interpretation gives full meaning to section 3695.

### 4. *Congressional Purpose*

Our interpretation also dovetails with Congress's statutory purpose to bar duplication. Simply put, no duplication is occurring in the case of someone like the appellant. Again, the Post-9/11 program didn't replace the MGIB program. They co-exist. So, receipt of benefits under one program for one period of service can't possibly constitute benefits duplicative of those received under another program for another period of service. By analogy, it is difficult to conceive how one could possibly consider "duplication" of benefits to occur when a veteran serves two different periods of service and incurs two different injuries in service, thereby independently qualifying the veteran for entitlement to service connection and ratings under two different diagnostic codes (up to a 100% rating cap). This situation is no different.

The history of other GI bill programs also supports entitlement under more than one program at the same time without election so long as benefits are not used concurrently. Congress's historical practice has been to provide entitlement to benefits under more than one program based on different periods of service up to an aggregate limit. The original World War II GI Bill and the Korean War GI Bill allowed combination of benefits for veterans qualifying under both bills up to the aggregate limit (also 48 months). Korean War GI Bill, Pub. L. No. 82-550, § 214(a)(3), 66 Stat. 663, 665.[14] Congress also prohibited the concurrent, but not consecutive, usage of these benefits. *See* § 232(h), 66 Stat. at 670. The same consecutive use was allowed for the Post-Korean War and Vietnam Era GI Bill if one qualified for both with service up to the aggregate limit. Cold War GI Bill, Pub. L. No. 89-358, §§ 2 & 3(b), 80 Stat. 12, 14, 21 (initially setting the limit at 36 months and barring concurrent usage); Pub. L. No. 90-631, 82 Stat. 1331 (amending the aggregate limit to 48 months). We don't lightly presume Congress changed its historical approach when adopting the Post-9/11 program, especially when the change would not be a veteran-friendly one.

---

[14] This provision of the public law references Part VIII of Veterans Regulation Numbered 1(a), which established the Original GI Bill. Pub. L. No. 78-346 § 400(b), 58 Stat. 287-90 (adding new part VIII to Veterans Regulation Numbered 1(a)).

Legislative purpose, broadly speaking, also tips in favor of the appellant. If this is about incentives to get people to join the all-volunteer Armed Forces, the appellant's view is more consistent with that purpose. And we get to the same result if we suppose the purpose was to be a reward for or acknowledgement of service. *See Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018) (recognizing that legislative purpose can serve as a useful tool in statutory interpretation).

### 5. Pro Veteran Canon

Finally, to the extent a question remained, if *Brown v. Gardner*, 513 U.S. 115, would ever have a real effect on an outcome, it would be here. In *Gardner*, the Supreme Court applied the doctrine that interpretative doubt should be resolved in veterans' favor. *Id.* at 117-18. Here, that doctrine counsels in favor of an interpretation of the statutory scheme to allow veterans with multiple periods of service to obtain benefits under both the MGIB and the Post-9/11 GI Bill subject to the aggregate cap of 48 months.[15] To interpret the statute otherwise would be to ignore the import of the pro-veteran canon of construction, an interpretative tool that has real meaning. *See Procopio v. Wilkie,* 913 F.3d 1371, 1382-87 (Fed. Cir. 2019) (en banc) (O'Malley, J., concurring) (discussing the importance of the *Brown v. Gardner* canon of construction).[16]

### E. Application to BO

Our interpretation has two consequences for the appellant. First, the form the appellant signed irrevocably waiving his benefits attributable to his first period of service under the MGIB program is a nullity.[17] A forced "election" based on an incorrect legal interpretation has no meaning at all. Second, the Board committed legal error warranting reversal and remand. *See Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) (explaining that reversal is appropriate "where the Board has performed the necessary factfinding and explicitly weighed the evidence"); *Tucker*

---

[15] Our dissenting colleague disagrees that our approach is "veteran friendly" and, to that end, argues that our approach treats "individuals with intermittent periods of active duty service [better] than . . . individuals with a continuous period of active duty service." *Post* at 40. But her conclusion rests on the assumption that we have defined "period of service" when we haven't. That question remains open.

[16] We recently decided *Carr v. Wilkie*, 31 Vet. App. 128, (2019). While *Carr* did not address this specific issue, it states, "Although a recipient may qualify for benefits under more than one program (e.g., chapter), she may not receive assistance under two or more programs at the same time. In such cases, the recipient must choose to proceed under a single program." *Id.* at 130 n.2 (citing 38 U.S.C. § 3322). *Carr*'s note underscores the naturalness of our reading, and our decision in this case elaborates on its dicta.

[17] Again, this is because, under our interpretation of section 3322, we never get to section 3327, the irrevocable election section on which the Secretary focuses.

*v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is warranted "where the Board has incorrectly applied the law").

Thus, we reverse the Board's decision and remand with instructions that the Board is to calculate the amount of time for which BO is entitled to benefits under the terms of the Court's decision. It appears, the correct calculation is that BO is entitled to a total of 22 months and 16 days of additional benefits that he could take either (1) all as Post-9/11 chapter 33 benefits or (2) as 10 months and 16 days of MGIB chapter 30 benefits and 12 months of Post-9/11 chapter 33 benefits. But we leave this factual determination to the Board in the first instance.

On remand, the appellant may submit additional evidence and argument, including the arguments raised before the Court and has 90 days to do so from the date of VA's postremand notice. *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); *see also Clark v. O'Rourke*, 30 Vet.App. 92, 97 (2018). The Board must consider any such additional evidence or argument submitted. *Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board must also proceed expeditiously. 38 U.S.C. §§ 5109B, 7112.

## IV. CONCLUSION

After considering the parties' briefs, oral arguments, the record on appeal, and the governing law, the Court REVERSES the July 14, 2016, Board decision and REMANDS the matter for further proceedings consistent with this opinion.

BARTLEY. *Judge,* dissenting: I respectfully dissent from my colleagues' conclusion that the completely voluntary statutory irrevocable election provision, 38 U.S.C.§ 3327, and its directing statute, 38 U.S.C. § 3322(d), do not apply to veteran BO. He meets the statutes' straightforward requirements and they are not ambiguous. Before he exhausted his full 36 months of MGIB education benefits he voluntarily signed an irrevocable election to receive Post-9/11 education benefits, and was informed on his application form of the drawback of doing so, R. at 1156. Therefore, section 3327 prescribes that his entitlement to Post-9/11 benefits is limited to 10 months and 16 days, which was the unused remainder of his MGIB entitlement when he filed his section 3327 election. Thus, the Board decision should be affirmed.

Before moving further, a short summary of the parts of the Post-9/11 education benefits statutes relevant to veteran BO's case is in order. Although the statutory scheme here is complex,

with many moving parts that apply to thousands of servicemembers, veterans, and dependents in their thousands of different situations, this does not equate to ambiguity. After all, "[t]he test for ambiguity is not complexity, but lack of clarity." *Wilson Arlington Co. v. Prudential Ins. Co.*, 912 F.2d 366, 371 (9th Cir. 1990); *see also Atencio v. O'Rourke,* 30 Vet.App. 74 (2018) ("Complexity and ambiguity are distinct concepts.").

### A. *Summary of Relevant Parts of 38 U.S.C. §§ 3322 and 3327*

Because the periods of eligibility for MGIB and Post-9/11 education benefits overlap and the programs were intended to coexist, there are rules that specify how they coordinate.[18] Section 3322, titled "Bar to duplication of educational assistance benefits," is one of the statutes that provides this interface. The current section 3322, even its title, is patterned on 38 U.S.C. § 3033, which was enacted in 1984 to provide coordination between the MGIB program and, inter alia, the older Veteran's Educational Assistance Program (VEAP). *Compare* 38 U.S.C. § 3033, *with* 38 U.S.C. § 3322. The language that bars concurrent receipt in sections 3033 and 3322 track almost exactly, although the programs involved differ. Subsection 3322(d), titled "Additional Coordination Matters" provides that for individuals who qualify for both MGIB and Post-9/11 education benefits, or for those who qualify for Post-9/11 benefits and are making contributions toward MGIB benefits, "coordination of entitlement" is governed by section 3327. 38 U.S.C. § 3322(d). Section 3327, titled "Election to receive educational assistance," provides that qualifying individuals who want to receive Post-9/11 benefits in lieu of fully exhausting their MGIB entitlement "may" elect to do so.[19] 38 U.S.C. § 3327. As relevant here, section 3327 provides that an eligible elector is one who (1) is otherwise entitled to Post-9/11 GI Bill benefits and (2) retains unused entitlement under the MGIB program. § 3327(a)(1), (2).

As the majority correctly notes, some individuals might want to begin receiving Post-9/11 benefits before they exhaust their MGIB benefits because the Post-9/11 program is generally more generous than the MGIB program, particularly for those who served for a longer period and are in the top payment tier for Post-9/11 benefits. The Post-9/11 program covers the net cost of in-state

---

[18] I discuss only the MGIB and Post-9/11 programs because they are the education benefits relevant to veteran BO's case. However, the relevant statutes, in particular 38 U.S.C. §§ 3322 and 3327, refer to chapters 31, 32, 35 and 10 U.S.C. § 1606 and 1607 as well.

[19] My references to section 3327 are not intended to include subsection (h) of that statute, which applies only as to an individual who submitted an election on or after January 1, 2017, and therefore does not apply to veteran BO.

tuition, a housing allowance (so long as the student is not currently on active duty), and a book stipend, items that the MGIB program does not cover. [20] *Compare* 38 U.S.C. § 3313, *with* 38 U.S.C. §§ 3001 *et seq*. However, for other individuals the better option may be continuing to receive MGIB benefits until they are exhausted and then applying to receive Post-9/11 benefits.

Congress arranged that an individual electing Post-9/11 benefits before using their full entitlement to MGIB benefits would face two drawbacks that are relevant here. First, the statutory election of Post-9/11 benefits under section 3327, while the individual still has unused MGIB benefit entitlement, would be irrevocable. *See* 38 U.S.C. § 3327(i). Second, instead of remaining entitled to receive an aggregate 48 months of education benefits, which is the statutory cap applicable to an individual who is entitled to education benefits under two or more programs, an individual who has unused MGIB benefits available but elects to receive Post-9/11 benefits under section 3327 is entitled to Post-9/11 benefits only for the remainder of the period left on their MGIB entitlement, up to a total of 36 months combined. 38 U.S.C. § 3327(d)(2). Of course, an individual who does not voluntarily elect to receive Post-9/11 benefits under section 3327 before exhausting their MGIB benefits may receive the full 36 months of MGIB benefits and then receive an additional 12 months of Post-9/11 education benefits before reaching the 48-month cap. 38 U.S.C. §§ 3327(d)(2), 3695 (section 3695 establishes a 48-month cap on the combined period of educational assistance received under two or more programs and section 3327(d)(2) provides that only those individuals who voluntarily relinquish unused MGIB benefits are subject to the MGIB "remainder" rule). And those with qualifying Post-9/11 service who chose to not pay into the MGIB program and thus have no entitlement to MGIB benefits are entitled to receive 36 months of Post-9/11 benefits. 38 U.S.C. § 3312(a).

### B. The Different Types of Election

Before going further, I note an additional complication regarding the statutory scheme at issue here: Section 3322 references several different types of elections pertinent to Post-9/11 benefits. Mention of election is found in subsections 3322(a), (c), (e), (g), and (h), and all provide that in certain circumstances an individual "*shall elect* [] *in such form and manner as the Secretary may prescribe*[]*"* the program to which the individual's service will be credited. 38 U.S.C.

---

[20] Active duty members who enroll in the MGIB program and pay $100 per month for 12 months are entitled to receive a monthly education stipend so long as they have completed a minimum service obligation. 38 U.S.C. § 3011.

§ 3322(a), (c), (e), (g), (h) (emphasis added). Notably, Congress delegated to VA the authority to determine the form and manner of these elections, essentially establishing a largely regulatory election process, although authorized by statute, for individuals covered by subsections 3322(a), (c), (e), (g), and (h).

In contrast, subsection 3322(d) doesn't specifically mention election, but instead directs that certain individuals' education benefits entitlements will be coordinated by section 3327.[21] Section 3327(a) sets out the *completely voluntary statutory election process* that veteran BO chose. Although he argues that section 3322(h), which explicitly applies only to individuals with a single period of service, triggers the section 3327(a) voluntary statutory election provision, oral argument at 11:46-50, and thus that section 3327 only applies to individuals with a single period of service, these two provisions have no inherent relationship. Whereas section 3322(h) provides VA with authority to establish a *regulation-based mandatory* election process for those with a single period of service, section 3322(d) doesn't reference the individual's period or periods of service and directs individuals to the section 3327 *statutory voluntary election process.* In effect, the statutory scheme relevant here provides for different election procedures—section 3322(h)'s reference to a single period of service does not impact the voluntary section 3322(d)/3327 statutory election process and there is no indication in the text that section 3322(d)/3327 applies only to those with multiple education benefit entitlements under a single period of service.

## C. The Majority's Framing of the Issue

The majority's various characterizations of the issue in this case demonstrate a misunderstanding of how the MGIB and Post-9/11 education programs interrelate and in framing the issue they pose misleading choices. They view the question at issue as whether a veteran who qualifies for MGIB benefits under one period of service and Post-9/11 benefits under an entirely separate period of service may use one period of service to obtain MGIB benefits and the other period of service to obtain Post-9/11 benefits, subject to any applicable aggregate cap—or must such a veteran choose between, or "irrevocably elect," or be forced to elect which program he or she uses? *Ante* at 15. My colleagues repeat this query in various ways throughout their decision. *Ante* at 10, 15-16, 19-21. But it is perfectly clear that under section 3322(d)/3327 no one is forced

---

[21] Subsection 3322(d) refers to a section 3301 note. In December 2016, Congress enacted a "recodification and improvement of [the] election process for [the] post-9/11 educational assistance program" and the section 3301 note became an entirely new statute, section 3327, which sets forth the voluntary statutory election process at issue here. Pub. L. No. 110-252, title IV, § 405(c), 130 Stat. 1558 (Dec. 16, 2016).

to choose between the two programs. As noted above, while section 3322(h) requires a compulsory election as to how to credit a single period of service, the section 3327/3322(d) election that veteran BO chose, which consists of electing Post-9/11 benefits while having unused MGIB entitlement, is entirely voluntary. An individual may continue to use MGIB benefits until those benefits are exhausted and then receive Post-9/11 benefits, subject to the overall statutory cap of 48 months. No election is required.[22]

The majority also asks whether Congress desired to *bar* the receipt of benefits under both MGIB and Post-9/11 when a veteran has at least two separately qualifying periods of service as "duplication." *Ante* at 16. Here again, they frame the issue inappropriately because the statutes are clear that there is no bar to an individual receiving both benefits nonconcurrently. But the majority's questions imply that the Board decision in BO's case would support a bar to receipt of both benefits for veteran BO. It would not—it would simply hold veteran BO to the election that he made to receive Post-9/11 benefits while being entitled to unused MGIB benefits, with the associated drawback that was discussed earlier.

### D. *The majority ignores the plain language.*

As noted, section 3322 is titled "Bar to duplication of educational assistance." The majority reasons that the entire statute is ambiguous because it is unclear what type of duplication is barred and what period the duplication bar would apply to. *Ante* at 21. They conclude that the duplication barred by section 3322 is as to an individual receiving assistance from more than one program during a single month, semester, or other applicable pay period. Then they reason that the best independent interpretation of section 3322 is that it allows a veteran like BO, with multiple entitlements under separate periods of service, to receive full benefits under both MGIB and Post-9/11 programs, although not at the same time and subject to the 48-month cap. *Ante* at 23. Applying this interpretation, they conclude that subsection (d) doesn't apply to veteran BO.

To answer whether veteran BO's voluntary election under section 3322(d)/3327 is valid and limits him to the remainder of the unused period of his MGIB benefits, we must look to the plain language of the statute. "[A] functioning system of laws must give primacy to the plain

---

[22] Contrary to the majority's statement, *ante* at 28, there is a clear statutory basis for concluding that individuals who fully exhaust their 36 months of MGIB benefits may then receive 12 months of Post-9/11 benefits. Because these individuals did not make a voluntary section 3322(d)/3327 election, they are not subject to section 3327(d)(2)—which limits the amount of Post-9/11 benefits available to the number of months of unused MGIB benefits—and thus may still obtain 48 months of educational benefits subject to the section 3695 cap.

language of authorities." *Tropf v. Nicholson*, 20 Vet.App. 317, 322 n.1 (2006); *see also Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) ("'Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure'" (quoting *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1328 (Fed. Cir. 2005))).

The majority concludes that section 3322 as a whole, and subsection 3322(d) that directs individuals to the voluntary election process in section 3327, is ambiguous because it can be read to apply to individuals with multiple entitlements under a single period of service as well as multiple entitlements under multiple separate periods of service. *Ante* at 21. I agree that the statute says that, but that does not make it ambiguous. Based on the plain language of the statute, applying the voluntary election process to both classes of individuals was the intent of Congress.

The language of section 3322 is clear and unambiguous—it doesn't refer to an individual's entitlement based on whether they have multiple entitlements under a single period of service or under multiple separate periods of service.[23] Even the majority acknowledges that section 3322 "doesn't speak in terms of periods of service" but "applies broadly to an individual entitled to Post-9/11 benefits who is also eligible for [MGIB benefits]." *Ante* at 17. To me, their characterization demonstrates that, far from being ambiguous, the language of section 3322, including subsection (d), applies broadly to individuals who meet the criteria listed, regardless whether their entitlements to MGIB and Post-9/11 fall under a single period of service or multiple separate periods of service. Based on the plain language of the statute, this is the scheme that Congress intended. After all, "[b]road general language is not necessarily ambiguous when congressional objectives require broad terms." *Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980).

As to subsection 3322(d) its language is also plain and unambiguous. As relevant here, it provides that in the case of an individual entitled to MGIB educational assistance, or making contributions toward entitlement to MGIB, coordination of entitlement to Post-9/11 educational assistance and MGIB educational assistance will be governed by 38 U.S.C. § 3327, the voluntary statutory election provision. Instead of acknowledging the plain language, the majority finds that subsection (d) applies to individuals with entitlement to both MGIB and Post-9/11 benefits, but based on a single period of service. They conclude that it applies to those with a single period of service who have an application pending for, or a decision awarding, MGIB benefits, who would

---

[23] Subsection (b) mentions period of service and subsection (h) references a single period of service. These provisions are discussed later.

prefer to use Post-9/11 benefits. *Ante* at 25. Then, applying these criteria to veteran BO's case, they conclude that 3322(d), and consequently section 3327, doesn't apply to him because he was eligible for MGIB benefits under an earlier period of service and Post-9/11 benefits under an entirely separate later period of service.

Because section 3322(d) makes no mention whatsoever of an individual's period or periods of service, let alone whether an individual has entitlement to Post-9/11 and MGIB benefits under separate periods of service, my colleagues' conclusions are insupportable. Under the majority's interpretation, seemingly mutually exclusive classes of individuals—those with multiple education benefits entitlements under a single period of service and those with multiple entitlements under multiple separate periods of service—are not distinct classes because those with multiple periods of service necessarily have single periods of service as well. This adds a layer of confusion to already confusing interface rules between two programs, but their interpretation has problems more significant than mere confusion.

> ### E. *Congress intentionally added a single period of service requirement to subsection (h) but did not do so in subsection (d).*

Congress demonstrated that it knew how to require that a section 3322 provision apply only to individuals with a single period of service, but it didn't do so in subsection 3322(d). Instead, in subsection 3322(h), titled "Bar to duplication of eligibility based on a single event or period of service," Congress clearly proscribed benefits based on the individual's period of service. But the other 3322 subsections, including subsection (d), do not mention the qualifying individual's number of periods of service.[24] The majority glosses over this fact, asserting that 3322(h)'s single-period-of-service frame of reference "need not necessitate exclusivity of control over individuals with a single period of service." *Ante* at 24. But it is undoubtedly significant that subsection 3322(h) explicitly states that it applies to those with a single period of service while subsection 3322(d) is silent on the matter.

It is well settled that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972)).

---

[24] Subsection 3322(b) also references "period of service," providing that a period of service counted for purposes of repayment of an education loan under 10 U.S.C. § 109 may not be counted as a period of service for entitlement to educational assistance under Chapter 33.

The Supreme Court of the United States asserted in *Russello*: "We refrain from concluding here that [] differing language in [] two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship." 464 U.S. at 23; *see also Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617, 631 (2018) ("Courts are required to give effect to Congress' express inclusions and exclusions, not disregard them.").

Here, there is no reason to suppose that Congress intended 3322(d) to be more restrictive than the plain text. That is, there is no reason to suppose that Congress intended 3322(d) to apply only to individuals with multiple entitlements based on a single period of service but not to those with multiple entitlements based on separate periods of service, but failed to say so. The absence of reference to an individual's period of service in subsection 3322(d) means that the period or periods of service of the qualifying individual are not relevant, and that subsection 3322(d) and its companion statute, section 3327, applied to veteran BO in 2015 when he was still entitled to MGIB benefits but wanted to receive Post-9/11 benefits.

Moreover, the majority concludes that the title of (d), "Additional coordination matters," supports its reading—that the use of "additional" in the title suggests that (d) is "secondary" to other section 3322 provisions. *Ante* at 25. However, "additional coordination matters" indicates that whatever the exact meaning of the section 3322 bar on duplication of education benefits, (d) concerns matters supplementary or in addition to the coordination-of-programs matters central to section 3322 as a whole. *See* RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 23 (2d ed. 1987) (defining "additional" as "added," "more," or "supplementary"). This is borne out by the text of (d), which merely refers certain individuals to the voluntary election provision and, unlike the other subsections, doesn't set out rules concerning duplication of benefits. Thus, the title of (d) doesn't support their analysis; in fact, the title conveys that it deals with supplementary matters, such that the meaning of the bar on duplication of benefits isn't a specific concern for those affected by (d).

In addition, I find completely unpersuasive the majority's conclusion that subsection (d) can't be restrictive because "coordinate" incorporates the concept of harmonization. While "coordinate" might not connote restriction, it doesn't necessarily connote harmonization either-- definitions of "coordinate" include "to place or arrange in proper order or position" and "to assume proper order or relation." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 447 (2d ed. 1987). Contrary to the majority's view, *ante* at 25, it isn't remarkable that rules that

37

effect the coordination and interplay of two complex benefit programs, that place them in proper relation to each other, would include a rule allowing individuals to make a wholly voluntary election to receive a more generous benefit earlier, at a cost.

### F. If subsection (d) was being misapplied, Congress would have amended or clarified it in 2010 or 2016.

Congress is presumed to enact legislation with knowledge of the current statutory scheme and its application. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005) (noting presumption that Congress is aware of "settled judicial and administrative interpretation[s]" of terms when it enacts a statute (citing *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993))); *Mudge v. United States*, 308 F.3d 1220, 1232 (Fed. Cir. 2002) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute." (citing *Lorillard v. Pons*, 434 U.S. 575, 580 (1978))). For our purposes, this means that after Congress enacted the Post-9/11 education benefits program in 2008, it is presumed to have been fully aware that section 3322 was being applied to individuals such as veteran BO, with entitlements under separate periods of service, as well as to individuals with multiple entitlements under a single period of service. However, when Congress made two subsequent legislative changes relevant to this issue, directly affecting section 3322, it didn't amend the statute to be consistent with the majority's view.

Two years after the Post-9/11 GI Bill was enacted in 2008, Congress passed the Improvements Act of 2010, adding the subsection 3322(h) to bar "duplication of eligibility based on a single event or period of service." 38 U.S.C. § 3322(h). As noted, subsection (h) provides that an individual with "a single event or period of service" must "elect . . . under which authority such service is to be credited." 38 U.S.C. § 3322(h)(1). Essentially, subsection (h) provides that after August 1, 2011, individuals with a single period of service *must elect*, using rules prescribed by VA, the education benefits program under which their service is to be credited. They will then only be eligible for benefits under that program. 38 U.S.C. § 3322(h). At the time subsection (h) was enacted, Congress was aware of VA's implementation of section 3327 that required that all qualified individuals exhaust or relinquish entitlement of MGIB benefits before receiving Post-9/11 benefits. *See* 2009 VA Post-9/11 GI Bill Outreach Letter, http://www.gibill.va.gov/documents/CH33_veteran_outreach_letter.pdf (website last updated Nov. 10, 2009) ("Those individuals transferring to the Post-9/11 GI Bill from the Montgomery GI Bill (chapter 30) will be limited to the amount of their remaining chapter 30 entitlement."). And since in subsection (h)

they were clarifying that eligibility was restricted for those with a single period of service, it would have made sense for Congress to spell out that subsection (d) as well only applied to those with a multiple entitlements due to a single period of service. But nothing in the language or legislative history of that statute indicated that Congress saw fit to modify, alter, clarify, or otherwise affect the classes of individuals who at that time were being included in the voluntary section 3322(d)/3327election process.[25]

Even more significant though, is the fact that, as noted earlier, in December 2016 Congress enacted a "recodification and improvement of [the] election process for [the] post-9/11 educational assistance program. " With this change Congress moved the section 3301 note providing for the voluntary election process referenced in subsection 3322(d) to an entirely new statute, section 3327. *See* Pub. L. 110-252, title IV, § 405(c), 130 Stat. 1558 (Dec. 16, 2016). Given that the purpose of that enactment was to improve the post-9/11 election process, Congress, aware of the fact that individuals with multiple entitlements based on separate periods of service could make a voluntary election under section 3322(d)/3327, would certainly have amended or clarified that subsection (d) was only applicable to individuals with multiple entitlements under a single period of service if the majority's interpretation of the statute were correct. Instead, Congress made no change to subsection 3322(d).

Congress did not see the need, either in 2010 or in 2016, to clarify that the section 3322(d)/3327 election process applies only to individuals with multiple entitlements based on a single period of service. This confirms that Congress did not believe that it was erroneous to apply the plain language of the statute to include veterans like BO.

### G.    The 48-Month Aggregate Cap

My colleagues assert that their interpretation of section 3322 gives "real meaning" to the 48-month aggregate cap on receipt of benefits from two different education benefit programs. *Ante* at 23, 27. If the process worked as the Secretary argues, they say, the 48-month cap would be "a nullity" without meaning and would end up applying to no one. *Ante* at 27. As noted, the section 3322(d)/3327 election is completely voluntary and veterans may determine that they would be better off exhausting 36 months of entitlement to MGIB benefits and then making use of their 12 months of Post-9/11 benefits. For them, the cap is not a nullity. And the Secretary during oral

---

[25] As noted, the subsection 3322(h) election process is mandatory, is left to VA to prescribe, and makes no reference to section 3327. Thus, that election process is not the one directly at issue in veteran BO's case.

argument pointed out instances where it might benefit an individual to continue to use MGIB benefits instead of converting that entitlement to Post-9/11 benefits. Oral argument at 46:30-47:16. Although admittedly many individuals may voluntarily choose to receive Post-9/11 benefits without fully exhausting their MGIB entitlement, resulting in fewer veterans being subject to the 48-month cap and greater numbers of individuals, through voluntary choice, being subject to the 36-month cap under section 3327, that does not render the 48-month cap null. In fact, it appears to accomplish its intended purpose.

### H. The majority's interpretation is not more "veteran-friendly."

My colleagues assert that their interpretation is more veteran-friendly than the plain language of the statute. *Ante* at 29. But their approach ends up assigning greater value and additional benefits to an individual with intermittent periods of active duty service than to individuals with a continuous period of active duty service. There is no indication, based on the text of the relevant statutes, that Congress intended this outcome or that it is more veteran-friendly. Congress set out only one situation in section 3322 in which it is relevant whether an individual served for a single period or multiple separate periods—in section 3322(h) Congress in 2010 specifically established a bar to duplication of *eligibility based on a single period of service,* which applies to individuals with service qualifying for Post-9/11benefits and, inter alia, MGIB benefits. No other subsection in section 3322 differentiates between individuals with a single period of service and those with multiple separate periods of service. If Congress did not explicitly, except in section 3322(h), provide for differing treatment based on such a distinction, this Court should not create or sanction such differing treatment. But the majority interprets section 3322 in a way that would entrench in law differing education benefit entitlement between a servicemember with a single continuing active duty period of five years, for example, and a reservist who has been activated multiple times during that same five-year period. If Congress establishes such differing treatment, so be it. But this Court should not, out of a misplaced sense of justice, construct differing treatment that is not contemplated by the law.[26]

---

[26] Although my colleagues state that my conclusion in this regard is based on the assumption that they defined "period of service" when they haven't, *ante* at 29 n.15, their whole analysis hinges on their finding that BO had multiple periods of service. *See, e.g., ante* at 1-2 ("BO's separate periods of service independently qualified him to receive benefits under both the MGIB and the Post 9/11 GI Bill. At its core, this case is about whether he, and others like him with two separate periods of qualifying service, may obtain the full benefits of both programs (subject to an overall cap)."), 2 (stating that the issue in this case is "whether a veteran such as BO with more than one period of separately qualifying service must relinquish or exhaust entitlement under the MGIB program before receiving education benefits

In sum, whether an individual has multiple entitlements based on a single or multiple periods of service is not a factor for consideration under section 3322, including subsection (d). In this case, the plain language of subsection 3322(d) directed veteran BO to section 3327, the statutory election process, which allowed him in a totally voluntary manner to choose to elect Post-9/11 benefits while he still had unused MGIB benefits. He was informed that making that choice while he had unused MGIB benefits would have drawbacks. He accepted those drawbacks and so became entitled to 10 months and 16 days of Post-9/11 benefits. That being the case, I respectfully dissent from my colleagues' opinion.

---

under the Post-9/11 GI Bill program" and holding that "the relevant statutes require neither relinquishment nor exhaustion" for such a veteran), 14-15 (rejecting an interpretation that "treats a person with multiple periods of service (like BO) functionally the same as one with a single period of service").

## §3322. Bar to duplication of educational assistance benefits

(a) IN GENERAL.—An individual entitled to educational assistance under this chapter who is also eligible for educational assistance under chapter 30, 31, 32, or 35 of this title, chapter 107, 1606, or 1607 or section 510 of title 10, or the provisions of the Hostage Relief Act of 1980 (Public Law 96–449; 5 U.S.C. 5561 note) may not receive assistance under two or more such programs concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which chapter or provisions to receive educational assistance.

(b) INAPPLICABILITY OF SERVICE TREATED UNDER EDUCATIONAL LOAN REPAYMENT PROGRAMS.—A period of service counted for purposes of repayment of an education loan under chapter 109 of title 10 may not be counted as a period of service for entitlement to educational assistance under this chapter.

(c) SERVICE IN SELECTED RESERVE.—An individual who serves in the Selected Reserve may receive credit for such service under only one of this chapter, chapter 30 of this title, and chapters 1606 and 1607 of title 10, and shall elect (in such form and manner as the Secretary may prescribe) under which chapter such service is to be credited.

(d) ADDITIONAL COORDINATION MATTERS.—In the case of an individual entitled to educational assistance under chapter 30, 31, 32, or 35 of this title, chapter 107, 1606, or 1607 of title 10, or the provisions of the Hostage Relief Act of 1980, or making contributions toward entitlement to educational assistance under chapter 30 of this title, as of August 1, 2009, coordination of entitlement to educational assistance under this chapter, on the one hand, and such chapters or provisions, on the other, shall be governed by the provisions of section 5003(c) of the Post-9/11 Veterans Educational Assistance Act of 2008.

(e) BAR TO CONCURRENT RECEIPT OF TRANSFERRED EDUCATION BENEFITS AND MARINE GUNNERY SERGEANT JOHN DAVID FRY SCHOLARSHIP ASSISTANCE.—An individual entitled to educational assistance under both sections 3311(b)(9) and 3319 may not receive assistance under both provisions concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which provision to receive educational assistance.

(f) BAR TO RECEIPT OF COMPENSATION AND PENSION AND MARINE GUNNERY SERGEANT JOHN DAVID FRY SCHOLARSHIP ASSISTANCE.—The commencement of a program of education under section 3311(b)(9) shall be a bar to the following:

(1) Subsequent payments of dependency and indemnity compensation or pension based on the death of a parent to an eligible person over the age of 18 years by reason of pursuing a course in an educational institution.

(2) Increased rates, or additional amounts, of compensation, dependency and indemnity compensation, or pension because of such a person, whether eligibility is based upon the death of the parent.

(g) BAR TO CONCURRENT RECEIPT OF TRANSFERRED EDUCATION BENEFITS.—A spouse or child who is entitled to educational assistance under this chapter based on a transfer of entitlement from more than one individual under section 3319 may not receive assistance based on transfers from more than one such individual concurrently, but shall elect (in such

form and manner as the Secretary may prescribe) under which source to utilize such assistance at any one time.

(h) BAR TO DUPLICATION OF ELIGIBILITY BASED ON A SINGLE EVENT OR PERIOD OF SERVICE.—

(1) ACTIVE-DUTY SERVICE.—An individual with qualifying service in the Armed Forces that establishes eligibility on the part of such individual for educational assistance under this chapter, chapter 30 or 32 of this title, and chapter 1606 or 1607 of title 10, shall elect (in such form and manner as the Secretary may prescribe) under which authority such service is to be credited.

(2) ELIGIBILITY FOR EDUCATIONAL ASSISTANCE BASED ON PARENT'S SERVICE.—A child of a member of the Armed Forces who, on or after September 11, 2001, dies in the line of duty while serving on active duty, who is eligible for educational assistance under either section 3311(b)(9) or chapter 35 of this title based on the parent's death may not receive such assistance under both this chapter and chapter 35 of this title, but shall elect (in such form and manner as the Secretary may prescribe) under which chapter to receive such assistance.

## §3327. Election to receive educational assistance

(a) INDIVIDUALS ELIGIBLE TO ELECT PARTICIPATION IN POST-9/11 EDUCATIONAL ASSISTANCE.—An individual may elect to receive educational assistance under this chapter if such individual—

(1) as of August 1, 2009—

(A) is entitled to basic educational assistance under chapter 30 of this title and has used, but retains unused, entitlement under that chapter;

(B) is entitled to educational assistance under chapter 107, 1606, or 1607 of title 10 and has used, but retains unused, entitlement under the applicable chapter;

(C) is entitled to basic educational assistance under chapter 30 of this title but has not used any entitlement under that chapter;

(D) is entitled to educational assistance under chapter 107, 1606, or 1607 of title 10 but has not used any entitlement under such chapter;

(E) is a member of the Armed Forces who is eligible for receipt of basic educational assistance under chapter 30 of this title and is making contributions toward such assistance under section 3011(b) or 3012(c) of this title; or

(F) is a member of the Armed Forces who is not entitled to basic educational assistance under chapter 30 of this title by reason of an election under section 3011(c)(1) or 3012(d)(1) of this title; and

(2) as of the date of the individual's election under this paragraph, meets the requirements for entitlement to educational assistance under this chapter.

(b) CESSATION OF CONTRIBUTIONS TOWARD GI BILL.—Effective as of the first month beginning on or after the date of an election under subsection (a) of an individual described by paragraph (1)(E) of that subsection, the obligation of the individual to make contributions under section 3011(b) or 3012(c) of this title, as applicable, shall cease, and the requirements of such section shall be deemed to be no longer applicable to the individual.

(c) REVOCATION OF REMAINING TRANSFERRED ENTITLEMENT.—

(1) ELECTION TO REVOKE.—If, on the date an individual described in paragraph (1)(A) or (1)(C) of subsection (a) makes an election under that subsection, a transfer of the entitlement of the individual to basic educational assistance under section 3020 of this title is in effect and a number of months of the entitlement so transferred remain unutilized, the individual may elect to revoke all or a portion of the entitlement so transferred that remains unutilized.

(2) AVAILABILITY OF REVOKED ENTITLEMENT.—Any entitlement revoked by an individual under this subsection shall no longer be available to the dependent to whom transferred, but shall be available to the individual instead for educational assistance under chapter 33 of this title in accordance with the provisions of this section.

(3) AVAILABILITY OF UNREVOKED ENTITLEMENT.—Any entitlement described in paragraph (1) that is not revoked by an individual in accordance with that paragraph shall remain available to the dependent or dependents concerned in accordance with the current transfer of such entitlement under section 3020 of this title.

(d) POST-9/11 EDUCATIONAL ASSISTANCE.—

(1) IN GENERAL.—Subject to paragraph (2) and except as provided in subsection (e), an individual making an election under subsection (a) shall be entitled to educational assistance under this chapter in accordance with the provisions of this chapter, instead of basic educational assistance under chapter 30 of this title, or educational assistance under chapter 107, 1606, or 1607 of title 10, as applicable.

(2) LIMITATION ON ENTITLEMENT FOR CERTAIN INDIVIDUALS.—In the case of an individual making an election under subsection (a) who is described by paragraph (1)(A) of that subsection, the number of months of entitlement of the individual to educational assistance under this chapter shall be the number of months equal to—

(A) the number of months of unused entitlement of the individual under chapter 30 of this title, as of the date of the election, plus

(B) the number of months, if any, of entitlement revoked by the individual under subsection (c)(1).

(e) CONTINUING ENTITLEMENT TO EDUCATIONAL ASSISTANCE NOT AVAILABLE UNDER POST-9/11 EDUCATIONAL ASSISTANCE PROGRAM.—

(1) IN GENERAL.—In the event educational assistance to which an individual making an election under subsection (a) would be entitled under chapter 30 of this title, or chapter 107, 1606, or 1607 of title 10, as applicable, is not authorized to be available to the individual under the provisions of this chapter, the individual shall remain entitled to such educational assistance in accordance with the provisions of the applicable chapter.

44

(2) CHARGE FOR USE OF ENTITLEMENT.—The utilization by an individual of entitlement under paragraph (1) shall be chargeable against the entitlement of the individual to educational assistance under this chapter at the rate of 1 month of entitlement under this chapter for each month of entitlement utilized by the individual under paragraph (1) (as determined as if such entitlement were utilized under the provisions of chapter 30 of this title, or chapter 107, 1606, or 1607 of title 10, as applicable).

(f) ADDITIONAL POST-9/11 ASSISTANCE FOR MEMBERS HAVING MADE CONTRIBUTIONS TOWARD GI BILL.—

(1) ADDITIONAL ASSISTANCE.—In the case of an individual making an election under subsection (a) who is described by subparagraph (A), (C), or (E) of paragraph (1) of that subsection, the amount of educational assistance payable to the individual under this chapter as a monthly stipend payable under paragraph (1)(B) of section 3313(c) of this title, or under paragraphs (2) through (7) of that section (as applicable), shall be the amount otherwise payable as a monthly stipend under the applicable paragraph increased by the amount equal to—

(A) the total amount of contributions toward basic educational assistance made by the individual under section 3011(b) or 3012(c) of this title, as of the date of the election, multiplied by

(B) the fraction—

(i) the numerator of which is—

(I) the number of months of entitlement to basic educational assistance under chapter 30 of this title remaining to the individual at the time of the election; plus

(II) the number of months, if any, of entitlement under chapter 30 of this title revoked by the individual under subsection (c)(1); and

(ii) the denominator of which is 36 months.

(2) MONTHS OF REMAINING ENTITLEMENT FOR CERTAIN INDIVIDUALS.—In the case of an individual covered by paragraph (1) who is described by subsection (a)(1)(E), the number of months of entitlement to basic educational assistance remaining to the individual for purposes of paragraph (1)(B)(i)(II) shall be 36 months.

(3) TIMING OF PAYMENT.—The amount payable with respect to an individual under paragraph (1) shall be paid to the individual together with the last payment of the monthly stipend payable to the individual under paragraph (1)(B) of section 3313(c) of this title, or under paragraphs (2) through (7) of that section (as applicable), before the exhaustion of the individual's entitlement to educational assistance under this chapter.

(g) CONTINUING ENTITLEMENT TO ADDITIONAL ASSISTANCE FOR CRITICAL SKILLS OR SPECIALTY AND ADDITIONAL SERVICE.—An individual making an election under subsection (a)(1) who, at the time of the election, is entitled to increased educational assistance under section 3015(d) of this title, or section 16131(i) of title 10, or supplemental educational assistance under subchapter III of chapter 30 of this title, shall remain entitled to such increased educational assistance or supplemental educational

assistance in the utilization of entitlement to educational assistance under this chapter, in an amount equal to the quarter, semester, or term, as applicable, equivalent of the monthly amount of such increased educational assistance or supplemental educational assistance payable with respect to the individual at the time of the election.

(h) ALTERNATIVE ELECTION BY SECRETARY.—

(1) IN GENERAL.—In the case of an individual who, on or after January 1, 2017, submits to the Secretary an election under this section that the Secretary determines is clearly against the interests of the individual, or who fails to make an election under this section, the Secretary may make an alternative election on behalf of the individual that the Secretary determines is in the best interests of the individual.

(2) NOTICE.—If the Secretary makes an election on behalf of an individual under this subsection, the Secretary shall notify the individual by not later than seven days after making such election and shall provide the individual with a 30-day period, beginning on the date of the individual's receipt of such notice, during which the individual may modify or revoke the election made by the Secretary on the individual's behalf. The Secretary shall include, as part of such notice, a clear statement of why the alternative election made by the Secretary is in the best interests of the individual as compared to the election submitted by the individual. The Secretary shall provide the notice required under this paragraph by electronic means whenever possible.

(i) IRREVOCABILITY OF ELECTIONS.—An election under subsection (a) or (c)(1) is irrevocable.

*Not Published*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No: 16-4134

BO, APPELLANT,

v.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

**JUDGMENT**

The Court has issued a decision in this case, and has acted on a motion under Rule 35 of the Court's Rules of Practice and Procedure.

Under Rule 36, judgment is entered and effective this date.

Dated: January 7, 2020

FOR THE COURT:

GREGORY O. BLOCK
Clerk of the Court

By: /s/ Anthony R. Wilson
Deputy Clerk

Copies to:

David J. DePippo, Esq.

VA General Counsel (027)

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2020 I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF. The filing was served electronically to all parties by operation of the Court's electronic filing system.

June 15, 2020
/s/  Galina I. Fomenkova
GALINA I. FOMENKOVA

*Attorney for the Secretary*

CERTIFICATE OF COMPLIANCE
PURSUANT TO FED. R. APP. P. 32(g)(1)

This brief complies with the type-volume limitation of Federal Circuit Rule 32(a).  The brief contains 11,400 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

June 15, 2020        /s/  Galina I. Fomenkova
                                    GALINA I. FOMENKOVA

*Attorney for the Secretary*