**Appeal No. 20-1637**

# In the United States Court of Appeals for the Federal Circuit

JAMES R. RUDISILL,

*Claimant-Appellee,*

*v.*

DENIS R. MCDONOUGH,
Secretary of Veterans Affairs,

*Respondent-Appellant.*

**On Appeal from the United States Court of Appeals for Veterans Claims
No. 16-4134, Judges Schoelen, Bartley, and Allen**

**RESPONDENT-APPELLANT'S, DENIS R. MCDONOUGH, SECRETARY OF VETERANS AFFAIRS, COMBINED PETITION FOR PANEL REHEARING AND REHEARING *EN BANC***

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

OF COUNSEL

MARTIN F. HOCKEY, JR.
Deputy Director

Y. KEN LEE
Deputy Chief Counsel

GALINA I. FOMENKOVA
Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495

BRYAN THOMPSON
U.S. Department of Veterans Affairs
810 Vermont Ave
Washington, DC 20420

*Attorneys for the Secretary*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

STATEMENT OF COUNSEL UNDER RULE 35(b)(2) ........................................1

POINTS OF LAW OR FACT OVERLOOKED OR
　　　MISAPPREHENDED BY THE PANEL OF THE COURT .........................2

ARGUMENT ............................................................................4

　　I.　　The Panel Majority Ignored An Unambiguous Statute.........................4

　　II.　　The Majority's Error Is Significant And Hurts Veterans...................13

CONCLUSION ........................................................................17

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ali v. Fed. Bureau of Prisons*,
   552 U.S. 214 (2008) ..................................................................... 13, 14

*Carr v. Wilkie*,
   961 F.3d 1168 (Fed. Cir. 2020) .................................................. 7, 11

*Conn. Nat'l Bank v. Germain*,
   503 U.S. 249 (1992) ................................................................ 6, 7, 13

*Duncan v. Walker*,
   533 U.S. 167 (2001) ........................................................................ 8, 9

*Henson v. Santander Consumer USA Inc.*,
   137 S. Ct. 1718 (2017) ..................................................................... 14

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
   140 S. Ct. 768 (2020) ....................................................................... 14

*Loughrin v. United States*,
   573 U.S. 351 (2014) ............................................................................. 8

*Office of Pers. Mgmt. v. Richmond*,
   496 U.S. 414 (1990) .......................................................................... 14

*Park 'n Fly v. Dollar Park & Fly*,
   469 U.S. 189 (1985) .......................................................................... 13

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   566 U.S. 639 (2012) .......................................................................... 11

*Schism v. United States*,
   316 F.3d 1259 (Fed. Cir. 2002) ....................................................... 13

*Schweiker v. Hansen*,
   450 U.S. 785 (1981) .......................................................................... 14

*Sturges v. Crowninshield*,
   17 U.S. (4 Wheat.) 122 (1819) ............................................................ 6

## STATUTES

38 U.S.C. § 3013 .................................................................................. 9

38 U.S.C. § 3311 .................................................................................. 9

38 U.S.C. § 3313 .................................................................................. 9

38 U.S.C. § 3322 ............................................................................ 7, 8, 9

38 U.S.C. § 3327 ........................................................... 2-8, 10, 15, 16

38 U.S.C. § 3695 ............................................................................ 3, 10-12

## OTHER AUTHORITIES

114 P.L. 315, 130 Stat. 1536 ............................................................. 8

## STATEMENT OF COUNSEL UNDER RULE 35(b)(2)

Based on my professional judgment, I believe the panel decision is contrary to the following decisions of the Supreme Court of the United States or the precedents of this court: *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768 (2020); *Loughrin v. United States*, 573 U.S. 351 (2014); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008); *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992); *Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189 (1985); *Schweiker v. Hansen*, 450 U.S. 785, 788 (1981); *Carr v. Wilkie*, 961 F.3d 1168 (Fed. Cir. 2020); *Schism v. United States*, 316 F.3d 1259 (Fed. Cir. 2002) (en banc).

\* \* \*

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance:

1. What is the number of months of additional Post-9/11 benefits granted by Congress to veterans who are entitled to both Post-9/11 benefits and Montgomery benefits, and have used some but not all of their Montgomery benefits at the point they elect to use Post-9/11 benefits?

2. Does § 3327 apply to veterans with multiple intermittent periods of qualifying service?

POINTS OF LAW OR FACT OVERLOOKED OR
MISAPPREHENDED BY THE PANEL OF THE COURT

Most simply, the panel majority[1] failed to analyze and apply the statutory

provision specifically in dispute: 38 U.S.C. § 3327(d)(2)(A).  The majority

affirmed the Veterans Court's holding that this subsection does not apply to

veterans with multiple periods of qualifying service without identifying *any*

language therein that, in the majority's view, supports this exclusion.  In fact, by its

express and unambiguous terms, § 3327(d)(2)(A) applies to all veterans who are

described in § 3327(a)(1)(A): that is veterans who have "used, but retain[] unused"

entitlement to Montgomery education benefits when they elect to use their

entitlement to Post-9/11 education benefits.  Nowhere does either subsection make

any distinction based on the number of periods of service that led to that dual

entitlement.

Instead of grappling with the statutory text at issue, the majority asked the

wrong question and focused on the wrong statute.  To wit, the majority considered

whether additional periods of service provide additional benefits, and concluded

that they do.  Maj. Op. 15.  That conclusion is nominally correct—up to a point—

but tangential to the issue in this case.  The question of whether veterans with

---

[1]  Judge Dyk concurred in Part I of the majority opinion, regarding the Court's
jurisdiction, and dissented from Part II of the opinion, regarding the merits.  The
unanimous jurisdictional holding was correct and this petition does not address it.

2

multiple periods of service can get *some* additional benefits was never in dispute and does not answer the question that is in dispute, *viz.* the *number of months* of those additional benefits.  Mr. Rudisill, and other veterans with multiple qualifying periods of service, are entitled to both Montgomery *and* Post-9/11 benefits.  That dual entitlement is what allows these veterans to be in a situation defined by § 3327; it cannot, and does not, render the limitations imposed by § 3327(d)(2)(A) inapplicable.  Neither does the additional limit codified in 38 U.S.C. § 3695.

Once again the majority's decision to apply the limit imposed by § 3695 is more tangential than wrong.  That is, § 3695 is plainly another limitation that would be applicable to all veterans.  But the majority's suggestion that § 3695 "does not support" the application of § 3327(d)(2)(A) to Mr. Rudisill gets the relationship between the two provisions exactly backwards.  Maj. Op. 15.  Section 3327 is part of the Post-9/11 chapter itself and it is the more specific limitation; § 3695 is a general administrative provision that applies across all the enumerated benefit programs.  That general administrative statute, therefore, by definition cannot be in conflict with, or grant benefits contrary to, the more specific limit found in the affirmative grant of Post-9/11 benefits themselves.

Finally, although unambiguous congressional directives must be honored regardless, the majority also misapprehended the balance Congress struck in § 3327, both granting benefits and imposing limitations.  As such, the majority's

3

decision to save Mr. Rudisill from the durational limits imposed by

§ 3327(d)(2)(A) also deprives other veterans with multiple periods of qualifying

service of additional monetary benefits they would have otherwise been able to

receive as a result of other subsections.  For example, veterans with multiple

periods of service will now be excluded from recouping their Montgomery

contribution under § 3327(f) or receiving their enlistment incentives for critical

skills under § 3327(g) if they elect to use Post-9/11 benefits instead.

ARGUMENT

I.    The Panel Majority Ignored An Unambiguous Statute

This case concerns the number of months of Post-9/11 benefits Congress

granted to the particular subset of veterans who can draw from both current active-

duty-based programs—Post-9/11 and Montgomery—and have used some, but not

all of their Montgomery benefits when electing to use their Post-9/11 benefits.

Congress enacted the Post-9/11 program in 2008, codified in Chapter 33 of

Title 38, to provide education benefits for active duty service after September 11,

2001.  At the time, there was another program already in place—the Montgomery

program, codified in Chapter 30—which granted benefits for active duty service

after June 30, 1985.  In establishing the Post-9/11 program, Congress did not

eliminate Montgomery benefits; instead Congress included several coordination

provisions in the Post-9/11 bill to integrate this new program on top of the existing structure. This case focuses on one such provision, 38 U.S.C. § 3327.

Section 3327(a)(1)(A) of the Post-9/11 chapter defines a subset of veterans who are entitled to both Montgomery benefits and Post-9/11 benefits and have used some, but not all of their Montgomery benefits when electing to use their Post-9/11 benefits. And § 3327(d)(2)(A), entitled "[l]imitation on entitlement for certain individuals," defines the number of months of Post-9/11 benefits granted to that particular subset of veterans:

> In the case of an individual making an election under subsection (a) who is described by paragraph (1)(A) of that subsection, the number of months of entitlement of the individual to educational assistance under this chapter [*i.e.* Post-9/11 benefits] shall be the number of months equal to the number of months of unused entitlement of the individual under [the Montgomery program], as of the date of the election.

In other words, Congress did not give veterans who have earned both Montgomery and Post-9/11 benefits a universally fixed number of months of Post-9/11 benefits. Rather, for the specific subset of veterans who want to use their Post-9/11 benefits without exhausting their Montgomery benefits, Congress set the duration of their Post-9/11 benefits with a formula, determined individually based on the unused portion of their Montgomery benefits.

There was no dispute that Mr. Rudisill met the terms of § 3327(a)(1)(A)— his multiple periods of service earned him benefits under both programs and he

"used, but retain[ed] unused, entitlement under" Montgomery[2]—indeed, he

explicitly conceded that "he does meet that definition" during oral argument.  Arg.

Rec. at 16:40-17:05.  Seemingly, the consequent application of § 3327(d)(2)(A) to

determine the "number of months of [his Post-9/11] entitlement" would be simple

and straightforward.  As the Supreme Court has long ago held, "[i]t would be

dangerous in the extreme to infer … that a case for which the words of an

instrument expressly provide, shall be exempted from its operation." *Conn. Nat'l*

*Bank v. Germain*, 503 U.S. 249, 254 (1992) (alteration in original, quoting *Sturges*

*v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 202 (1819)).  But the majority did not

heed the Supreme Court's warning.

Despite the parties' agreement that Mr. Rudisill met the terms of the statute,

both the Veterans Court and the panel majority nevertheless "held that § 3327 does

not apply to" Mr. Rudisill or other "veterans having periods of intermittent

---

[2]  Mr. Rudisill used 25 months and 14 days of Montgomery benefits in
obtaining his undergraduate degree prior to his third period of service as a
commissioned officer, which then served as his basis for Post-9/11 benefits.  Maj.
Op. 3.  When he decided to go to graduate school, Mr. Rudisill elected to
immediately switch to Post-9/11 benefits instead of exhausting the remaining 10
months and 16 days of his Montgomery benefits, putting the application of
§ 3327(d)(2)(A) at issue.  *See id*.  There is no dispute that had Mr. Rudisill
exhausted his Montgomery benefits and *then* switched to Post-9/11 benefits,
§ 3327(d)(2)(A) would no longer be applicable.

qualifying service." Maj. Op. 14-15.[3]  And both the Veterans Court and the panel majority granted Mr. Rudisill Post-9/11 benefits that indisputably exceeded the limits of § 3327(d)(2)(A).

The majority articulated two bases for its decision to affirm the Veterans Court's holding: that the statute provides for "additional benefits to veterans with multiple periods of qualifying service" and that the continued operation of § 3695 somehow "does not support the interpretation urged by the Secretary."  Maj. Op. 15.  Tellingly, both assertions neither cite nor mention § 3327, much less attempt to grapple with the language therein.  Under the most fundamental principles of statutory construction—it "begins with the words of the statute," *Carr v. Wilkie*, 961 F.3d 1168, 1172 (Fed. Cir. 2020) (citation omitted)—the majority's paltry "analysis" must, therefore, fail; it plainly cannot overcome the explicit and unambiguous terms of § 3327(d)(2)(A), nor excuse the majority's failure to analyze that provision.[4]  The "cardinal canon before all others" is that "[w]hen the words of a statute are unambiguous … judicial inquiry is complete."  *Conn. Nat'l Bank*, 503 U.S. at 253-54 (citation and quotation omitted).

---

[3]  Mr. Rudisill similarly contends § 3327 does not "apply" to him, but does not appear to rely on the "intermittent" service portion of the rationale.

[4]  The majority, also without any explanation, ignores Congress's directive in 38 U.S.C. § 3322(d) that the "coordination of entitlement to educational assistance under [Post-9/11], on the one hand, and [among others Montgomery], on the other, *shall be governed by* [what has since been codified as § 3327]." (emphasis added).

Certainly, the majority—just like the Veterans Court and even Mr. Rudisill himself—never suggested any language in § 3327 that would exclude veterans with multiple periods of service from its reach.  It offered no explanation as to how, contrary to his own admission, Mr. Rudisill did not meet the unambiguous terms that trigger § 3327(d)(2)(A) or, for that matter, as to whom *if not Mr. Rudisill* the limits in § 3327(d)(2)(A) would then apply.

Section 3327(d)(2)(A) necessarily requires that a veteran be entitled to both Montgomery and Post-9/11 benefits.  But after Congress enacted 38 U.S.C. § 3322(h), *only* veterans with multiple separately qualifying periods of service could have such requisite dual entitlement.  Thus, under the majority's holding, as of 2011, section 3327(d)(2)(A) seemingly applies to no one:  veterans with single periods of service cannot meet its terms and veterans with multiple periods of service have been judicially excluded.  And yet, Congress not only did not eliminate § 3327(d)(2)(A) upon the passage of § 3322(h), it re-enacted and codified that limit five years later.  114 P.L. 315, 130 Stat. 1536, Sec. 405.  Why Congress would have bothered to take the time to do so the majority does not say. In any event, the "cardinal principle of interpretation" dictates the opposite: "courts must give effect, if possible, to every clause and word of a statute."  *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (citation and quotation omitted); *Duncan*

*v. Walker*, 533 U.S. 167, 174 (2001) ("We are thus reluctant to treat statutory terms as surplusage in any setting.") (citation and quotation omitted).

At bottom, the majority's premises are mostly not in dispute, but they are fundamentally not determinative of the issue that is in dispute.[5] Under any interpretation, veterans with multiple periods of service, including Mr. Rudisill, will receive additional benefits, being able to draw from both the Montgomery *and* Post-9/11 programs, unlike veterans with only a single period of service, who, after 2011, must choose either Montgomery *or* Post-9/11 benefits.[6] *See* § 3322(h). Indeed, if Mr. Rudisill was not eligible for additional benefits under the Post-9/11 program in the first place, this case would never exist.

---

[5] Although the majority did not adopt any of the Veterans Court's analysis, a different version of this disconnect was the crux of the Veterans Court's error as well. The Veterans Court majority similarly refused to consider the language in § 3327 at all, and instead, relied on an ambiguity it perceived in a different statute on a question that was not in dispute. Section 3322(a), relied on by the Veterans Court majority, specifies that benefits may be paid out from only one program at a time, but does not address how many months of benefits are available from any given program overall (to then be paid out one at a time).

[6] The majority's holding that "*each* period of service qualifies for education benefits," Maj. Op. 15 (emphasis added) is tangential to the dispute, but only partially correct. Both the Montgomery and Post-9/11 bills set a threshold beyond which more service does not beget more benefits. 38 U.S.C. §§ 3013(e); 3311(b); 3313(c). Thus, for example, if Mr. Rudisill went back into the military now, there can be no dispute that his additional service would not entitle him to any further active-duty-based education benefits beyond those he already enjoys (although the parties obviously dispute exactly what that current number is).

But the fact that veterans with multiple periods of service can obtain *some* additional Post-9/11 benefits does not, by itself, answer the question of *how many months* of additional Post-9/11 benefits are granted. And the majority's holding on that actually disputed question, that "[t]he legislation explicitly provides additional benefits … with the"—inexplicably sole—"limit" of 48 months found in § 3695, is wrong and bereft of any logical explanation. Maj. Op. 15.

First, the "legislation explicitly provides" that the duration of Post-9/11 benefits for veterans who have "used, but retain[] unused, [Montgomery] entitlement" "*shall be the number of months equal to the number of months of unused [Montgomery] entitlement.*" § 3327(d)(2)(A) (emphasis added); § 3327(a)(1)(A); *contra* Maj. Op. 15. The majority's complete disregard of that explicit directive is the very crux of its error.

Second, the fact that the majority respected one congressional limit does not absolve it of ignoring another. To be sure, § 3695 is *another* limit on the receipt of education benefits, which applies to a variety of programs including, but not limited to, Montgomery and Post-9/11. But it is plainly not the *only* limit or condition Congress imposed on the receipt of Post-9/11 education benefits. *See also* Dis. Op. 2. It is beyond dispute that veterans' benefits is a complex statutory scheme and Congress has imposed multiple limits on all aspects of education benefits, including duration. These limits exist both in the individual chapters for

each program, like § 3327(d)(2)(A), and in general administrative provisions that apply across all chapters, like § 3695.  But the majority gets it exactly backwards to suggest that § 3327's more restrictive limit is "not support[ed]" by § 3695, Maj. Op. 15—it is § 3695 that cannot expand the amount of benefits or usurp § 3327's more specific command.

As this Court recently explained, "Chapter 36 provisions like § 3695 sit above and apply across the chapter-specific programs, which each contain varied benefits accrual, duration, and termination provisions. … In such a scheme, it makes sense that the drafters of § 3695 would leave the details … to the programs that were providing benefits in the first place." *Carr*, 961 F.3d at 1174.  Thus, in *Carr*, this Court held that while limits from both chapters apply, the specific provisions in Chapter 33 control the precise termination date of Post-9/11 benefits, not § 3695.  *Id*. at 1173.  In this case, the majority effectively held the opposite.

Indeed, the majority's application of § 3695 is not only contrary to this Court's precedent in *Carr* and the "well established canon of statutory interpretation … that the specific governs the general," *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citation and quotation omitted), it is also fundamentally flawed.  "[U]nlike the individual benefits program chapters, Chapter 36 itself"—where § 3695 is found—"is not a source of veterans benefits." *Carr*, 961 F.3d at 1174.  In other words, § 3695 can only *limit*

11

benefits, it cannot *grant* them:  the 48-month cap only does any work if the chapter-specific programs listed therein would otherwise grant a veteran benefits that would exceed that amount, but if the sum of the duration of benefits granted in those programs is short of 48 months, the chapter-specific limitations must control. Thus, for example, if Mr. Rudisill had exhausted his Montgomery benefits, he indisputably would have been able to receive no more than 12 additional months of Post-9/11 benefits (or from any other listed source) because that is all § 3695 would allow.

But in this case, the majority erred when it presumed that Mr. Rudisill was otherwise entitled to 36 months of Post-9/11 benefits, without first considering and applying the limits in § 3327(d)(2)(A), because, in fact, Chapter 33 only granted him 10.5 months to begin with.  In other words, § 3327(d)(2)(A) constrains the entitlement to Post-9/11 benefits for Mr. Rudisill *before one ever gets to § 3695*. By holding the opposite, *viz.* that § 3695 preempts § 3327(d)(2)(A), the majority effectively used § 3695 to *expand* the amount of Post-9/11 benefits Mr. Rudisill would receive, contrary to this Court's holing in *Carr* and its very purpose.

Ultimately, the majority did not identify *any* portion of the Post-9/11 statute to support its expansion of Mr. Rudisill's Post-9/11 benefits.  The majority's failure to ground its award of Post-9/11 benefits anywhere in the Post-9/11 statute is itself error.  That error is only exacerbated by the majority's failure to square its

award with the express contrary direction that *is* in the Post-9/11 statute, or indeed, analyze that provision at all. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 194 (1985); *see also* Dis. Op. 3 ("[N]othing in the language or history of the relevant statutes remotely justifies such an interpretation, and the majority indeed applies little effort to justify its interpretation.").

Rehearing or *en banc* review is therefore necessary to uphold the bedrock principle of statutory interpretation violated by the majority that the "legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank*, 503 U.S. at 253-54. The Court "must give effect to the text Congress enacted." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008).

## II.     The Majority's Error Is Significant And Hurts Veterans

The panel majority's failure to enforce the unambiguous terms of a valid statute is all the more egregious here, where the expenditure of taxpayer dollars is at issue. There are few principles more certain than that "only Congress has the power of the purse." *Schism v. United States*, 316 F.3d 1259, 1288 (Fed. Cir. 2002) (en banc). "In other words, Congress—*and only Congress*—can authorize the benefits that a retired federal employee, whether civilian or military, is entitled to receive." *Id*. at 1268 (emphasis added).

By contrast, it is "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Schweiker v. Hansen*, 450 U.S. 785, 788 (1981) (citation and quotation omitted).  In a bit of understatement, the Supreme Court has warned that "it would be most anomalous for a judicial order to require a Government official … to make an extrastatutory payment of federal funds." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 430 (1990).  And yet, that is precisely what the majority did here.

At bottom, the panel majority may disagree with the policy choices Congress made—and clearly it does—but "[t]he rationale of the Appropriations Clause is that if individual hardships are to be remedied by payment of Government funds, it must be at the instance of Congress." *Id*. at 434.  Problems of "bad policy" require legislative—not judicial—solutions. *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 778 (2020); *Ali*, 552 U.S. at 228; *see also* Dis. Op. 3.

Moreover, in this case, the majority's apparent disagreement with the limitations Congress imposed, also led it to miss the benefits Congress coupled with those limitations.  "Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage …" *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017).  Besides the limitation in subsection (d)(2)(A) on the number of months of benefits available,

§ 3327 also includes provisions that indisputably increase the amount of money paid during those months.  The majority's holding now renders unavailable to all veterans with multiple periods of service those provisions that indisputably inure to the benefit of veterans.  That is, the majority's focus on granting more months of Post-9/11 benefits to Mr. Rudisill ignores the financial detriment that holding may cause to other veterans.

For example, § 3327(f) increases the monetary amount of Post-9/11 benefits for, *inter alia*, the same subset of veterans to whom § 3327(d)(2)(A) applies. *Compare* § 3327(f) ("an individual making an election under subsection (a) who is described by subparagraph (A), (C), or (E) of paragraph (1)" with § 3327(d)(2)(A) ("an individual making an election under subsection (a) who is described by paragraph (1)(A)").  Under the majority's holding, veterans with multiple periods of service are no longer eligible for this monetary increase of their benefits.

What § 3327 does is offer veterans a choice.  Those who wish to pursue more than a four-year degree—and so would be in a position to use more than 36 months of benefits[7]—can do so by exhausting their Montgomery benefits and then obtaining 12 months of Post-9/11 benefits.  On the other hand, Congress gave veterans who do not need more than 36 months of education benefits the alternate option of getting more money for less time.  The majority's holding deprives

---

[7]  A standard school year is nine months; 9 months x 4 years = 36 months.

veterans with multiple periods of service of that choice; effectively, the majority privileges veterans seeking graduate or other additional education at the expense of veterans who do not.

Similarly, § 3327(g)—which is also triggered by "[a]n individual making an election under subsection (a)(1)" just like § 3327(d)(2)(A)—allows the VA to honor recruitment incentives that increase the monetary amount of education benefits for veterans who have in-demand critical skills. But under the majority's holding, veterans who were recruited under Montgomery with the promise of these additional payments, honorably served and provided their critical skills, and then came back to serve again, would no longer keep their extra stipends if they elect to switch to Post-9/11 benefits. The majority's holding, therefore, may prevent VA from fulfilling a promise made to a group of veterans the military specifically identified and offered extra benefits to retain.

At bottom, the majority's erroneous holding that § 3327 does not apply to veterans with multiple periods of service will have the dual effect of both spending taxpayer dollars without (and contrary to) congressional authority and imposing financial losses on some individual veterans. Rehearing or *en banc* review is appropriate and necessary to restore the full statutory balance—all the options and accompanying limitations—that Congress enacted.

## CONCLUSION

For the foregoing reasons, we respectfully request that the panel grant this petition for rehearing, or in the alternative, that the full Court hear this case *en banc*.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Deputy Director

OF COUNSEL

Y. KEN LEE                                      /s/ Galina I. Fomenkova
Deputy Chief Counsel                   GALINA I. FOMENKOVA
                                                          Trial Attorney
BRYAN THOMPSON                     United States Department of Justice
U.S. Department of Veterans Affairs     Civil Division
810 Vermont Ave                           Commercial Litigation Branch
Washington, DC 20420                   P.O. Box 480 | Ben Franklin Station
                                                          Washington, DC 20044
                                                          (202) 514-5495
                                                          galina.fomenkova@usdoj.gov

November 22, 2021                      *Attorneys for the Secretary*

17

# ADDENDUM

# United States Court of Appeals
# for the Federal Circuit

———————————

**JAMES R. RUDISILL,**
*Claimant-Appellee*

**v.**

**DENIS MCDONOUGH, SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellant*

———————————

2020-1637

———————————

Appeal from the United States Court of Appeals for
Veterans Claims in No. 16-4134, Chief Judge Margaret C.
Bartley, Judge Michael P. Allen, Senior Judge Mary J.
Schoelen.

———————————

Decided: July 8, 2021

———————————

TIMOTHY L. MCHUGH, Hunton Andrews Kurth LLP,
Richmond, VA, argued for claimant-appellee. Also repre-
sented by DAVID PARKER; DAVID JOSEPH DEPIPPO, Domin-
ion Resource Services Inc., Richmond, VA.

GALINA I. FOMENKOVA, Commercial Litigation Branch,
Civil Division, United States Department of Justice, Wash-
ington, DC, argued for respondent-appellant. Also repre-
sented by JEFFREY B. CLARK, MARTIN F. HOCKEY, JR.,
ROBERT EDWARD KIRSCHMAN, JR.; Y. KEN LEE, BRYAN

THOMPSON, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

MICHAEL E. KENNEALLY, Morgan, Lewis & Bockius LLP, Washington, DC, for amici curiae National Veterans Legal Services Program and Veterans Education Success. Also represented by JAMES D. NELSON.

————————————

Before NEWMAN, DYK, and REYNA, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* NEWMAN.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* DYK.

NEWMAN, *Circuit Judge*.

The United States Court of Appeals for Veterans Claims ("Veterans Court") held that a veteran with multiple periods of qualifying military service is entitled to GI Bill education benefits for each period of service, subject to the legislated limit of a total of 48 aggregate months of education benefits. Applying this holding to veteran James R. Rudisill, the Veterans Court held that he is not limited to the total of 36 months of education benefits set by the Montgomery GI Bill ("Montgomery" or "MGIB") and applicable to his first period of qualifying service, when he also qualifies for later education benefits under a later bill—the Post-9/11 GI Bill.[1] That is, he is entitled to the total of 48 months of aggregate benefits. The Secretary of Veterans Affairs ("Secretary") appeals. On appellate review, we affirm the decision of the Veterans Court.

————————————

[1]    *BO v. Wilkie*, 31 Vet. App. 321 (2019) ("Vet. Ct. Op.").

BACKGROUND

James R. Rudisill served three periods of active duty military service, as follows: (1) from January 2000 to June 2002 in the Army (30 months); (2) from June 2004 to December 2005 in the Army National Guard (18 months); and, (3) from November 2007 to August 2011 as a commissioned officer in the Army (45 months). He applied for and duly received 25 months and 14 days of education benefits in accordance with the Montgomery GI Bill, 38 U.S.C. § 3011(a), for completion of his college degree.

After his third period of Army service, he applied for education benefits under the Post-9/11 GI Bill, 38 U.S.C. § 3311, to attend the Yale Divinity School graduate program. The Department of Veterans Affairs ("VA") determined that he was entitled to the Post-9/11 benefits, but only for the remaining 10 months and 16 days of the 36 months authorized for Montgomery benefits. The VA held that he was not entitled to benefits beyond a total of 36 months.

Mr. Rudisill appealed to the Board of Veterans' Appeals ("BVA"), seeking education benefits up to the statutory cap of 48 months for multiple terms of service. The BVA sustained the VA's ruling that Mr. Rudisill's total benefits were limited to the unused period of his 36-months entitlement under the Montgomery GI Bill. No. 16-01 431, 2016 WL 4653284 (Bd. Vet. App. July 14, 2016) ("BVA Op."). The BVA held that his "election to use Post-9/11 benefits in lieu of MGIB benefits was irrevocable and limited his eligibility to the unused remainder of his MGIB entitlement." Sec'y Br. 12 (citing BVA Op. at *3).

Concerning the statutory cap of 48 months of aggregate benefits, the BVA acknowledged that "[w]here an individual is eligible for two or more education programs, the aggregate period for which any person may receive assistance may not exceed 48 months." BVA Op. at *3. But the BVA held as to Mr. Rudisill that "[t]here is no provision

authorizing 12 additional months of entitlement under
Chapter 33 on top of 36 total months of combined benefits
under Chapter 30 and Chapter 33." *Id.* The BVA reasoned
that the entitlement period for Chapter 33 benefits is lim-
ited by 38 C.F.R. § 21.9550(b)(1), stating as follows:

> An individual who, as of August 1, 2009, has used
> entitlement under 38 U.S.C. Chapter 30, but re-
> tains unused entitlement under that chapter,
> makes an irrevocable election to receive educa-
> tional assistance under the provisions of Chapter
> 30, will be limited to one month (or partial month)
> of entitlement under Chapter 33 for each month (or
> partial month) of unused entitlement under Chap-
> ter 30 (including any months of Chapter 30 entitle-
> ment previously transferred to a dependent that
> the individual has revoked).  In short, if an individ-
> ual is eligible for benefits under Chapter 30, and he
> or she uses some of that entitlement before irrevo-
> cably electing to receive Chapter 33 benefits in lieu
> of benefits under Chapter 30, that individual may
> be awarded the equivalent of the entitlement that
> remained unused under Chapter 30.  There is no
> provision authorizing 12 additional months of enti-
> tlement under Chapter 33 on top of 36 total months
> of combined benefits under Chapter 30 and Chap-
> ter 33.

BVA Op. at *3 (internal citation omitted).

On Mr. Rudisill's appeal, the Veterans Court reversed
the BVA and held that the veteran is entitled to education
benefits for each of his periods of separately qualifying ser-
vice, and that he is entitled to the aggregate cap of 48
months of benefits.  The Secretary appeals, stating that the
Veterans Court did not correctly interpret the GI Bill stat-
utes and regulations.  As we shall discuss, we conclude that
the Veterans Court's interpretation was in conformity with
law.

The "GI Bills" have a long and salutary history. The original GI Bill was the Servicemen's Readjustment Act of 1944, to provide education and other benefits for veterans of World War II. The GI Bill provided payment of tuition and designated expenses for college or trade school education. Similar bills were enacted after successive periods of conflict, again to provide education and other benefits for veterans. *See, e.g.*, Veterans' Readjustment Assistance Act of 1952, 66 Stat. 663 ("Korean War GI Bill"); Veterans' Readjustment Benefits Act of 1966, 80 Stat. 12 ("Cold War GI Bill"); the Veterans' Education and Employment Assistance Act of 1976, 90 Stat. 2383 ("Post-Korean Conflict and Vietnam Era GI Bill"); and Veterans' Rehabilitation and Education Amendments of 1980, 94 Stat. 2171 ("Post-Vietnam Era Veterans Educational Assistance Program").

The statutes relevant to this action are the Montgomery GI Bill of 1985, codified at chapter 30 of title 38 United States Code, and the Post-9/11 GI Bill of 2008, codified at chapter 33 of title 38 United States Code. Following are relevant provisions of these GI Bills:

### *The Montgomery GI Bill*

The Montgomery GI Bill states the purposes of education benefits for veterans in its opening section:

> 38 U.S.C. § 3001. The purposes of this chapter are . . . to aid in the recruitment and retention of highly qualified personnel for both the active and reserve components of the Armed Forces . . . [and] to enhance our Nation's competitiveness through the development of a more highly educated and productive work force.

Section 3011(a) defines the veterans who are entitled to Montgomery GI Bill benefits:

> (a) Except as provided in subsection (c) of this section, each individual—

(1) who—

(A) after June 30, 1985, first becomes a member of the Armed Forces or first enters on active duty as a member of the Armed Forces and—

(i) who (I) in the case of an individual whose obligated period of active duty is three years or more, serves at least three years of continuous active duty in the Armed Forces, or (II) in the case of an individual whose obligated period of active duty is less than three years, serves at least two years of continuous active duty in the Armed Forces.

Section 3013(a)(1) provides that veterans are entitled to "36 months of educational assistance benefits under this chapter."

The Montgomery education benefits are provided as a monthly stipend at a fixed rate, regardless of actual tuition costs, and do not include payment for books or living expenses. *See* 38 U.S.C. § 3015. This was the pattern of all the preceding GI Bills.

### *The Post-9/11 GI Bill*

The Post-9/11 GI Bill applies to education costs incurred, starting in 2011, by veterans with an aggregate of at least 36 months of active duty service after September 11, 2001. This Bill "improve[s] educational assistance for veterans who served in the Armed Forces after September 11, 2001." 124 Stat. 4106 (approved Jan. 4, 2011). Section 3311 defines the veterans who are entitled to Post-9/11 GI Bill benefits:

38 U.S.C. § 3311(b). Covered Individuals. . . . An individual who—

(A) commencing on or after September 11, 2001, serves an aggregate of at least 36 months on active duty in the Armed Forces (including service on active duty in entry level and skill training); and

(B) after completion of service described in subparagraph (A)—

(i) continues on active duty; or

(ii) is discharged or released from active duty as described in subsection (c).

Covered veterans may receive up to 36 months of Post-9/11 GI Bill benefits. 38 U.S.C. § 3312(a).

The Post-9/11 GI Bill provided broader benefits than the prior bills, including payment of the actual amount of tuition and fees plus a monthly housing stipend equal to the basic military housing allowance in the area in which the campus is located; plus a lump sum amount for books, supplies, equipment, and other costs. 38 U.S.C. § 3313(c)(1)(B)(iv).

The Post-9/11 GI Bill includes provisions relevant to multiple periods of service, and allows eligible veterans to elect the education assistance under this Bill:

38 U.S.C. § 3322(h). Bar To Duplication of Eligibility Based on a Single Event or Period of Service.—

(1) Active-duty service.—

An individual with qualifying service in the Armed Forces that establishes eligibility on the part of such individual for educational assistance under this chapter . . . shall elect (in such form and manner as the Secretary may prescribe) under which authority such service is to be credited.

\* \* \*

§ 3327(a). Individuals Eligible To Elect Participation in Post-9/11 Educational Assistance.—

An individual may elect to receive educational assistance under this chapter if such individual—(1)

as of August, 2009 . . . has used, but retains un-
used, entitlement under [the Montgomery GI Bill].

Section 3327(d)(2) authorizes veterans who were using pre-
viously available GI Bill benefits to switch to the more in-
clusive Post-9/11 benefits for "the number of months of
unused entitlement." However, the Montgomery GI Bill
was not terminated and did not expire with enactment of
the Post-9/11 GI Bill. The following text of the Post-9/11
GI Bill produced the uncertainty reflected in the rulings of
the BVA and the Veterans Court that are the subject of this
appeal:

> 38 U.S.C. § 3327(d)(2). Limitation on entitlement
> for certain individuals.— In the case of an individ-
> ual    making    an    election    under    subsection
> (a) . . . , the number of months of entitlement of the
> individual to educational assistance under this
> chapter shall be the number of months equal to—
> (A) the number of months of unused entitlement of
> the individual under [the Montgomery GI Bill] as
> of the date of the election[.]

The Post-9/11 GI Bill continued to recite, pursuant to §
3312(a), the aggregate period of 48 months of education as-
sistance for veterans with more than one period of qualify-
ing military service under § 3695:

> 38 U.S.C. § 3695. Limitation on period of assis-
> tance under two or more programs.
>
> (a) The aggregate period for which any person may
> receive assistance under two or more of the provi-
> sions of law listed below may not exceed 48 months
> (or the part-time equivalent thereof).
>
> [listing the eight GI Bills in effect, including the
> Montgomery GI Bill and the Post-9/11 GI Bill].

After his third period of military service Mr. Rudisill
sought further education, and applied for Post-9/11 GI Bill

benefits. He had previously received 25 months and 14 days of Montgomery benefits, and in view of the cap of 48 months, he requested 22 months and 16 days of Post-9/11 benefits. He submitted VA Form 22-1990, "Application for VA Educational Benefits," and in the field "education benefit being applied for" he selected "Chapter 33 [Post-9/11] in Lieu of Chapter 30 [Montgomery]." J.A. 541.

The VA determined that he was entitled to only 10 months and 16 days of benefits, measured as the unused remainder of his 36-month Montgomery entitlement. The VA held that no additional entitlement arose, and that the 48-month statutory cap for veterans with multiple periods of service did not apply. The VA explained:

> Under the regulations which govern the Post 9/11 GI Bill, a client who elects to receive benefit under the Post 9/11 GI Bill and who is eligible for the Montgomery GI Bill (Chapter 30) benefit is required to make an irrevocable election to relinquish his Chapter 30 benefits when claiming the Post 9/11 GI Bill. The law further states that entitlement to the Post 9/11 GI Bill will be equal to the client's remaining entitlement under Chapter 30 on the effective date of the client's irrevocable election. . . . Based on [Mr. Rudisill's] election, the law dictates that the VA grants entitlement under the Post-9/11 GI Bill not to exceed his remaining Chapter 30 entitlement.

J.A. 521 (Decision, denying Mr. Rudisill's request for additional entitlement under the Post-9/11 GI Bill).

Mr. Rudisill appealed to the BVA, arguing that the 48-month total applies by statute to veterans with separate qualifying tours of military service. The BVA rejected that argument, stating that Mr. Rudisill's election (on Form 22-1990) to use Post-9/11 benefits in lieu of Montgomery benefits limited his total eligibility to the unused remainder of his Montgomery 36-month entitlement. BVA Op. at *4

("[T]he Veteran's completed online application via VA Form 22-1990 in March 2015 was very clear that he did elect Chapter 33 in lieu of Chapter 30 benefits, that this election was irrevocable and could not be changed, and that his benefits under Chapter 33 would be limited to the time remaining under his Chapter 30 benefits unless he first used all of the benefits under Chapter 30 before electing Chapter 33.").

The Veterans Court reversed the BVA's decision. The Veterans Court held that a veteran with multiple periods of service who uses but does not exhaust Montgomery education benefits, and then applies for Post-9/11 benefits after a separate period of service, is not limited to the total of 36 months provided for the Montgomery program. The Veterans Court explained that "section 3327 does not apply in this case," *i.e.* in cases of "individuals with dual entitlement based on *multiple* periods of service," but rather, applies only in cases of "individuals with dual entitlement based on a *single* period of service." Vet. Ct. Op. at 332–34 (emphases in original). The Veterans Court held that Mr. Rudisill's third period of service separately entitled him to a full term of education benefits under the Post-9/11 GI Bill, subject to the 48-month aggregate cap.

On this appeal, the Secretary argues that the Veterans Court misinterpreted the statute. The Secretary states that "§ 3327(a)(1)(A) authorizes veterans who have used some, but not all, of their [Montgomery] benefits to switch to using Post-9/11 benefits. However, § 3327(d)(2)(A) limits the entitlement to Post-9/11 benefits for that particular subset of veterans to 'the number of months of unused entitlement of the individual under' MGIB 'as of the date of the election.'" Sec'y Br. 9.

DISCUSSION

I

*Jurisdiction*

Mr. Rudisill supports the decision of the Veterans Court, but challenges our jurisdiction to receive this appeal, based on the Solicitor General's tardy approval of the appeal filing as required by 28 C.F.R. § 0.20(b). Mr. Rudisill states that the appeal was not timely filed.

Federal Circuit jurisdiction of decisions of the Veterans Court is assigned by 38 U.S.C. § 7292(a), which authorizes our review of the "validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof." The notice of appeal must be filed within 60 days of the final judgment. *Id.*; 28 U.S.C. § 2107(b). When the United States is the appellant, 28 U.S.C. § 518(a) provides that "the Attorney General and the Solicitor General shall conduct and argue suits and appeals in . . . the United States Court of Appeals for the Federal Circuit" unless "the Attorney General in a particular case directs otherwise."

In turn, the Solicitor General is responsible for "[d]etermining whether, and to what extent, appeals will be taken by the Government to all appellate courts." 28 C.F.R. § 0.20(b). The filing of a notice of appeal is deemed to be a determination "whether" an appeal will be taken, which the Solicitor General is required to approve. *Id.*

Here the Veterans Court entered its final judgment on January 7, 2020. Fifty-nine days later, on March 6, 2020, the Secretary filed a Notice of Appeal, represented by the Attorney General. On May 27, 2020, the Solicitor General filed the requisite approval of the filing of the appeal. This led to a Motion for Extension of Time; *see* Sec'y Reply in Supp. of Mot. for Extension of Time, at 3 (ECF No. 19) ("[T]he Solicitor General has completed his review. On

May 27, 2020 undersigned counsel received official author-
ization to proceed with this appeal.").

Mr. Rudisill argues that this appeal was not timely
filed. He states that *Federal Election Commission v. NRA
Political Victory Fund*, 513 U.S. 88 (1994) ("*FEC*") requires
this result, for the Supreme Court held that the agency's
petition for *certiorari* was untimely because it was not au-
thorized by the Solicitor General until after the time for
filing the petition had expired, although the petition was
filed within the statutory period. The Court applied 28
C.F.R. § 0.20(a), the Supreme Court counterpart of 28
C.F.R. § 0.20(b), and concluded: "[T]he FEC is not author-
ized to petition for certiorari in this Court on its own, and
that the effort of the Solicitor General to authorize the
FEC's petition after the time for filing it had expired did
not breathe life into it." *Id.* at 90.

The Secretary responds by distinguishing *FEC* on the
facts thereof, where the initial filing was not by the Attor-
ney General but by the FEC in its own name. The Secre-
tary cites several circuit court decisions where the Attorney
General filed a Notice of Appeal within the statutory period
and the Solicitor General's authorization was permitted to
be filed later. For example, in *Hogg v. United States*, 428
F.2d 274 (6th Cir. 1970), Hogg argued that "the Govern-
ment's timely notice of appeal . . . is fatally defective be-
cause it was filed by the United States Attorney at a time
when the Solicitor General had not authorized the appeal."
*Id.* at 277. The Sixth Circuit rejected this theory, reason-
ing that the "Attorney General has plenary power over the
conduct of litigation to which the United States is a party"
and a "regulation defining the jurisdiction of the Solicitor
General" does not "foreclose[] the Attorney General from
directing that a notice of appeal be filed," *id.* at 278,
thereby meeting the jurisdictional requirements.

In *United States v. Hill*, 19 F.3d 984 (5th Cir. 1994), the
Fifth Circuit applied the reasoning in *Hogg* to the current

version of 28 C.F.R. § 0.20(b), and ruled that any delay in approval by the Solicitor General does not negate the timeliness of a Notice of Appeal filed by the Attorney General, and they have authority to file protective notices of appeal pending the Solicitor General's decision whether to authorize the appeal.

We discern no reason to depart from this rationale. The Secretary explains: "given the extensive and time-consuming process the Government follows in order to pursue affirmative appeals, it is not uncommon for so-called 'protective' notices of appeal to be filed, pending a final decision from the Solicitor General." Sec'y Reply Br. 2 (internal citation omitted). This practice is "routine and consistent with the Solicitor General's role in authorizing appeals." *Id.* at 3. The Department of Justice Directive 1-15, § 6, at 28 C.F.R. Pt. 0, Subpt. Y., App. states: "Until the Solicitor General has made a decision whether an appeal will be taken, the Government attorney handling the case must take all necessary procedural actions to preserve the Government's right to take an appeal, including filing a protective notice of appeal when the time to file a notice of appeal is about to expire and the Solicitor General has not yet made a decision."

We conclude that the jurisdictional requirement for filing this appeal was met by the filing of the notice of appeal by the Attorney General within 60 days, and its subsequent approval by the Solicitor General.

II

***Statutory Interpretation: Veterans With Multiple Periods of Qualifying Service***

The Veterans Court stated: "The precise question the Court must answer in this appeal is: how does the law treat a veteran who qualifies for the Montgomery GI Bill under one period of service and the Post-9/11 GI Bill under an entirely separate qualifying period or periods of service?"

Vet. Ct. Op. at 9.  The government's position is that, for veterans with multiple periods of service, "§ 3327(a)(1)(A) authorizes veterans who have used some, but not all, of their MGIB benefits to switch to using Post-9/11 benefits. However, § 327(d)(2)(A) limits the entitlement to Post-9/11 benefits for that particular subset of veterans to 'the number of months of unused entitlement of the individual under' MGIB 'as of the date of the election.'"  Sec'y Br. 9 (quoting § 3327(d)(2)(A)).  That was the ruling of the BVA.

The Veterans Court did not agree.  The court reviewed the history and legislative intent of the GI Bills, and concluded that the correct interpretation of § 3327(d)(2)(A) is that "separate periods of qualifying service allow a veteran such as [Mr. Rudisill] to receive full benefits under both programs subject to an aggregate cap on all such benefits." Vet. Ct. Op. at 328.  The statute states:

> [T]he number of months of entitlement of the individual to educational assistance under this chapter shall be the number of months equal to— (A) the number of months of unused entitlement of the individual under [the Montgomery GI Bill] as of the date of the election.

38 US.C. § 3327(d)(2).  The Veterans Court held that § 3327 does not apply to veterans having periods of intermittent qualifying service; rather, those veterans are subject to the 48-month aggregate cap.

Again on this appeal, the Secretary states that since Mr. Rudisill drew on his first two periods of active service for Montgomery GI Bill benefits, and used 25 months 14 days thereof, he was entitled to only the remaining period of 10 months 16 days for the Post-9/11 GI Bill benefits he elected based on his subsequent qualifying service.  The Secretary thus argues that the applicable cap for Mr. Rudisill is the period of entitlement for Montgomery benefits, that is, 36 months.  Sec'y Br. 28 ("Mr. Rudisill's

entitlement to Post-9/11 benefits [is] limited to his period of unused [Montgomery] entitlement.").

The Veterans Court did not share the Secretary's statutory interpretation, and we agree. The legislation explicitly provides additional benefits to veterans with multiple periods of qualifying service, whereby each period of service qualifies for education benefits, with the limit that: "The aggregate period for which any person may receive assistance under two or more of the provisions of law listed below may not exceed 48 months (or the part-time equivalent thereof)," codified at 38 U.S.C. § 3695(a). This provision has been in each GI Bill since at least 1968. *See Finley v. United States*, 490 U.S. 545, 554 (1989) ("Under established canons of statutory construction, 'it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.'" (quoting *Anderson v. Pac. Coast S.S. Co.*, 225 U.S. 187, 199 (1912)).

The statutory pattern does not support the interpretation urged by the Secretary whereby veterans with multiple periods of qualifying service would be limited to the cap applicable to the initial period. The Veterans Court correctly held that each period of service earns education benefits, subject to its cap of 48 aggregate months of benefits.

CONCLUSION

Mr. Rudisill is entitled to Post-9/11 GI Bill benefits for his graduate education, subject to the cap of 48 aggregate months of benefits including the period for which he received Montgomery benefits.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**JAMES R. RUDISILL,**
*Claimant-Appellee*

**v.**

**DENIS MCDONOUGH, SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellant*

---

2020-1637

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-4134, Chief Judge Margaret C. Bartley, Judge Michael P. Allen, Senior Judge Mary J. Schoelen.

---

DYK, *Circuit Judge*, concurring in part and dissenting in part.

The majority holds that the Secretary of Veterans Affairs timely filed the notice of appeal in this case. Maj. Op. 13. I agree and join Part I of the majority's opinion.

In Part II, the majority also holds that all "veterans with multiple periods of qualifying service" are entitled to "additional benefits" up to "48 aggregate months of benefits." Maj. Op. 15. This seems to me to be directly contradictory to the statute (38 U.S.C. § 3327), as the government argues. Section 3327 unambiguously limits the educational benefits available to all veterans who switch from

using the Montgomery GI Bill ("Montgomery") to the Post-9/11 GI Bill ("Post-9/11"), and who have not exhausted their Montgomery eligibility, to the remaining period of eligibility for Montgomery benefits, which here is less than what the majority allows.

The statute defines the scope of veteran educational assistance. Depending on their service, veterans may be eligible for educational assistance under multiple programs at the same time, including the Montgomery and Post-9/11 programs. By statute, there is an overall 48-month limit on the receipt of educational assistance. 38 U.S.C. § 3695(a). According to the majority, this is the only limit that applies here. However, a second and additional statutory limit also applies when a veteran initially elects to receive assistance under the Montgomery program, but later elects to switch to Post-9/11 assistance while retaining unused entitlement under the Montgomery program. *Id.* § 3327(a)(1)(A). Under this circumstance,

> the number of months of entitlement of the individual to educational assistance under [the chapter governing Post-9/11 entitlement] shall be the number of months equal to . . . the number of months of unused entitlement of the individual under chapter 30 of this title [governing Montgomery benefits], as of the date of the election.

*Id.* § 3327(d)(2)(A).[1]

Here, Mr. Rudisill is an "individual" entitled to Post-9/11 benefits because "on or after September 11, 2001," he "serve[d] an aggregate of at least 36 months on

---

[1]    The statute provides for an exception, not at issue here, equal to "the number of months, if any, of entitlement revoked by the individual under subsection (c)(1)," which relates to the transfer of basic educational assistance to family members. 38 U.S.C. § 3327(d)(2)(B).

active duty" and was later honorably discharged from active duty. *Id*. § 3311(b)(1)(A), (c)(1). He is additionally an "individual" entitled to <u>Montgomery</u> benefits because "during the period beginning July 1, 1985, and ending September 30, 2030," he "first enter[ed] on active duty as a member of the Armed Forces" and "serve[d] at least three years of continuous active duty," "complete[d] the requirements of a secondary school diploma . . . before applying for benefits," and was later "discharged from active duty with an honorable discharge." *Id*. § 3011(a). Finally, Mr. Rudisill made the election described in § 3327(a)(1)(A), switching from the Montgomery program to the Post-9/11 program while he had 10 months and 16 days of unused Montgomery entitlement remaining. The VA correctly determined that under the explicit language of the statute, Mr. Rudisill was limited to 10 months and 16 days of Post-9/11 benefits and not to the 22 months and 16 days he would be allowed if only the 48-month cap applied.

The majority construes § 3327(d)(2) as applying only to veterans with dual eligibility based on a single period of service, and not to veterans like Mr. Rudisill who have earned benefits for multiple periods of service. Maj. Op. 15. However, nothing in the language or history of the relevant statutes remotely justifies such an interpretation, and the majority indeed applies little effort to justify its interpretation. It is not our job to rewrite the statute to achieve a supposedly fair result. I respectfully dissent.

**38 U.S.C.**
United States Code, 2011 Edition
Title 38 - VETERANS' BENEFITS
PART III - READJUSTMENT AND RELATED BENEFITS
CHAPTER 33 - POST-9/11 EDUCATIONAL ASSISTANCE
SUBCHAPTER III - ADMINISTRATIVE PROVISIONS
Sec. 3322 - Bar to duplication of educational assistance benefits
From the U.S. Government Publishing Office, www.gpo.gov

## §3322. Bar to duplication of educational assistance benefits

(a) IN GENERAL.—An individual entitled to educational assistance under this chapter who is also eligible for educational assistance under chapter 30, 31, 32, or 35 of this title, chapter 107, 1606, or 1607 or section 510 of title 10, or the provisions of the Hostage Relief Act of 1980 (Public Law 96–449; 5 U.S.C. 5561 note) may not receive assistance under two or more such programs concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which chapter or provisions to receive educational assistance.

(b) INAPPLICABILITY OF SERVICE TREATED UNDER EDUCATIONAL LOAN REPAYMENT PROGRAMS.—A period of service counted for purposes of repayment of an education loan under chapter 109 of title 10 may not be counted as a period of service for entitlement to educational assistance under this chapter.

(c) SERVICE IN SELECTED RESERVE.—An individual who serves in the Selected Reserve may receive credit for such service under only one of this chapter, chapter 30 of this title, and chapters 1606 and 1607 of title 10, and shall elect (in such form and manner as the Secretary may prescribe) under which chapter such service is to be credited.

(d) ADDITIONAL COORDINATION MATTERS.—In the case of an individual entitled to educational assistance under chapter 30, 31, 32, or 35 of this title, chapter 107, 1606, or 1607 of title 10, or the provisions of the Hostage Relief Act of 1980, or making contributions toward entitlement to educational assistance under chapter 30 of this title, as of August 1, 2009, coordination of entitlement to educational assistance under this chapter, on the one hand, and such chapters or provisions, on the other, shall be governed by the provisions of section 5003(c) of the Post-9/11 Veterans Educational Assistance Act of 2008.

(e) BAR TO CONCURRENT RECEIPT OF TRANSFERRED EDUCATION BENEFITS AND MARINE GUNNERY SERGEANT JOHN DAVID FRY SCHOLARSHIP ASSISTANCE.—An individual entitled to educational assistance under both sections 3311(b)(9) and 3319 may not receive assistance under both provisions concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which provision to receive educational assistance.

(f) BAR TO RECEIPT OF COMPENSATION AND PENSION AND MARINE GUNNERY SERGEANT JOHN DAVID FRY SCHOLARSHIP ASSISTANCE.—The commencement of a program of education under section 3311(b)(9) shall be a bar to the following:

(1) Subsequent payments of dependency and indemnity compensation or pension based on the death of a parent to an eligible person over the age of 18 years by reason of pursuing a course in an educational institution.

(2) Increased rates, or additional amounts, of compensation, dependency and indemnity compensation, or pension because of such a person, whether eligibility is based upon the death of the parent.

(g) BAR TO CONCURRENT RECEIPT OF TRANSFERRED EDUCATION BENEFITS.—A spouse or child who is entitled to educational assistance under this chapter based on a transfer of entitlement from more than one individual under section 3319 may not receive assistance based on transfers from more than one such individual concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which source to utilize such assistance at any one time.

(h) Bar To Duplication of Eligibility Based on a Single Event or Period of Service.—

(1) Active-duty service.—An individual with qualifying service in the Armed Forces that establishes eligibility on the part of such individual for educational assistance under this chapter, chapter 30 or 32 of this title, and chapter 1606 or 1607 of title 10, shall elect (in such form and manner as the Secretary may prescribe) under which authority such service is to be credited.

(2) Eligibility for educational assistance based on parent's service.—A child of a member of the Armed Forces who, on or after September 11, 2001, dies in the line of duty while serving on active duty, who is eligible for educational assistance under either section 3311(b)(9) or chapter 35 of this title based on the parent's death may not receive such assistance under both this chapter and chapter 35 of this title, but shall elect (in such form and manner as the Secretary may prescribe) under which chapter to receive such assistance.

(Added Pub. L. 110–252, title V, §5003(a)(1), June 30, 2008, 122 Stat. 2373; amended Pub. L. 111–377, title I, §111(a)–(d), title II, §202(a), Jan. 4, 2011, 124 Stat. 4120, 4121, 4124.)

### References in Text

The Hostage Relief Act of 1980, referred to in subsecs. (a) and (d), is Pub. L. 96–449, Oct. 14, 1980, 94 Stat. 1967, which was formerly set out as a note under section 5561 of Title 5, Government Organization and Employees.

Section 5003(c) of the Post-9/11 Veterans Educational Assistance Act of 2008, referred to in subsec. (d), is section 5003(c) of Pub. L. 110–252, which is set out as a note under section 3301 of this title.

### Amendments

**2011**—Subsec. (a). Pub. L. 111–377, §202(a), inserted "or section 510" after "or 1607".

Subsec. (e). Pub. L. 111–377, §111(a), added subsec. (e).

Subsec. (f). Pub. L. 111–377, §111(b), added subsec. (f).

Subsec. (g). Pub. L. 111–377, §111(c), added subsec. (g).

Subsec. (h). Pub. L. 111–377, §111(d), added subsec. (h).

### Effective Date of 2011 Amendment

Pub. L. 111–377, title I, §111(e), Jan. 4, 2011, 124 Stat. 4121, provided that: "The amendments made by this section [amending this section] shall take effect on August 1, 2011."

Pub. L. 111–377, title II, §202(c), Jan. 4, 2011, 124 Stat. 4124, provided that: "The amendments made by this section [amending this section and section 3681 of this title] shall take effect on August 1, 2011."

**38 U.S.C.**
United States Code, 2019 Edition
Title 38 - VETERANS' BENEFITS
PART III - READJUSTMENT AND RELATED BENEFITS
CHAPTER 33 - POST-9/11 EDUCATIONAL ASSISTANCE
SUBCHAPTER III - ADMINISTRATIVE PROVISIONS
Sec. 3327 - Election to receive educational assistance
From the U.S. Government Publishing Office, www.gpo.gov

## §3327. Election to receive educational assistance

(a) INDIVIDUALS ELIGIBLE TO ELECT PARTICIPATION IN POST-9/11 EDUCATIONAL ASSISTANCE.—An individual may elect to receive educational assistance under this chapter if such individual—

(1) as of August 1, 2009—

(A) is entitled to basic educational assistance under chapter 30 of this title and has used, but retains unused, entitlement under that chapter;

(B) is entitled to educational assistance under chapter 107, 1606, or 1607 of title 10 and has used, but retains unused, entitlement under the applicable chapter;

(C) is entitled to basic educational assistance under chapter 30 of this title but has not used any entitlement under that chapter;

(D) is entitled to educational assistance under chapter 107, 1606, or 1607 of title 10 but has not used any entitlement under such chapter;

(E) is a member of the Armed Forces who is eligible for receipt of basic educational assistance under chapter 30 of this title and is making contributions toward such assistance under section 3011(b) or 3012(c) of this title; or

(F) is a member of the Armed Forces who is not entitled to basic educational assistance under chapter 30 of this title by reason of an election under section 3011(c)(1) or 3012(d)(1) of this title; and

(2) as of the date of the individual's election under this paragraph, meets the requirements for entitlement to educational assistance under this chapter.

(b) CESSATION OF CONTRIBUTIONS TOWARD GI BILL.—Effective as of the first month beginning on or after the date of an election under subsection (a) of an individual described by paragraph (1)(E) of that subsection, the obligation of the individual to make contributions under section 3011(b) or 3012(c) of this title, as applicable, shall cease, and the requirements of such section shall be deemed to be no longer applicable to the individual.

(c) REVOCATION OF REMAINING TRANSFERRED ENTITLEMENT.—

(1) ELECTION TO REVOKE.—If, on the date an individual described in paragraph (1)(A) or (1)(C) of subsection (a) makes an election under that subsection, a transfer of the entitlement of the individual to basic educational assistance under section 3020 of this title is in effect and a number of months of the entitlement so transferred remain unutilized, the individual may elect to revoke all or a portion of the entitlement so transferred that remains unutilized.

(2) AVAILABILITY OF REVOKED ENTITLEMENT.—Any entitlement revoked by an individual under this subsection shall no longer be available to the dependent to whom transferred, but shall be available to the individual instead for educational assistance under chapter 33 of this title in accordance with the provisions of this section.

(3) AVAILABILITY OF UNREVOKED ENTITLEMENT.—Any entitlement described in paragraph (1) that is not revoked by an individual in accordance with that paragraph shall remain available to the dependent or dependents concerned in accordance with the current transfer of such entitlement under section 3020 of this title.

(d) Post-9/11 Educational Assistance.—

(1) In general.—Subject to paragraph (2) and except as provided in subsection (e), an individual making an election under subsection (a) shall be entitled to educational assistance under this chapter in accordance with the provisions of this chapter, instead of basic educational assistance under chapter 30 of this title, or educational assistance under chapter 107, 1606, or 1607 of title 10, as applicable.

(2) Limitation on entitlement for certain individuals.—In the case of an individual making an election under subsection (a) who is described by paragraph (1)(A) of that subsection, the number of months of entitlement of the individual to educational assistance under this chapter shall be the number of months equal to—

(A) the number of months of unused entitlement of the individual under chapter 30 of this title, as of the date of the election, plus

(B) the number of months, if any, of entitlement revoked by the individual under subsection (c)(1).

(e) Continuing Entitlement to Educational Assistance Not Available Under Post-9/11 Educational Assistance Program.—

(1) In general.—In the event educational assistance to which an individual making an election under subsection (a) would be entitled under chapter 30 of this title, or chapter 107, 1606, or 1607 of title 10, as applicable, is not authorized to be available to the individual under the provisions of this chapter, the individual shall remain entitled to such educational assistance in accordance with the provisions of the applicable chapter.

(2) Charge for use of entitlement.—The utilization by an individual of entitlement under paragraph (1) shall be chargeable against the entitlement of the individual to educational assistance under this chapter at the rate of 1 month of entitlement under this chapter for each month of entitlement utilized by the individual under paragraph (1) (as determined as if such entitlement were utilized under the provisions of chapter 30 of this title, or chapter 107, 1606, or 1607 of title 10, as applicable).

(f) Additional Post-9/11 Assistance for Members Having Made Contributions Toward GI Bill.—

(1) Additional assistance.—In the case of an individual making an election under subsection (a) who is described by subparagraph (A), (C), or (E) of paragraph (1) of that subsection, the amount of educational assistance payable to the individual under this chapter as a monthly stipend payable under paragraph (1)(B) of section 3313(c) of this title, or under paragraphs (2) through (7) of that section (as applicable), shall be the amount otherwise payable as a monthly stipend under the applicable paragraph increased by the amount equal to—

(A) the total amount of contributions toward basic educational assistance made by the individual under section 3011(b) or 3012(c) of this title, as of the date of the election, multiplied by

(B) the fraction—

(i) the numerator of which is—

(I) the number of months of entitlement to basic educational assistance under chapter 30 of this title remaining to the individual at the time of the election; plus

(II) the number of months, if any, of entitlement under chapter 30 of this title revoked by the individual under subsection (c)(1); and

(ii) the denominator of which is 36 months.

(2) Months of remaining entitlement for certain individuals.—In the case of an individual covered by paragraph (1) who is described by subsection (a)(1)(E), the number of months of entitlement to basic educational assistance remaining to the individual for purposes of paragraph (1)(B)(i)(II) shall be 36 months.

(3) Timing of payment.—The amount payable with respect to an individual under paragraph (1) shall be paid to the individual together with the last payment of the monthly stipend payable to the individual under paragraph (1)(B) of section 3313(c) of this title, or under paragraphs (2) through (7) of that section (as applicable), before the exhaustion of the individual's entitlement to educational assistance under this chapter.

(g) Continuing Entitlement to Additional Assistance for Critical Skills or Specialty and Additional Service.—An individual making an election under subsection (a)(1) who, at the time of the election, is entitled to increased educational assistance under section 3015(d) of this title, or section 16131(i) of title 10, or supplemental educational assistance under subchapter III of chapter 30 of this title, shall remain entitled to such increased educational assistance or supplemental educational assistance in the utilization of entitlement to educational assistance under this chapter, in an amount equal to the quarter, semester, or term, as applicable, equivalent of the monthly amount of such increased educational assistance or supplemental educational assistance payable with respect to the individual at the time of the election.

(h) Alternative Election by Secretary.—

(1) In general.—In the case of an individual who, on or after January 1, 2017, submits to the Secretary an election under this section that the Secretary determines is clearly against the interests of the individual, or who fails to make an election under this section, the Secretary may make an alternative election on behalf of the individual that the Secretary determines is in the best interests of the individual.

(2) Notice.—If the Secretary makes an election on behalf of an individual under this subsection, the Secretary shall notify the individual by not later than seven days after making such election and shall provide the individual with a 30-day period, beginning on the date of the individual's receipt of such notice, during which the individual may modify or revoke the election made by the Secretary on the individual's behalf. The Secretary shall include, as part of such notice, a clear statement of why the alternative election made by the Secretary is in the best interests of the individual as compared to the election submitted by the individual. The Secretary shall provide the notice required under this paragraph by electronic means whenever possible.

(i) Irrevocability of Elections.—An election under subsection (a) or (c)(1) is irrevocable.

(Added Pub. L. 114–315, title IV, §405(a), Dec. 16, 2016, 130 Stat. 1555.)

### Prior Provisions

Provisions similar to those comprising this section were contained in Pub. L. 110–252, title V, §5003(c), June 30, 2008, 122 Stat. 2375, which was formerly set out as a note under section 3301 of this title prior to repeal by Pub. L. 114–315, title IV, §405(c), Dec. 16, 2016, 130 Stat. 1558.

**38 U.S.C.**
United States Code, 2019 Edition
Title 38 - VETERANS' BENEFITS
PART III - READJUSTMENT AND RELATED BENEFITS
CHAPTER 36 - ADMINISTRATION OF EDUCATIONAL BENEFITS
SUBCHAPTER II - MISCELLANEOUS PROVISIONS
Sec. 3695 - Limitation on period of assistance under two or more programs
From the U.S. Government Publishing Office, www.gpo.gov

## §3695. Limitation on period of assistance under two or more programs

(a) The aggregate period for which any person may receive assistance under two or more of the provisions of law listed below may not exceed 48 months (or the part-time equivalent thereof):

(1) Parts VII or VIII, Veterans Regulation numbered 1(a), as amended.

(2) Title II of the Veterans' Readjustment Assistance Act of 1952.

(3) The War Orphans' Educational Assistance Act of 1956.

(4) Chapters 30, 32, 33, 34, and 36.

(5) Chapters 107, 1606, 1607, and 1611 of title 10.

(6) Section 903 of the Department of Defense Authorization Act, 1981 (Public Law 96–342, 10 U.S.C. 2141 note).

(7) The Hostage Relief Act of 1980 (Public Law 96–449, 5 U.S.C. 5561 note).

(8) The Omnibus Diplomatic Security and Antiterrorism Act of 1986 (Public Law 99–399).

(b) No person may receive assistance under chapter 31 of this title in combination with assistance under any of the provisions of law cited in subsection (a) of this section in excess of 48 months (or the part-time equivalent thereof) unless the Secretary determines that additional months of benefits under chapter 31 of this title are necessary to accomplish the purposes of a rehabilitation program (as defined in section 3101(5) of this title) in the individual case.

(c) The aggregate period for which any person may receive assistance under chapter 35 of this title, on the one hand, and any of the provisions of law referred to in subsection (a), on the other hand, may not exceed 81 months (or the part-time equivalent thereof).

(Added Pub. L. 90–631, §1(d)(1), Oct. 23, 1968, 82 Stat. 1331, §1791; renumbered §1795 and amended Pub. L. 92–540, title III, §316(2), title IV, §403(13), Oct. 24, 1972, 86 Stat. 1086, 1090; Pub. L. 96–466, title I, §103, Oct. 17, 1980, 94 Stat. 2187; Pub. L. 98–223, title II, §203(c)(2), Mar. 2, 1984, 98 Stat. 41; Pub. L. 98–525, title VII, §703(d), Oct. 19, 1984, 98 Stat. 2564; Pub. L. 101–237, title IV, §423(a)(8)(B), (b)(1)(A), Dec. 18, 1989, 103 Stat. 2092; renumbered §3695 and amended Pub. L. 102–83, §5(a), (c)(1), Aug. 6, 1991, 105 Stat. 406; Pub. L. 106–55, div. A, title V, §551(b), Oct. 5, 1999, 113 Stat. 614; Pub. L. 107–103, title V, §509(d), Dec. 27, 2001, 115 Stat. 997; Pub. L. 107–107, div. A, title X, §1048(i)(8), Dec. 28, 2001, 115 Stat. 1229; Pub. L. 108–375, div. A, title V, §527(b)(2), Oct. 28, 2004, 118 Stat. 1894; Pub. L. 110–252, title V, §5003(b)(1)(B), June 30, 2008, 122 Stat. 2375; Pub. L. 112–154, title IV, §401(a), Aug. 6, 2012, 126 Stat. 1188.)

### References in Text

Parts VII and VIII, Veterans Regulation numbered 1(a), referred to in subsec. (a)(1), are Parts VII and VIII as added by acts Mar. 24, 1943, ch. 22, §2, 57 Stat. 43 and June 22, 1944, ch. 268, title II, §400(b), 58 Stat. 287 to Veterans Regulation numbered 1(a) promulgated by Ex. Ord. No. 6156, June 6, 1933, which had been classified as parts VII and VIII of chapter 12A of former Title 38, Pensions, Bonuses, and Veterans' Relief, and which were repealed by Pub. L. 85–857, §14(67), Sept. 2, 1958, 72 Stat. 1272.

The Veterans' Readjustment Assistance Act of 1952, referred to in subsec. (a)(2), is act July 16, 1952, ch. 875, 66 Stat. 663, as amended. Title II of the Veterans' Readjustment Assistance Act of 1952 was classified generally to subchapter II (§911 et seq.) of chapter 14 of former Title 38, which was repealed and the provisions thereof reenacted as chapter 33 (§1601 et seq.) of this title by Pub. L. 85–857, Sept. 2, 1958, 72

Stat. 1105. Chapter 33 of this title was repealed by Pub. L. 89–358, §4(a), Mar. 3, 1966, 80 Stat. 23. See chapter 32 (§3201 et seq.) of this title.

The War Orphans' Educational Assistance Act of 1956, referred to in subsec. (a)(3), is act June 29, 1956, ch. 476, 70 Stat. 411, as amended, which was classified generally to chapter 15 (§1031 et seq.) of former Title 38, which was repealed and the provisions thereof reenacted as chapter 35 of this title by Pub. L. 85–857, Sept. 2, 1958, 72 Stat. 1105.

Section 903 of the Department of Defense Authorization Act, 1981, referred to in subsec. (a)(6), is section 903 of Pub. L. 96–342, title IX, Sept. 8, 1980, 94 Stat. 1115, which is set out as a note under section 2141 of Title 10, Armed Forces.

The Hostage Relief Act of 1980, referred to in subsec. (a)(7), is Pub. L. 96–449, Oct. 14, 1980, 94 Stat. 1967, as amended, which was formerly set out as a note under section 5561 of Title 5, Government Organization and Employees.

The Omnibus Diplomatic Security and Antiterrorism Act of 1986, referred to in subsec. (a)(8), is Pub. L. 99–399, Aug. 27, 1986, 100 Stat. 853, as amended. For complete classification of this Act to the Code, see Short Title note set out under section 4801 of Title 22, Foreign Relations and Intercourse, and Tables.

### AMENDMENTS

**2012**—Subsec. (a)(4). Pub. L. 112–154, §401(a)(1), struck out "35," after "34,".

Subsec. (c). Pub. L. 112–154, §401(a)(2), added subsec. (c).

**2008**—Subsec. (a)(4). Pub. L. 110–252 amended par. (4) generally. Prior to amendment, par. (4) read as follows: "Chapters 30, 32, 34, 35, and 36 of this title, and the former chapter 33."

**2004**—Subsec. (a)(5). Pub. L. 108–375 inserted "1607," after "1606,".

**2001**—Subsec. (a)(5). Pub. L. 107–103 and Pub. L. 107–107 amended par. (5) identically, substituting "1611" for "1610".

**1999**—Subsec. (a)(5). Pub. L. 106–65 substituted "Chapters 107, 1606, and 1610" for "Chapters 106 and 107".

**1991**—Pub. L. 102–83, §5(a), renumbered section 1795 of this title as this section.

Subsec. (b). Pub. L. 102–83, §5(c)(1), substituted "3101(5)" for "1501(5)".

**1989**—Subsec. (a)(8). Pub. L. 101–237, §423(a)(8)(B), added par. (8).

Subsec. (b). Pub. L. 101–237, §423(b)(1)(A), substituted "Secretary" for "Administrator".

**1984**—Subsec. (a). Pub. L. 98–525 inserted reference in cl. (4) to chapter 30 of this title, and in cl. (5) to chapter 106 of title 10.

Pub. L. 98–223, §203(c)(2)(A), substituted "48 months" for "forty-eight months", capitalized the first word in cls. (1) to (4), and added cls. (5) to (7).

Subsec. (b). Pub. L. 98–223, §203(c)(2)(B), substituted "subsection (a)" for "clauses (1), (2), (3), and (4)" and "48" for "forty-eight".

**1980**—Pub. L. 96–466 designated existing provisions as subsec. (a), substituted in par. (4) "chapters 32, 34, 35, and 36 of this title and the former chapter 33;" for "chapters 31, 34, 35, and 36 of this title, and the former chapter 33", in provisions following par. (4) struck out ", but this section shall not be deemed to limit the period for which assistance may be received under chapter 31 alone" after "(or the part-time equivalent thereof)", and added subsec. (b).

**1972**—Pub. L. 92–540, §403(13), inserted reference to chapter 36 of this title.

### EFFECTIVE DATE OF 2012 AMENDMENT

Pub. L. 112–154, title IV, §401(b), Aug. 6, 2012, 126 Stat. 1188, provided that: "The amendment made by subsection (a) [amending this section] shall take effect on October 1, 2013, and shall not operate to revive any entitlement to assistance under chapter 35 of title 38, United States Code, or the provisions of law referred to in section 3695(a) of such title, as in effect on the day before such date, that was terminated by reason of the operation of section 3695(a) of such title, as so in effect, before such date."

### EFFECTIVE DATE OF 2008 AMENDMENT

Amendment by Pub. L. 110–252 effective Aug. 1, 2009, see section 5003(d) of Pub. L. 110–252, set out as a note under section 16163 of Title 10, Armed Forces.

### EFFECTIVE DATE OF 1980 AMENDMENT

Amendment by Pub. L. 96–466 effective Oct. 1, 1980, see section 802(a)(6) of Pub. L. 96–466, set out as a note under section 3681 of this title.

**EFFECTIVE DATE**

Section effective first day of second calendar month which begins after Oct. 23, 1968, see section 6(a) of Pub. L. 90–631, set out as a note under section 3500 of this title.

**REVIVAL OF ENTITLEMENT REDUCED BY PRIOR UTILIZATION OF CHAPTER 35 ASSISTANCE**

Pub. L. 112–154, title IV, §401(c), Aug. 6, 2012, 126 Stat. 1188, provided that:

"(1) IN GENERAL.—Subject to paragraph (2), in the case of an individual whose period of entitlement to assistance under a provision of law referred to in section 3695(a) of title 38, United States Code (other than chapter 35 of such title), as in effect on September 30, 2013, was reduced under such section 3695(a), as so in effect, by reason of the utilization of entitlement to assistance under chapter 35 of such title before October 1, 2013, the period of entitlement to assistance of such individual under such provision shall be determined without regard to any entitlement so utilized by the individual under chapter 35 of such title.

"(2) LIMITATION.—The maximum period of entitlement to assistance of an individual under paragraph (1) may not exceed 81 months."

<u>CERTIFICATE OF COMPLIANCE</u>

This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 35(b)(2)(A) and 40(b).  The petition contains 3,743 words, excluding the parts of the petition exempted by Federal Circuit Rule 32(b)(2).

This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.


November 22, 2021                          /s/  Galina I. Fomenkova
                                                    GALINA I. FOMENKOVA

                                                    *Attorney for the Secretary*