**Appeal No. 20-1637**

# In the United States Court of Appeals for the Federal Circuit

JAMES R. RUDISILL,

*Claimant-Appellee,*

*v.*

DENIS McDONOUGH,
Secretary of Veterans Affairs,

*Respondent-Appellant.*

**On Appeal from the United States Court of Appeals for Veterans Claims
No. 16-4134, Judges Schoelen, Bartley, and Allen**

## EN BANC OPENING BRIEF OF RESPONDENT-APPELLANT DENIS McDONOUGH, SECRETARY OF VETERANS AFFAIRS

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

MARTIN F. HOCKEY, JR.
Deputy Director

OF COUNSEL

Y. KEN LEE
Deputy Chief Counsel
Office of General Counsel
U.S. Department of Veterans Affairs
810 Vermont Ave NW
Washington, DC 20420

GALINA I. FOMENKOVA
Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495

*Attorneys for the Secretary*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF RELATED CASES .................................................. 1

STATEMENT OF THE ISSUES.......................................................... 2

JURISDICTIONAL STATEMENT ...................................................... 3

STATEMENT OF THE CASE.............................................................. 5

    I.      The Statutory Scheme .......................................................... 6

            A.    38 U.S.C. § 3327................................................... 8

            B.    38 U.S.C. § 3322................................................ 10

            C.    38 U.S.C. § 3695................................................ 12

    II.     Mr. Rudisill's Service And Use Of Education Benefits ..................... 13

    III.    The Veterans Court Decision ............................................. 13

    IV.    The Panel Decision And *En Banc* Order............................. 15

SUMMARY OF THE ARGUMENT .................................................... 16

ARGUMENT ................................................................................ 19

    I.      Standard Of Review ......................................................... 19

    II.     Section 3327(d)(2) Limits The Statutory Entitlement To
            Post-9/11 Benefits For All Veterans Who Have Dual
            Entitlement And Used Some, But Not All Of Their
            Montgomery Benefits........................................................ 20

            A.    The Application Of § 3327(d)(2) To All Veterans Who
                   Have Used Some, But Not All Of Their Montgomery
                   Benefits Is Dictated By Its Express And Unambiguous
                   Terms........................................................................ 20

                  1.    Mr. Rudisill Meets The Express Definition Of
                         Veterans To Whom § 3327(d)(2) Applies................... 20

                  2.    Section 3327 Does Not Differentiate Between
                         Veterans Based On Their Number Of Periods Of
                         Service ................................................................ 23

3.      Excluding Veterans With Multiple Periods Of
        Service From § 3327 Harms Veterans And Results
        In Disparate Treatment .................................................. 26

B.      Applying § 3327(d)(2) To All Veterans Who Have Used
        Some, But Not All Of Their Montgomery Benefits Is
        Consistent With, And Reinforced By, Other Provisions In
        The Post-9/11 Chapter ............................................................31

        1.      Section 3322(d) Reinforces That § 3327 Applies
                To All Veterans With Dual Montgomery And
                Post-9/11 Entitlement ..................................................... 33

        2.      Section 3322(h) Reinforces That § 3327 Applies
                To Veterans With Multiple Periods Of Service ............ 35

III.    The Limits In § 3327(d)(2) And § 3695(a) Are Cumulative:
        § 3327(d)(2) Dictates The Maximum Portion Of The Aggregate
        48 Months That Can Come From Post-9/11 For Veterans With
        Unused Montgomery Benefits ............................................................39

CONCLUSION ..................................................................................................41

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ali v. Fed. Bureau of Prisons,*
    552 U.S. 214 (2008)......................................................................... 24

*Carr v. Wilkie,*
    961 F.3d 1168 (Fed. Cir. 2020) ................................................... 19, 39

*Conn. Nat'l Bank v. Germain,*
    503 U.S. 249 (1992)..................................................................... 22, 31

*Frederick v. Shinseki,*
    684 F.3d 1263 (Fed. Cir. 2012) ..................................................... 3, 19

*Henson v. Santander Consumer USA Inc.,*
    137 S. Ct. 1718 (2017)................................................................. 24, 25

*Hogg v. United States,*
    428 F.2d 274 (6th Cir. 1970) ............................................................. 5

*Iselin v. United States,*
    270 U.S. 245 (1926)..................................................................... 23, 35

*Lamie v. United States Tr.,*
    540 U.S. 526 (2004)................................................... 23, 24, 30, 31

*Mobil Oil Corp. v. Higginbotham,*
    436 U.S. 618 (1978)..................................................................... 24, 35

*Office of Pers. Mgmt. v. Richmond,*
    496 U.S. 414 (1990)..................................................................... 30, 31

*Park 'n Fly v. Dollar Park & Fly,*
    469 U.S. 189 (1985)........................................................................... 16

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
    566 U.S. 639 (2012)........................................................................... 31

*Schism v. United States,*
    316 F.3d 1259 (Fed. Cir. 2002) ....................................................... 25

*Schweiker v. Hansen,*
    450 U.S. 785 (1981)........................................................................... 25

*Sturges v. Crowninshield*,
    17 U.S. (4 Wheat.) 122 (1819) ........................................................ 22

*Sucic v. Wilkie*,
    921 F.3d 1095 (Fed. Cir. 2019) ..................................................... 19

*United States v. Hill*,
    19 F.3d 984 (5th Cir. 1994) ............................................................ 5

*Williams v. Principi*,
    275 F.3d 1361 (Fed. Cir. 2002) ................................................... 3, 4

## STATUTES

38 U.S.C. § 3011 ............................................................... 6, 7, 26

38 U.S.C. § 3013 ............................................................ 7, 26, 27

38 U.S.C. § 3311 .................................................................. 7, 26

38 U.S.C. § 3312 ............................................................ 7, 26, 27

38 U.S.C. § 3322 .................................................. 10, 11, 32-38

38 U.S.C. § 3327 ............................................................... *passim*

38 U.S.C. § 3695 ........................................ 12, 18, 19, 31, 32, 39-41

38 U.S.C. § 7292 ...............................................................

## OTHER AUTHORITIES

110 P.L. 252, 122 Stat. 2323 ......................................... 8, 25, 37

111 P.L. 377, 124 Stat. 4106 ............................................... 25

114 P.L. 315, 130 Stat. 1536 ............................................. 8, 25

S. Rpt. 111-346 .................................................................. 36

DOJ Directive 1-15 ............................................................. 4

## STATEMENT OF RELATED CASES

No appeal from this civil action was previously before this or any other appellate court, other than the Court of Appeals for Veterans Claims from which the decision is being appealed.

Per the Practice Note to Rule 47.5, counsel is not aware of any case that is currently pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUES

The Court granted *en banc* review and requested that the parties submit new briefs addressing the following two questions:

1.    For a veteran who qualifies for the Montgomery GI Bill and the Post-9/11 GI Bill under a separate period of qualifying service, what is the veteran's statutory entitlement to education benefits?

2.    What is the relation between the 48-month entitlement in 38 U.S.C. § 3695(a), and the 36-month entitlement in [38 U.S.C.] § 3327(d)(2), as applied to veterans such as Mr. Rudisill with two or more periods of qualifying military service?

As we explain below, the key feature of Mr. Rudisill's record that controls the number of months of Post-9/11 benefits he is entitled to lies not in his multiple periods of qualifying service, but rather in his prior use of his Montgomery benefits.  That is, Congress did not grant all veterans with multiple periods of qualifying service the same statutory entitlement to Post-9/11 benefits, and the operative universe of veterans "such as" Mr. Rudisill for purposes of this case is other veterans who have used some, but not all of their Montgomery benefits when electing to instead use their Post-9/11 benefits, regardless of the number of periods of qualifying service that led to that situation.

Therefore, the crux of the issue in dispute is whether the Veterans Court erred when it concluded that § 3327(d)(2) differentiates between veterans based on the number of periods of qualifying service and does not apply to veterans with two or more such periods.

## JURISDICTIONAL STATEMENT

Jurisdiction lies in this Court to review a decision of the Veterans Court "with respect to the validity of a decision of the Court on … any statute or regulation … or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision." 38 U.S.C. § 7292(a). This appeal presents just such a question: the proper interpretation of 38 U.S.C. § 3327(d)(2), which the Veterans Court's erroneously held did not apply to veterans with multiple periods of qualifying service.

The Veterans Court's subsequent remand to the Board of Veterans' Appeals does not divest this Court of jurisdiction, because "non-final" remand orders from the Veterans Court are nevertheless reviewable where, as here, "the Veterans Court has rendered a clear and final decision on a legal issue that will directly govern the remand proceedings, and there is a substantial risk that the issue will not survive a remand." *Frederick v. Shinseki*, 684 F.3d 1263, 1265 (Fed. Cir. 2012) (citing

3

*Williams v. Principi*, 275 F.3d 1361, 1364 (Fed. Cir. 2002)).[1]

Finally, the Secretary timely appealed the Veterans Court's decision. § 7292(a); Appx55. Mr. Rudisill has previously argued that the Court lacks jurisdiction because the Solicitor General ultimately authorized this appeal after the timely notice of appeal was filed. The panel unanimously—and correctly—rejected that argument, and we neither sought rehearing on that question nor did the Court request more briefing related thereto. *See* Maj. Op. 11-13; Dis. Op. 1; Pet. 2 n.1; Order 2-3. To the extent that Mr. Rudisill nevertheless pursues this jurisdictional argument before the *en banc* Court, *see* Pet. Resp. 9 n.2, the Court should continue to reject it.

The Secretary's, undisputedly timely, notice of appeal was filed under the plenary—and explicitly delegated—authority of the Attorney General to conduct litigation on behalf of the United States. *See* DOJ Directive 1-15, § 6, 28 C.F.R. Pt. 0, Subpt. Y, App (requiring the filing of a protective notice of appeal where the

---

[1] For the sake of transparency we further note that Mr. Rudisill is currently using the disputed benefits at issue, but that also has no effect on this Court's jurisdiction. After the case was argued to the panel but before the panel decision issued, he moved the Veterans Court for an injunction ordering VA to pay him the disputed benefits while this appeal was pending, which the Veterans Court granted. 34 Vet. App. 176 (2021). But even setting aside the Veterans Court's questionable authority to order such relief in the face of this Court's controlling jurisdiction, there can be no doubt that it does not moot the case. The disputed legal interpretation remains a live controversy, and both Mr. Rudisill in seeking interim relief, and the Veterans Court in granting it, explicitly recognized that he would be obligated to return that money if the underlying statutory interpretation is overturned. *Id*. at 186.

Solicitor General has not yet made a decision).  Equally undisputedly, this appeal, both before the panel and the *en banc* Court, has been duly authorized by the Solicitor General.  That is enough.  *See Hogg v. United States*, 428 F.2d 274, 278 (6th Cir. 1970); *United States v. Hill*, 19 F.3d 984, 991 n.6 (5th Cir. 1994).

<u>STATEMENT OF THE CASE</u>

This case concerns the number of months of Post-9/11 education benefits Congress granted to a particular subset of veterans, namely those who had used some, but not all, of their Montgomery benefits when electing to begin using their Post-9/11 benefits instead.  Critically, this case is *not* about whether Mr. Rudisill has dual entitlement to both Montgomery and Post-9/11 benefits; the parties do not dispute that Mr. Rudisill having previously used Montgomery benefits can now draw from the Post-9/11 program.  Nor does this case concern the scope of Mr. Rudisill's entitlement to Montgomery benefits; there is no dispute that Mr. Rudisill was free to—but did not want to—continue using his Montgomery benefits, up to 36 months total.  That is, although the universe of *veterans* affected by the resolution of this appeal is defined by their use of Montgomery benefits, the universe of *benefits* in dispute is strictly Post-9/11 benefits and we will consequently focus on provisions in the Post-9/11 statute in particular.

The sole dispute is over whether, in limiting the number of months of Post-9/11 benefits available specifically to the universe of veterans who have dual

entitlement to Montgomery and Post-9/11 benefits and choose not to exhaust the former when electing to use the latter, Congress further subdivided that group between veterans with a single period of service and veterans with multiple separately qualifying periods of service. As we explain below, Congress did not.

I.    The Statutory Scheme

The Post-9/11 program was established by Congress through the Post-9/11 Veterans Educational Assistance Act of 2008 and is codified in Chapter 33 of Title 38. The program became effective August 1, 2009, but provided benefits for active duty service going back to and starting from September 11, 2001.

The Montgomery program was the prior education benefits program. Its active-duty based provisions, codified in Chapter 30 of Title 38, granted benefits for active duty service beginning June 30, 1985. In enacting the new Post-9/11 program, Congress chose not to initially repeal the existing Montgomery program, and consequently instead established rules on how the two sets of benefits should co-exist.[2]

---

[2] Last year Congress added a sunset date to the Montgomery program: veterans who enter active duty service after September 30, 2030 will no longer be eligible for Montgomery benefits. 38 U.S.C. § 3011. This newly-added sunset provision means that eventually the coordination at issue in this appeal will become unnecessary, as dual entitlement will cease to exist, but has no effect on the scope of Mr. Rudisill's entitlement or the proper interpretation of the coordination provisions in the meantime.

As a general matter, both programs establish a minimum threshold of active duty service required to obtain benefits—typically two to three years of continuous service under Montgomery and at least 90 days of aggregate service under Post-9/11—and a maximum threshold of benefits that can be obtained under one program, up to 36 months in both.  38 U.S.C. §§ 3011(a); 3311(b); 3013(a); 3312(a).  That is, veterans must serve a certain minimum period of time to be eligible for any benefits, but after a certain point more service does not beget more benefits under either program.

The two programs also have overlapping periods of eligibility, covering active duty service after September 11, 2001.  For the first two years of the Post-9/11 program, that is between August 1, 2009 (when the Post-9/11 program came into effect) and August 1, 2011 (when 38 U.S.C. § 3322(h) became effective), veterans with just a single period of qualifying service after September 11, 2001 could get both Montgomery and then Post-9/11 benefits.  In 2011, Congress eliminated that option, explicitly barring dual eligibility based on a single period of service.  Thus, veterans with a single period of service after August 1, 2011 can obtain either Montgomery or Post-9/11 benefits, but not both; veterans with two or more periods of qualifying service can continue to draw first from Montgomery and then, crediting a different period of service, from Post-9/11, subject, of course, to the other coordination limitations Congress imposed.

A.     38 U.S.C. § 3327

Section 3327 specifically addresses how veterans with dual entitlement can switch from using Montgomery benefits to Post-9/11 benefits and the consequences of that election.  We note that Congress enacted the key provisions of § 3327 at issue in this case twice:  they were first included in the original Post-9/11 bill under § 5003(c) entitled "Applicability to Individuals Under Montgomery GI Bill Program," and then later codified as part of § 3327 in 2016. *See* 110 P.L. 252, 122 Stat. 2323, 2375-78; 114 P.L. 315, 130 Stat. 1536, 1555-58. Although Mr. Rudisill first applied for Post-9/11 benefits in 2015, *i.e.* before § 3327 was codified, the codification did not change the terms of the disputed provisions, and so the parties and the courts have referred to the now-codified citations throughout this litigation, and we will continue to do so.

Section 3327 begins by defining the universe of veterans to whom it applies. As relevant to this case, § 3327 states:

> An individual may elect to receive educational assistance under [Post-9/11] if such individual ... is entitled to basic educational assistance under [Montgomery] and has used, but retains unused, entitlement under that chapter ... and ... meets the requirements for entitlement to educational assistance under [Post-9/11].

38 U.S.C. § 3327(a)(1)(A) & (2).  That is, it identifies a subset of veterans who have dual entitlement to both Montgomery and Post-9/11 benefits and have used, but not exhausted the former, and gives them the option to switch to the latter.

8

Subsections (b) through (g) set forth various benefits and limitations that flow from the decision to elect to use Post-9/11 benefits in the face of such dual entitlement. Thus, for example, under subsection (f), veterans can recoup their pro-rata share of contributions to the unused portion of their Montgomery benefits as an increase to the monetary amount of their monthly Post-9/11 stipend. And under subsection (g), veterans can transfer their recruitment incentive bonuses, if promised originally under the terms of the Montgomery program, to their Post-9/11 benefits, again increasing the monetary amount of the stipend paid.

As most relevant to this case, subsection (d) specifies that "[s]ubject to paragraph (2) … an individual making an election under subsection (a) shall be entitled to educational assistance under this chapter in accordance with the provisions of this chapter"—*i.e.* Post-9/11 benefits—"instead of basic educational assistance under" Montgomery. § 3327(d)(1). And paragraph (2) goes on to specify a "[l]imitation on entitlement for certain individuals":

> In the case of an individual making an election under subsection (a) who is described by paragraph (1)(A) of that subsection, the number of months of entitlement of the individual to educational assistance under this chapter shall be the number of months equal to—
>
> (A) the number of months of unused entitlement of the individual under [Montgomery.]

§ 3327(d)(2)(A). That is, the "number of months of [Post-9/11] entitlement" of a veteran who "has used, but retains unused [Montgomery] entitlement" "shall be …

9

equal to the number of months of unused [Montgomery] entitlement."

§ 3327(d)(2)(A) & (a)(1)(A).[3]

Finally, subsection (i) makes the election to Post-9/11 benefits irrevocable and subsection (h) allows the Secretary to step in and make an alternate election on a veteran's behalf if it is in the best interests of the individual.

B.    38 U.S.C. § 3322

Section 3322 is another administrative provision in the Post-9/11 bill, which addresses the coordination of Post-9/11 benefits with other sources of educational benefits more generally.  However, unlike § 3327, a permissive provision that addresses the consequences of an election that veterans "may" make, § 3322, entitled "[b]ar to duplication of educational assistance benefits," is largely a restrictive provision, designating what veterans cannot do.  Thus, subsections (a), (e), and (g) prohibit "concurrent" receipt of benefits from more than one of the enumerated sources, subsection (f) prohibits the receipt of certain non-education benefit payments for some children and spouses receiving Post-9/11 benefits, and subsections (b), (c), and (h) prohibit double-crediting a single period of service to Post-9/11 benefits and other enumerated programs.

---

[3]  Subsection 3327(d)(2)(B) adds in any unused Montgomery entitlement that the veteran previously transferred and now revokes.  This provision undisputedly does not apply in this case as Mr. Rudisill has not transferred any of his benefits.  It also has no effect on the issue of to whom § 3327(d)(2) applies.

In particular, § 3322(h) "bar[s] [] duplication of eligibility based on a single event or period of service" as between Montgomery and Post-9/11 benefits. Instead, after August 1, 2011—when § 3322(h) became effective—"[a]n individual with qualifying service in the Armed Forces that establishes eligibility on the part of such individual for educational assistance under [Post-9/11 and Montgomery] shall elect … under which authority such service is to be credited."  That is, when a veteran applies to use, for example, Montgomery benefits, he or she must specify the period of service that establishes his or her eligibility for those benefits and the veteran cannot use the same period of service after August 1, 2011 to claim eligibility for Post-9/11 benefits.  Once it became effective, subsection (h), therefore, required dual entitlement to be supported by two or more periods of qualifying service.

Subsection (d) is the only provision in § 3322 that does not impose a prohibition or a bar.  Instead, § 3322(d) directs that "[i]n the case of an individual entitled to educational assistance under" the enumerated programs, including specifically Montgomery, "coordination of entitlement to educational assistance under [Post-9/11], on the one hand, and such chapters or provisions [*e.g.*, Montgomery], on the other, shall be governed by the provisions of" what is now § 3327.  In other words, § 3322(d) reiterates that where dual entitlement is allowed,

11

the coordination of that dual entitlement is subject to the rules and limitations of § 3327.

C.    38 U.S.C. § 3695

In addition to the administrative provisions contained within the Post-9/11 chapter itself, there are also administrative provisions that apply across all programs of educational benefits generally.  These generally-applicable provisions are codified in Chapter 36 of Title 38, "Administration Of Educational Benefits." One such provision is § 3695(a) which imposes a limit of 48 months on "[t]he aggregate period for which any person may receive assistance under two or more" of the dozen-plus laws enumerated therein.  Benefits received under both Montgomery and Post-9/11 chapters count toward the 48-month limit imposed by § 3695(a), but they are not the only programs that do.

And, critically, § 3695 does not itself grant any benefits, nor does it guarantee any particular number of months of benefits under any of the programs it identifies; those entitlements are established in the enumerated provisions of law themselves.  Section 3695 merely functions as an overall ceiling.  Thus, for example, if a veteran uses 48 months of other education benefits before using any Montgomery or Post-9/11 benefits, then he or she would no longer be able to get any Montgomery or Post-9/11 benefits at all (assuming one of the exceptions in subsections (b) or (c) did not apply).  Conversely, if the veteran's entitlement under

the actual benefit programs added up to 48 months or less, then § 3695 would

simply not come into play for that veteran.

## II.     Mr. Rudisill's Service And Use Of Education Benefits

Between January 2000 and August 2011, Mr. Rudisill had three intermittent

periods of service in the Army and the Army National Guard.  Appx57; Appx4-5.

After his first two periods of service, he applied for and used 25 months and 14

days of Montgomery benefits to pursue a college degree.  *Id*.  After completing his

degree and subsequently serving as a commissioned officer, Mr. Rudisill decided

to pursue graduate education and elected to switch from using Montgomery

benefits to using Post-9/11 benefits.  *Id*.

There is no dispute that (a) Mr. Rudisill has dual entitlement to both

Montgomery and Post-9/11 benefits, or (b) that at the time of his election to switch

to Post-9/11 benefits, he had 10 months and 16 days of unused Montgomery

entitlement remaining.  Appx57.  Thus, when Mr. Rudisill submitted his

application, VA determined that he could use 10 months and 16 days of Post-9/11

benefits, as dictated by the limit imposed in § 3327(d)(2)(A).  Appx58-59;

Appx512-513.

## III.     The Veterans Court Decision

Mr. Rudisill appealed the VA's determination to the Veterans Court, arguing

that the limitation imposed by § 3327(d)(2) should not apply to him because his

13

dual entitlement to Montgomery and Post-9/11 benefits was supported by separate periods of service. In a split decision, the Veterans Court agreed. Appx1-41. Notably, the Veterans Court majority did not reach that decision by analyzing the language in § 3327 itself; indeed it never even mentioned § 3327(d)(2) at all. *See* Appx12-13 ("[U]ltimately we never get to [] section [3327]."). Rather, the Veterans Court purported to resolve an ambiguity it perceived in § 3322(a)— regarding the timing of the prohibition on receiving payments from more than one program "concurrently"—to conclude that it somehow "demonstrates that section 3327 does not apply in this case." Appx13.

Having thus elided § 3327 entirely, the Veterans Court majority held that the only consequence of Mr. Rudisill's prior use of Montgomery benefits is to count against the aggregate 48-month ceiling in § 3695, estimating that he would, therefore be "entitled to a total of 22 months and 16 days of additional benefits that he could take either (1) all as Post-9/11 chapter 33 benefits or (2) as 10 months and 16 days of [Montgomery] chapter 30 benefits and 12 months of Post-9/11 chapter 33 benefits." Appx30.

By contrast, the Veterans Court dissent reasoned that "[t]o answer whether [Mr. Rudisill's] voluntary election under section 3322(d)/3327 is valid and limits him to the remainder of the unused period of his [Montgomery] benefits, we must look to the plain language of" those sections themselves. Appx34. And upon

considering the actual language of the disputed provisions, the dissent concluded that Mr. Rudisill "meets the statutes' straightforward requirements and they are not ambiguous." Appx30; Appx37 ("[T]here is no reason to suppose that Congress intended" the election provisions of § 3327 "to apply only to individuals with multiple entitlements based on a single period of service but not to those with multiple entitlements based on separate periods of service, but failed to say so.").

IV.    The Panel Decision And *En Banc* Order

The Secretary appealed to this Court. In another split decision, the panel affirmed the Veterans Court's judgment, but without adopting any of the Veterans Court's analysis. Maj. Op. 13-15. The panel majority made no mention of § 3322(a) or the alleged ambiguity leveraged by the Veterans Court majority therein, but similarly held that § 3695(a) was the only limit on the coordination of Post-9/11 and Montgomery benefits for veterans with multiple periods of service. Maj. Op. 15. Like the Veterans Court majority, the panel majority exempted Mr. Rudisill from the application of § 3327(d)(2) without analyzing that provision or grounding the exclusion of veterans with multiple periods of service from its reach in any language therein. Maj. Op. 15.

And once again, by contrast, the panel dissent, like the Veterans Court dissent, assessed whether the limit in § 3327(d)(2) applied to Mr. Rudisill by analyzing whether he meets the express terms of that statute. Dis. Op. 2-3. The

dissent concluded that Mr. Rudisill does meet its terms, and that "nothing in the language or history of the relevant statutes remotely justifies" not applying § 3327(d)(2) to veterans with multiple periods of service.  Dis. Op. 3.

On February 3, 2022, the Court granted our petition for rehearing *en banc* and vacated the panel opinion.

## SUMMARY OF THE ARGUMENT

Although the question at the heart of this appeal is important—both to VA and the veterans community—it is also quite simple:  to whom does § 3327(d)(2) apply?  That is the central question because there is no dispute over what § 3327(d)(2) *does* when it applies, it expressly and in no uncertain terms limits the number of months of Post-9/11 benefits to the number of months of unused Montgomery benefits.  It is, therefore, no surprise, that for Mr. Rudisill in seeking to obtain more than that amount of benefits, and the prior court majorities in awarding him those additional benefits, the only option was to sidestep § 3327 entirely.  *See* Appx12-13 (refusing to "get to" § 3327 at all); Maj. Op. 15 (no analysis of § 3327).  But such an "ostrich" approach to statutory construction is plainly untenable.  "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 194 (1985).

And, in fact, Congress answered the key disputed question directly—it identified to whom § 3327(d)(2) applies in that very provision itself—and there is no dispute that Mr. Rudisill, notwithstanding his multiple periods of service, meets the express statutory definition. Section 3327(d)(2) imposes its "limitation on entitlement" on "an individual making an election under subsection (a) who is described by paragraph (1)(A) of that subsection." In turn, § 3327(a) permits "an individual" to "elect to receive [Post-9/11 benefits] if such individual" "meets the requirements for entitlement to [Post-9/11 benefits]" and, for the subset described in paragraph (1)(A) specifically, "is entitled to [Montgomery benefits] and has used, but retains unused, entitlement under that chapter."

That is, Congress imposed two requirements for triggering the limit in § 3327(d)(2), both of which Mr. Rudisill undisputedly meets: (1) the veteran must have entitlement to both Montgomery and Post-9/11 benefits and (2) the veteran must have used some, but not all of the Montgomery entitlement when electing to use the Post-9/11 entitlement. But these are the *only* two requirements Congress imposed; neither § 3327(d)(2) nor the cross-referenced § 3327(a)(1)(A) makes any mention of the number of periods of service that the veteran has served or otherwise excludes veterans with multiple separately qualifying periods of service from the universe of "certain individuals" whose entitlement is being "limit[ed]."

17

Thus, the answer to the Court's first question—what is the statutory entitlement to education benefits of veterans who qualify for the Montgomery and Post-9/11 programs under separate periods of service—is it depends. Critically, one of the things it depends on is how much, if any, unused Montgomery entitlement the veteran has at the time he or she elects to switch to Post-9/11 benefits. But the application of the formula in § 3327(d)(2) for calculating the Post-9/11 entitlement does *not* depend on whether the veteran had a single or multiple periods of service. Section 3327(d)(2) limits the statutory entitlement to Post-9/11 benefits for *all* veterans who have dual Montgomery/Post-9/11 entitlement and have used some, but not all of their Montgomery benefits when electing to use their Post-9/11 benefits.

And as to the Court's second question, the relationship between the limit imposed by § 3695(a) and the limit imposed by § 3327(d)(2) is the same as the relationship between § 3695(a) and any of the other dozen-plus programs of benefits identified therein. Each provision of law that grants education benefits specifies the finite defined amount of benefits awarded, *e.g.*, § 3327(d)(2), and if the sum of those finite defined amounts exceeds 48 months, then § 3695(a) prevents a veteran from actually being awarded more than the first 48 months

used;[4] but if the sum of the finite defined amounts is 48 months or less, there is nothing for § 3695(a) to do.

The limits in § 3327(d)(2) and § 3695(a) are, therefore, cumulative: § 3695 controls the aggregate amount of all education benefits that a veteran can receive, and, for veterans with unused Montgomery entitlement, § 3327(d)(2) controls what subset of that aggregate amount can come from Post-9/11 benefits specifically. But what § 3695(a) cannot do (and does not do) is expand the number of months of benefits available to veterans by overriding the limit in § 3327(d)(2); nor can (or does) it change the scope of veterans subject to that limit.

## ARGUMENT

### I.    Standard Of Review

This Court "review[s] the Veterans Court's statutory interpretation *de novo*." *Sucic v. Wilkie*, 921 F.3d 1095, 1098 (Fed. Cir. 2019); *see also Frederick*, 684 F.3d at 1265 ("We review legal determinations by the Veterans Court independently without deference.").

---

[4] As recently explained by this Court, this 48-month entitlement may, as a practical matter, be further subject to an end-of-term extension. *Carr v. Wilkie*, 961 F.3d 1168 (Fed. Cir. 2020).  But for purposes of this case, that possibility has no effect on the relationship between § 3327(d)(2) and § 3695(a).

II.   **Section 3327(d)(2) Limits The Statutory Entitlement To Post-9/11 Benefits For All Veterans Who Have Dual Entitlement And Used Some, But Not All Of Their Montgomery Benefits**

   A.   **The Application Of § 3327(d)(2) To All Veterans Who Have Used Some, But Not All Of Their Montgomery Benefits Is Dictated By Its Express And Unambiguous Terms**

      1.   **Mr. Rudisill Meets The Express Definition Of Veterans To Whom § 3327(d)(2) Applies**

Section 3327(d)(2) on its face sets forth a "[l]imitation on entitlement for certain individuals" and there is no dispute in this case over what that limitation is. The parties agree that for the "certain individuals" covered by § 3327(d)(2), Congress separately set their entitlement to Post-9/11 benefits with a formula based on each individual's actual prior usage of his or her Montgomery benefits. And there is also no dispute that § 3327(d)(2), when it applies, overrides the default 36-month entitlement otherwise provided for in § 3312(a) for those individuals. That is, there is no dispute that for those veterans subject to § 3327(d)(2), their statutory entitlement to Post-9/11 benefits "shall be the number of months equal to the number of months of unused entitlement of the individual under [Montgomery,]" which for Mr. Rudisill, was undisputedly 10 months and 16 days, precisely as VA originally allowed. Appx57-59.

Thus, the crux of the dispute is over whether Mr. Rudisill is in the class of "certain individuals" whose entitlement to Post-9/11 benefits is limited by § 3327(d)(2). He is. And we know that he is because Congress explicitly and

unambiguously defined to whom § 3327(d)(2) applies, that definition does not exclude veterans with multiple periods of service, and there is no dispute that Mr. Rudisill meets the terms actually expressed in the statute.

Section 3327(d)(2) states that it applies to "an individual making an election under subsection (a) who is described by paragraph (1)(A) of that subsection." Subsection (a), in turn, permits "[a]n individual [to] elect to receive educational assistance under this chapter," *i.e.* Post-9/11 benefits, "if such individual" "meets the requirements for entitlement to educational assistance under this chapter" and, for those individuals described specifically by paragraph (1)(A), "is entitled to basic educational assistance under [Montgomery] and has used, but retains unused, entitlement under that chapter."

In other words, the universe of "certain individuals" covered by § 3327(d)(2) are those veterans who have dual entitlement to both Montgomery and Post-9/11 benefits, have used some, but not all of their Montgomery benefits, and choose to switch and begin using their Post-9/11 benefits instead.

There is no doubt that Mr. Rudisill meets each of those parameters. Dis. Op. 2-3. First, there is certainly no dispute that Mr. Rudisill "me[t] the requirements for entitlement to educational assistance under" Post-9/11 and so was eligible to make the election under § 3327(a)—if Mr. Rudisill had *no* Post-9/11 entitlement, this case would not exist in the first place. Second, it is beyond

dispute, and indeed, conceded by Mr. Rudisill at oral argument before this Court, that he has "used, but retains unused" Montgomery entitlement as specified in § 3327(a)(1)(A).  Appx57; Arg. Rec. at 16:40-17:05.  And third, Mr. Rudisill, in fact, "elect[ed] to receive educational assistance under" Post-9/11—again, if he had not, and chose to continue using the remainder of his Montgomery benefits instead (a choice he indisputably had) this case would also not exist.

Seemingly, there should have been no dispute over Mr. Rudisill's Post-9/11 entitlement (much less years of litigation):  he is plainly covered by § 3327(d)(2) and so consequently has 10 months and 16 days of Post-9/11 benefits available just as the regional office concluded upon receiving his application.  *See* Appx58; Appx512-513.  As the Supreme Court has long ago held, "[i]t would be dangerous in the extreme to infer … that a case for which the words of an instrument expressly provide, shall be exempted from its operation." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (alteration in original, quoting *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 202 (1819)).  Yet that "dangerous" inference is exactly what the Veterans Court made.  Instead of applying § 3327(d)(2) as written, or indeed, analyzing what Congress wrote there at all, the Veterans Court added its own requirement and held that § 3327 does not apply to veterans with multiple periods of service.  That holding was in error and this Court should reverse it.

2.     Section 3327 Does Not Differentiate Between Veterans Based On Their Number Of Periods Of Service

It is beyond dispute that § 3327 does not say that veterans with multiple periods of service are excluded.  Indeed, in all the ink spilled in this case to date, no one—not the Veterans Court, not the panel majority, not even Mr. Rudisill himself—has *ever* identified *any* language in § 3327 that they claimed even *suggested* that veterans with multiple periods of service are excluded from its reach.  The *en banc* Court too would search in vain.  *See* Dis. Op. 3.

And § 3327's pointed silence regarding periods of service is not ambiguous—the fact that Congress provided an express definition setting out the criteria that would trigger § 3327(d)(2) and chose *not* to include the number of periods of service in that definition demonstrates that Congress was not differentiating between veterans on that basis.  Section 3327(d)(2) unambiguously directs that the Post-9/11 entitlement for *all* veterans who (can and do) switch from Montgomery benefits without exhausting them "*shall be* … the number of months of unused [Montgomery] entitlement."  (emphasis added).

"What [Mr. Rudisill] asks"—and the Veterans Court in substance did—"is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted … may be included within its scope." *Iselin v. United States*, 270 U.S. 245, 251 (1926).  But "[t]o supply omissions transcends the judicial function." *Id*.; *see Lamie v. United States Tr.*, 540 U.S. 526, 538 (2004)

23

("Petitioner's argument stumbles on still harder ground in the face of another canon of interpretation.  His interpretation of the Act … would have us read an absent word into the statute.").  "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978).

Here, Congress has affirmatively and specifically defined both the universe of veterans covered and the number of months of Post-9/11 benefits available to those veterans in § 3327(d)(2).  And there can be no question that, in doing so, Congress was free to make either of the now-competing choices:  to include or exclude veterans with multiple periods of service from this express "limitation on entitlement."  That is, to be sure, Congress *could* have written the statute the way Mr. Rudisill envisions, supported perhaps by the kind of policy considerations he invokes, but that choice was—and remains—exclusively Congress's.  Courts "are not at liberty to rewrite the statute to reflect a meaning [they] deem more desirable.  Instead, [they] must give effect to the text Congress enacted." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008); *see* Dis. Op. 3; *Lamie*, 540 U.S. at 538 ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding.  It results from deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill.") (citation and quotation omitted); *Henson v.*

24

*Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) ("Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage …").

And if Congress wanted to limit the universe of "certain individuals" covered by § 3327(d)(2) to just those with a single period of service, it could have easily said so; certainly, it had no shortage of language or opportunity at its disposal. *See* 110 P.L. 252, 122 Stat. at 2377 (initial enactment of this language in 2008); 111 P.L. 377, 124 Stat. 4106, 4121 (revisions of Chapter 33 to restrict dual Montgomery/Post-9/11 entitlement based on a single period of service in 2011); 114 P.L. 315, 130 Stat. at 1556 (re-enactment and codification of § 3327 in 2016). It did not.[5] "Congress—*and only Congress*—can authorize the benefits that a retired federal employee, whether civilian or military, is entitled to receive," and it is "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Schism v. United States*, 316 F.3d 1259, 1268 (Fed. Cir. 2002) (en banc) (emphasis added); *Schweiker v. Hansen*, 450 U.S. 785, 788 (1981) (citation omitted). The Veterans Court erred when it ignored the express statutory text and substituted its own judgment on the wisdom of Congress's policy choice.

---

[5] By contrast, if *this* statute does not reflect the congressional choice to *not* differentiate between veterans based on their number of periods of service, it is difficult to imagine what statute *would*.

### 3.    Excluding Veterans With Multiple Periods Of Service From § 3327 Harms Veterans And Results In Disparate Treatment

Although Mr. Rudisill's (and the Veterans Court's) policy arguments cannot overcome Congress's contrary directive regardless, they also misapprehend the balance Congress struck in providing education benefits generally and in § 3327 specifically.  The crux of their position is that more service should beget more benefits, and consequently, Congress could not have intended to limit veterans with multiple periods of service to 36 months of education benefits.

But there is no dispute that veterans with multiple periods of service *can* get 48 months of benefits if they exhaust their Montgomery benefits first.  Although the consequences of the election in § 3327 are mandatory, the election itself plainly is not.  *Compare* § 3327(d)(2) ("[T]he number of months of entitlement of the individual to educational assistance under this chapter *shall* be …") with § 3327(a) ("An individual *may* elect to receive educational assistance under this chapter …") (emphasis added to both).

Nor can there be any dispute that there is no simple linear relationship between additional service and additional benefits under either Montgomery or Post-9/11 programs.  Under either program three years of service maxes out the available benefits, and additional service beyond three years does not further earn more benefits.  §§ 3011(a), 3311(b); *see* Pet. Resp. 11.  And both programs presume a default entitlement of 36 months of educational benefits in exchange for

active duty service.  §§ 3013(e), 3312(a).

Moreover, excluding veterans with multiple periods of service from being covered by § 3327 disrupts the balance Congress struck by depriving these veterans of other benefits triggered by the same election and unfairly privileging some veterans over others.

For example, the Veterans Court's holding would prevent veterans with multiple periods of service from taking advantage of §§ 3327(f) and (g), which are both triggered by the same election as the limit in § 3327(d).  *Compare* § 3327(d)(2) ("In the case of an individual making an election under subsection (a) who is described by paragraph (1)(A) of that subsection") with § 3327(f) ("In the case of an individual making an election under subsection (a) who is described by subparagraph (A), (C), or (E) of paragraph (1) of that subsection …") and § 3327(g) ("An individual making an election under subsection (a)(1) …"). Subsections (f) and (g) increase the monetary amount of the Post-9/11 monthly stipend paid.  Under subsection (f), a veteran switching to Post-9/11 benefits recoups his or her pro-rata contribution to the unused portion of Montgomery benefits.  And under subsection (g), a veteran switching to Post-9/11 can retain his or her recruitment incentive for in-demand critical skills.  There is no evidence that Congress intended veterans with multiple periods of service to be obligated to forgo these premiums when using their Post-9/11 benefits.

Mr. Rudisill does not dispute that avoiding the limits of § 3327(d)(2) also deprives veterans with multiple periods of service of these monetary increases to their Post-9/11 benefits.  Instead he suggests that the amount of money involved is not significant enough for this loss to matter.  *See* Pet. Resp. 16 ("keeping and using even one month of Montgomery benefits is more valuable;" "veterans with separately qualifying service can choose which entitlement (Montgomery or Post-9/11) is the most beneficial to them considering applicable critical skills incentives.").  That is, in his view, veterans would rather avoid the limit of § 3327(d) than take advantage of §§ 3327(f) or (g).

Even if that were true, that is not how congressional directives work.  But, moreover, that view ignores that not all veterans have the same priorities or share *Mr. Rudisill's* desire to pursue graduate education.  Education benefits are not a free-standing entitlement; in order to receive any payment the veteran must be enrolled in a qualified program.  For veterans that do not wish to pursue more than four years of higher education, *any* increase in the monthly stipend is more useful than 12 theoretic months that will never be paid.

At bottom, § 3327 gives veterans a choice.  Those veterans who want to maximize the number of *months* of education benefits, can do so; they simply have to exhaust their Montgomery benefits first.  But it also recognizes that some veterans might not need more than 36 months and would prefer to maximize their

monthly *stipend* instead, and allows those veterans to opt for more money for less time.[6]  Excluding veterans with multiple periods of service from § 3327 entirely robs them of that choice.  There is no evidence that for veterans with multiple periods of service, Congress intended to privilege those who wish to pursue graduate or other education beyond a 4-year degree over those who do not.

Further, the Veterans Court's results-over-text-oriented approach to excluding veterans with multiple periods of service from § 3327 also ignores that veterans and the VA have to make service and education decisions in real time, before either necessarily knows what any veteran's full service career might look like.  As noted by the Veterans Court's dissent, "[u]nder the majority's interpretation, seemingly mutually exclusive classes of individuals … are not [in fact] distinct classes because those with multiple periods of service necessarily have single periods of service as well."  Appx36.

That is, *Mr. Rudisill* applied for Post-9/11 benefits after completing *all* of his periods of service and the Veterans Court made much of that history, but what if another veteran elects to use Post-9/11 benefits after his first period of service and

---

[6] Notably these monetary increases can only work if the veteran irrevocably forgoes Montgomery benefits, as § 3327(i) requires.  Otherwise, it would be impossible to calculate what portion of the contribution to return and risk double-paying the retention bonuses.  Thus, VA has to know definitively how many months of Montgomery benefits a veteran will ever use in order to know how much money to pay him or her under Post-9/11, *i.e.* the Montgomery benefits either have to be exhausted or irrevocably forgone prior to switching to Post-9/11.

then goes back to serve again?  Such a hypothetical veteran will ultimately have

multiple periods of service, but at the time that VA has to make the benefits award

decision, we have no way of knowing that.  Thus, at the time that this hypothetical

veteran applies for Post-9/11 benefits he will, even under the Veterans Court's

interpretation, be subject to § 3327, having only served a single period of service.

And consequently, even if he subsequently serves for just as long as Mr. Rudisill,

this hypothetical veteran's entitlement will "irrevocabl[y]," § 3327(i), be subject to

different rules than Mr. Rudisill's.  Once again, there is no evidence that Congress

intended to introduce such disparities, not to mention administrative confusion.

At bottom, although we may not be able to predict all of the downstream

consequences of the Veterans Court's atextual revision of the scope of § 3327 now,

of one thing there can be no doubt:  Mr. Rudisill is but one example.  And even if

the Veterans Court could be justified in sympathizing with the application of

§ 3327 to *him*, such sympathy cannot change the proper interpretation of the

*statute*.  As the Supreme Court explained, "[o]ur unwillingness to soften the import

of Congress' chosen words even if we believe the words lead to a harsh outcome is

longstanding" and "if individual hardships are to be remedied by payment of

Government funds, it must be at the instance of Congress."  *Lamie*, 540 U.S. at

538; *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 434 (1990).[7]

> **B.    Applying § 3327(d)(2) To All Veterans Who Have Used Some, But Not All Of Their Montgomery Benefits Is Consistent With, And Reinforced By, Other Provisions In The Post-9/11 Chapter**

Instead of relying on any language in § 3327—because of course there is none to rely on—Mr. Rudisill (and the court majorities who have agreed with him) turn to other provisions, outside § 3327 and outside the Post-9/11 bill entirely, to justify not applying its clear and unambiguous terms.  That approach, and resulting conclusion, is triply-wrong here.

First, as discussed above, § 3327(d)(2) explicitly identifies to whom it applies and Mr. Rudisill meets the statute's express terms.  "When the words of a statute are unambiguous … judicial inquiry is complete."  *Conn. Nat'l Bank*, 503 U.S. at 254 (citation and quotation omitted).

Second, it is a "well established canon of statutory interpretation … that the specific governs the general."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citation and quotation omitted).  Section 3695 (principally relied upon by the panel majority) applies to all veterans and all

---

[7]  Because the statute is unambiguous, there is no room for the application of the "pro-veteran" canon here as it is intended to resolve genuine ambiguities not override clear congressional directives.  But this disparate, and for some unfavorable, treatment of veterans other than Mr. Rudisill that would result from adopting his interpretation further demonstrates that the canon, even if it were applicable, would not support his reading here.

programs of education benefits; § 3322 (principally relied upon by the Veterans Court majority) applies to all veterans with Post-9/11 entitlement; but § 3327(d)(2) (ignored by both) is targeted specifically at those veterans with Post-9/11 entitlement who also have Montgomery entitlement and have used some, but not all of that Montgomery entitlement when electing to use Post-9/11 entitlement. Thus, although the universe of veterans covered by § 3327(d)(2) is broader than Mr. Rudisill or the Veterans Court would prefer—it is *not* also further limited to just veterans with a single period of qualifying service—this subsection is indisputably the most specific provision of the ones at issue in this case. To the extent there could be any conflict between § 3327(d)(2) and any of these other, more general provisions, it must control.

But third, in fact, none of these other provisions actually contradict or undermine the plain and ordinary meaning of § 3327(d)(2)'s express and unambiguous terms. To the contrary, a number of them—§§ 3322(d) & (h) in particular—actually *reinforce* the fact that § 3327 covers *all* veterans with dual Montgomery and Post-9/11 entitlement, including the ones with multiple separately qualifying periods of service. Applying § 3327(d)(2) to veterans like

Mr. Rudisill gives meaning to all of the provisions Congress enacted.[8]

> 1.     Section 3322(d) Reinforces That § 3327 Applies To All
>        Veterans With Dual Montgomery And Post-9/11 Entitlement

The Veterans Court refused to "get to" § 3327 at all in its analysis because it concluded that § 3322(d) applies only to veterans with a single period of service and that means § 3327 must also be so limited.  Appx12-13.  That conclusion gets the import of § 3322(d) to this case exactly backwards.  Although § 3327 on its own is sufficient to resolve the disputed issue in this case, § 3322(d) reinforces the fact that that is where the operative answers lie.

Section 3322(d) directs that "[i]n the case of an individual entitled to educational assistance under [Montgomery, etc. …] coordination of entitlement to educational assistance under [Post-9/11], on the one hand, and such chapters or provisions, on the other, *shall be* governed by the provisions of" what is now

---

[8] Neither the panel majority, nor the request for further *en banc* briefing mentioned § 3322(a), which was the focus of the Veterans Court's majority opinion.  Mr. Rudisill's response to our petition for rehearing did not rely on it either.  We agree with the resulting implicit conclusion: § 3322(a) is just beside the point to the disputed question here.  Even before this case, where Congress did not make an election explicitly irrevocable, *cf.* § 3327(i), the VA generally permitted veterans to switch between benefit programs on a pay-period by pay-period basis.  Thus, the ambiguity perceived by the Veterans Court never actually existed.  More fundamentally, there is also no logical connection between a bar on concurrent payment of benefits from more than one program and the question of how many months of benefits are available from any given program to begin with.  Section 3322(a)—which incidentally is *also* pointedly silent about periods of service— simply has nothing to say on the question of to whom § 3327 applies.

codified in § 3327. (emphasis added). Just like § 3327(a) and (d), this provision also identifies the subset of veterans it is addressing—veterans with dual entitlement to Post-9/11 and another enumerated program of benefits—and is pointedly silent on the number of periods of service that supports that dual entitlement. That is, § 3322(d) expressly further confirms that Congress intended *all* veterans with dual entitlement to Post-9/11 and Montgomery benefits to have and use those benefits subject to the rules set out in § 3327.

Mr. Rudisill (and the Veterans Court) respond to the express direction in § 3322(d) by claiming that veterans with multiple periods of service are not "coordinating" their benefits because the dual entitlement is supported by separate periods of service. *See* Resp. Pet. 4 (citing Appx25), 14-15. That argument distorts the plain meaning of "coordination" and turns the statute on its head. The whole dispute in this case is over what effect, if any, Mr. Rudisill's use of Montgomery benefits has on his Post-9/11 entitlement (and implicitly vice-versa, what effect his decision to use Post-9/11 benefits has on the remainder of his Montgomery entitlement)—which is precisely a question of "coordination of entitlement." The parties certainly disagree over what rules govern that coordination—although Congress was clear that they are found in § 3327—but to claim that Mr. Rudisill "did not need to … coordinat[e]" his dual entitlement at all is absurd. *Contra* Resp. Pet. 14-15.

Mr. Rudisill meets the plain terms of § 3322(d), and that statute further confirms that his entitlement to Post-9/11 benefits "shall be governed by the provisions" of § 3327. The Veterans Court erred when it added a "single period of service" limitation to both of these provisions. *See Mobil Oil Corp.*, 436 U.S. at 625; *Iselin*, 270 U.S. at 251.

### 2. Section 3322(h) Reinforces That § 3327 Applies To Veterans With Multiple Periods Of Service

Mr. Rudisill premises his narrow application of § 3327(d)(2) to just veterans with single periods of service in large part on § 3322(h). That is, he posits that the sole function of the election permitted in § 3327(a)—and consequent limit on entitlement in § 3327(d)(2)—is to *undo* the mandatory election in § 3322(h). But that view of the world is divorced from the statutory text in either provision and rests on fundamental misapprehensions about how § 3322(h) actually operates. In fact, § 3322(h) reinforces the opposite interpretation, *viz.* that § 3327 applies to all veterans including those with multiple periods of service.

Congress added § 3322(h) in the Post-9/11 Veterans Educational Assistance Improvements Act of 2010 and it became effective August 1, 2011. 111 P.L. 377, 124 Stat. at 4121. It establishes a "bar to duplication of eligibility based on a single event or period of service" and requires veterans with service "that establishes eligibility on the part of such individual for educational assistance under" Montgomery and Post-9/11 to elect "under which authority such service is

to be credited." § 3322(h). That is, the purpose and effect of § 3322(h) is that after August 1, 2011, veterans with a single period of service can only obtain either Montgomery *or* Post-9/11 benefits whereas veterans with multiple periods of service can obtain both Montgomery *and* Post-9/11 benefits.

To be clear, prior to August 1, 2011, veterans did not have to credit separate periods of active duty service to Montgomery and Post-9/11 and could obtain benefits under both programs based on the same single period of service. *See* S. Rpt. 111-346 at 19, available at https://www.congress.gov/111/crpt/srpt346/CRPT-111srpt346.pdf. As such, as we noted in our original reply brief, Mr. Rudisill is simply wrong that "[s]ince 1976, when the first programs with overlapping qualifying service criteria were enacted, every GI Bill program has required veterans to make a primary election between programs as to any individual period of qualifying service." *Contra* Pet. Resp. 11-12; *see* Reply 24-25 n.10. As stated expressly therein, the provisions from prior GI bills he cites refer to crediting *reserve*, rather than *active duty*, service.

Mr. Rudisill further appears to misunderstand when the crediting of service periods required by § 3322(h) occurs: it happens at the point where a veteran actually goes to use his or her benefits and submits an application to the VA; there is no "vested or inchoate entitlement" that the veteran must ascribe to a period of service at some earlier point. *Contra* Pet. Resp. 12-13. But once a veteran actually

applies to *use* Montgomery benefits—and credits a period of service to obtain them—§ 3322(h) prohibits using the same period of service (after August 1, 2011) from meeting the requirements to obtain Post-9/11 benefits.

Thus, what § 3322(h) demonstrates is that (a) Congress was aware of and knew how to differentiate between veterans with a single versus multiple periods of service and chose not to do so in § 3327 (or § 3322(d) for that matter), and (b) thereafter *only* veterans with multiple periods of service would have the dual entitlement to Montgomery and Post-9/11 benefits necessary to make the election under § 3327(a)(1)(A) in the first place.

Section 3327(a)(2) indisputably requires that the veteran "meet[] the requirements for entitlement to educational assistance under" Post-9/11 when electing to use those benefits. Logically it could not be otherwise; § 3327 allows veterans to choose between existing entitlements, it does not create a new entitlement. And § 3327(a)(1)(A) necessarily requires the veteran to have actually used some of his or her Montgomery entitlement while preserving that Post-9/11 entitlement. But a veteran with a single period of service subject to § 3322(h) who actually uses Montgomery benefits no longer has service to meet the requirements for Post-9/11 entitlement.

Ultimately, Mr. Rudisill, once again, gets the relationship between § 3322(h) and § 3327 exactly backwards: § 3327 exists to coordinate benefits for veterans

with dual entitlement, not to undermine the mandatory restriction of that dual entitlement in § 3322(h).  Indeed, if—as Mr. Rudisill claims—the provisions now codified in § 3327 existed only to undo the election made under § 3322(h), it would make no sense for Congress to have included them two years earlier before the election in § 3322(h) even existed.  And yet, Congress did just that:  the limit now codified in § 3327(d)(2) indisputably predates the passage of § 3322(h).  110 P.L. 252, 122 Stat. at 2377.

At the same time, if—as the Veterans Court held—§ 3327 does not apply to veterans with multiple periods of service, then the passage of § 3322(h) renders it virtually superfluous:  veterans with single periods of service can no longer meet its terms and veterans with multiple periods of service will be judicially excluded.  And yet, Congress re-enacted and codified the limitation in § 3327(d)(2) five years later without any indication that it had been rendered obsolete.  114 P.L. 315, 130 Stat. at 1556.

The only logical interpretation of these co-existing provisions and their legislative history—conveniently consistent with the statute's express terms, *see* Section II.A, above—is that § 3327(d)(2) applies to *all* veterans with dual entitlement to Montgomery and Post-9/11 benefits who have used some, but not all of their Montgomery entitlement regardless of their number of periods of service.

38

III.    The Limits In § 3327(d)(2) And § 3695(a) Are Cumulative:  § 3327(d)(2) Dictates The Maximum Portion Of The Aggregate 48 Months That Can Come From Post-9/11 For Veterans With Unused Montgomery Benefits

The Court's second question asked about the "relation between the 48-month entitlement in 38 U.S.C. § 3695(a), and the 36-month entitlement in § 3327(d)(2)" for veterans with multiple periods of qualifying service.  Order 3.  Section 3695(a) is, to be sure, another limit on a veteran's use of education benefits, but to be clear, there is no affirmative "entitlement" in § 3695(a), 48-months or otherwise.  "[U]nlike the individual benefits program chapters, Chapter 36"—where § 3695 is found—"is not a source of veterans benefits."  *Carr v. Wilkie*, 961 F.3d 1168, 1174 (Fed. Cir. 2020).  That is, unlike Chapter 33, which actually grants a finite amount of benefits (and the dispute here is how finite), § 3695(a) does not and cannot grant any benefits at all; it can only *reduce* an entitlement that must be affirmatively provided for elsewhere.

This distinction defines the relationship between § 3695(a) and the limits found in the provisions of law enumerated therein, including § 3327(d)(2).  When determining the scope of a veteran's entitlement to education benefits, the analysis must begin with the chapter that actually gives the entitlement.  And if the affirmative entitlement granted by the actual benefits chapter(s), whether a single chapter or combination of chapters, is 48 months or less, there is nothing for § 3695(a) to do.  It is only if the sum of the veteran's entitlements provided by the

39

substantive program chapters would otherwise be *more* than 48 months, that
§ 3695(a) prevents that veteran from actually receiving the full scope of that sum
beyond the first 48 months of entitlement used.

For example, there is no dispute that veterans with dual entitlement to
Montgomery and Post-9/11 benefits who exhaust their Montgomery benefits first
are not covered by § 3327(d)(2).  Nevertheless, there is also no dispute that these
veterans would not get the default 36 months of Post-9/11 benefits.  Having
already received 36 months of Montgomery, § 3695(a) restricts their entitlement to
no more than 12 months of Post-9/11.  Similarly, a veteran who uses Montgomery
and then Post-9/11 benefits for 36 months, could get no more than 12 months of
education benefits from any of the other programs identified in § 3695(a),
individually or in combination.  And conversely, a veteran who used more than 12
months of education benefits from one or more of the other programs identified in
§ 3695(a) before using Montgomery or Post-9/11 benefits, would get fewer than 36
months from these programs instead.

Ultimately, the aggregate limit imposed by § 3695(a) is cumulative to the
limits defining the affirmative grant of benefits, such as § 3327(d)(2), but it does
not guarantee any particular amount of benefits from any of the programs it lists.
That is, the maximum amount of months of Post-9/11 benefits a veteran can bring
with him or her into the 48-month container that is § 3695(a) is dictated by the

provisions of Chapter 33, including § 3327(d)(2), not the other way around.

Section 3695(a) does not change to whom § 3327(d)(2) applies and by definition

cannot grant a veteran more Post-9/11 benefits than Chapter 33, including

§ 3327(d)(2), allows.

CONCLUSION

There can be little doubt that in providing veterans with education benefits,

Congress set up a vast, complex, and integrated system of ground rules and

limitations, but the disputed statute at issue here is simple and clear.  And it is,

therefore, all the more improper, and perilous to the overall careful balance

Congress struck, for a court to add conditions found nowhere in the statutory text

as the Veterans Court did.  Put simply, the Veterans Court erred when it wrested

veterans with multiple periods of service from the very coordination provisions—

the "good" and the "bad"—that Congress enacted to address the dual entitlement

such additional service enables.

Section 3327(d)(2) expressly and unambiguously limits the statutory

entitlement to Post-9/11 benefits based on how the veteran chooses to use his or

her dual entitlement, not on how he or she earned it.[9]  For veterans who have

"used, but retain[] unused, entitlement" to Montgomery benefits when they elect to

---

[9] It is, therefore, neither surprising nor inappropriate, *contra* Resp. Br. 57-59;
Pet. Resp. 17, that veterans who make different choices about how to use their
benefits, would have different entitlements in practice.

41

use their Post-9/11 benefits, their Post-9/11 entitlement "shall be the number of months … of unused [Montgomery] entitlement." § 3327(d)(2)(A).  The Veterans Court erred when it imposed a further "single period of service" condition on the application of § 3327(d)(2) and thereby expanded Mr. Rudisill's entitlement to Post-9/11 benefits beyond the limits Congress explicitly imposed.

The decision of the Veterans Court should be reversed.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/  Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Deputy Director

OF COUNSEL

/s/  Galina I. Fomenkova
Y. KEN LEE                                  GALINA I. FOMENKOVA
Deputy Chief Counsel                        Trial Attorney
Office of General Counsel                   United States Department of Justice
U.S. Department of Veterans Affairs         Civil Division
810 Vermont Ave NW                          Commercial Litigation Branch
Washington, DC 20420                        P.O. Box 480 | Ben Franklin Station
                                            Washington, DC 20044
                                            (202) 514-5495

May 4, 2022                                 *Attorneys for the Secretary*

# ADDENDUM

---

United States Code Annotated
   Title 38. Veterans' Benefits (Refs & Annos)
      Part III. Readjustment and Related Benefits (Refs & Annos)
         Chapter 33. Post-9/11 Educational Assistance
            Subchapter III. Administrative Provisions

---

38 U.S.C.A. § 3322

§ 3322. Bar to duplication of educational assistance benefits

Currentness

**(a) In general.**--An individual entitled to educational assistance under this chapter who is also eligible for educational assistance under chapter 30, 31, 32, or 35 of this title, chapter 107, 1606, or 1607 or section 510 of title 10, or the provisions of the Hostage Relief Act of 1980 (Public Law 96-449; 5 U.S.C. 5561 note) may not receive assistance under two or more such programs concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which chapter or provisions to receive educational assistance.

**(b) Inapplicability of service treated under educational loan repayment programs.**--A period of service counted for purposes of repayment of an education loan under chapter 109 of title 10 may not be counted as a period of service for entitlement to educational assistance under this chapter.

**(c) Service in Selected Reserve.**--An individual who serves in the Selected Reserve may receive credit for such service under only one of this chapter, chapter 30 of this title, and chapters 1606 and 1607 of title 10, and shall elect (in such form and manner as the Secretary may prescribe) under which chapter such service is to be credited.

**(d) Additional coordination matters.**--In the case of an individual entitled to educational assistance under chapter 30, 31, 32, or 35 of this title, chapter 107, 1606, or 1607 of title 10, or the provisions of the Hostage Relief Act of 1980, or making contributions toward entitlement to educational assistance under chapter 30 of this title, as of August 1, 2009, coordination of entitlement to educational assistance under this chapter, on the one hand, and such chapters or provisions, on the other, shall be governed by the provisions of section 5003(c) of the Post-9/11 Veterans Educational Assistance Act of 2008.

**(e) Bar to concurrent receipt of transferred education benefits and Marine Gunnery Sergeant John David Fry Scholarship Assistance.**--An individual entitled to educational assistance under both section 3319 and paragraph (8), (9), or (10) of section 3311 of this title may not receive assistance under both provisions concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which provision to receive educational assistance.

**(f) Bar to receipt of compensation and pension and Marine Gunnery Sergeant John David Fry Scholarship Assistance.**--The commencement of a program of education under paragraph (8), (9), or (10) of section 3311 of this title shall be a bar to the following:

**(1)** Subsequent payments of dependency and indemnity compensation or pension based on the death of a parent to an eligible person over the age of 18 years by reason of pursuing a course in an educational institution.

---

**(2)** Increased rates, or additional amounts, of compensation, dependency and indemnity compensation, or pension because of such a person, whether eligibility is based upon the death of the parent.

**(g) Bar to concurrent receipt of transferred education benefits.**--A spouse or child who is entitled to educational assistance under this chapter based on a transfer of entitlement from more than one individual under section 3319 may not receive assistance based on transfers from more than one such individual concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which source to utilize such assistance at any one time.

**(h) Bar to duplication of eligibility based on a single event or period of service.**--

**(1) Active-duty service.**--An individual with qualifying service in the Armed Forces that establishes eligibility on the part of such individual for educational assistance under this chapter, chapter 30 or 32 of this title, and chapter 1606 or 1607 of title 10, shall elect (in such form and manner as the Secretary may prescribe) under which authority such service is to be credited.

**(2) Eligibility for educational assistance based on parent's service.**--A child of a member of the Armed Forces who, on or after September 11, 2001, dies in the line of duty while serving on active duty, who is eligible for educational assistance under either chapter 35 or paragraph (8), (9), or (10) of section 3311 of this title based on the parent's death may not receive such assistance under both this chapter and chapter 35 of this title, but shall elect (in such form and manner as the Secretary may prescribe) under which chapter to receive such assistance.

## CREDIT(S)

(Added Pub.L. 110-252, Title V, § 5003(a)(1), June 30, 2008, 122 Stat. 2373; amended Pub.L. 111-377, Title I, § 111(a) to (d), Title II, § 202(a), Jan. 4, 2011, 124 Stat. 4120, 4124; Pub.L. 115-48, Title I, § 105(c)(6), Aug. 16, 2017, 131 Stat. 976; Pub.L. 116-315, Title I, § 1002(b)(5), Jan. 5, 2021, 134 Stat. 4938.)

38 U.S.C.A. § 3322, 38 USCA § 3322
Current through P.L. 117-102. Some statute sections may be more current, see credits for details.

United States Code Annotated
   Title 38. Veterans' Benefits (Refs & Annos)
      Part III. Readjustment and Related Benefits (Refs & Annos)
         Chapter 33. Post-9/11 Educational Assistance
           Subchapter III. Administrative Provisions

38 U.S.C.A. § 3327

§ 3327. Election to receive educational assistance

Effective: December 16, 2016
Currentness

**(a) Individuals eligible to elect participation in post-9/11 educational assistance.**--An individual may elect to receive educational assistance under this chapter if such individual--

**(1)** as of August 1, 2009--

   **(A)** is entitled to basic educational assistance under chapter 30 of this title and has used, but retains unused, entitlement under that chapter;

   **(B)** is entitled to educational assistance under chapter 107, 1606, or 1607 of title 10 and has used, but retains unused, entitlement under the applicable chapter;

   **(C)** is entitled to basic educational assistance under chapter 30 of this title but has not used any entitlement under that chapter;

   **(D)** is entitled to educational assistance under chapter 107, 1606, or 1607 of title 10 but has not used any entitlement under such chapter;

   **(E)** is a member of the Armed Forces who is eligible for receipt of basic educational assistance under chapter 30 of this title and is making contributions toward such assistance under section 3011(b) or 3012(c) of this title; or

   **(F)** is a member of the Armed Forces who is not entitled to basic educational assistance under chapter 30 of this title by reason of an election under section 3011(c)(1) or 3012(d)(1) of this title; and

**(2)** as of the date of the individual's election under this paragraph, meets the requirements for entitlement to educational assistance under this chapter.

**(b) Cessation of contributions toward GI bill.**--Effective as of the first month beginning on or after the date of an election under subsection (a) of an individual described by paragraph (1)(E) of that subsection, the obligation of the individual to make

contributions under section 3011(b) or 3012(c) of this title, as applicable, shall cease, and the requirements of such section shall be deemed to be no longer applicable to the individual.

**(c) Revocation of remaining transferred entitlement.**--

**(1) Election to revoke.**--If, on the date an individual described in paragraph (1)(A) or (1)(C) of subsection (a) makes an election under that subsection, a transfer of the entitlement of the individual to basic educational assistance under section 3020 of this title is in effect and a number of months of the entitlement so transferred remain unutilized, the individual may elect to revoke all or a portion of the entitlement so transferred that remains unutilized.

**(2) Availability of revoked entitlement.**--Any entitlement revoked by an individual under this subsection shall no longer be available to the dependent to whom transferred, but shall be available to the individual instead for educational assistance under chapter 33 of this title in accordance with the provisions of this section.

**(3) Availability of unrevoked entitlement.**--Any entitlement described in paragraph (1) that is not revoked by an individual in accordance with that paragraph shall remain available to the dependent or dependents concerned in accordance with the current transfer of such entitlement under section 3020 of this title.

**(d) Post-9/11 educational assistance.**--

**(1) In general.**--Subject to paragraph (2) and except as provided in subsection (e), an individual making an election under subsection (a) shall be entitled to educational assistance under this chapter in accordance with the provisions of this chapter, instead of basic educational assistance under chapter 30 of this title, or educational assistance under chapter 107, 1606, or 1607 of title 10, as applicable.

**(2) Limitation on entitlement for certain individuals.**--In the case of an individual making an election under subsection (a) who is described by paragraph (1)(A) of that subsection, the number of months of entitlement of the individual to educational assistance under this chapter shall be the number of months equal to--

**(A)** the number of months of unused entitlement of the individual under chapter 30 of this title, as of the date of the election, plus

**(B)** the number of months, if any, of entitlement revoked by the individual under subsection (c)(1).

**(e) Continuing entitlement to educational assistance not available under post-9/11 educational assistance program.**--

**(1) In general.**--In the event educational assistance to which an individual making an election under subsection (a) would be entitled under chapter 30 of this title, or chapter 107, 1606, or 1607 of title 10, as applicable, is not authorized to be available to the individual under the provisions of this chapter, the individual shall remain entitled to such educational assistance in accordance with the provisions of the applicable chapter.

**(2) Charge for use of entitlement.**--The utilization by an individual of entitlement under paragraph (1) shall be chargeable against the entitlement of the individual to educational assistance under this chapter at the rate of 1 month of entitlement under this chapter for each month of entitlement utilized by the individual under paragraph (1) (as determined as if such entitlement were utilized under the provisions of chapter 30 of this title, or chapter 107, 1606, or 1607 of title 10, as applicable).

**(f) Additional post-9/11 assistance for members having made contributions toward GI bill.**--

**(1) Additional assistance.**--In the case of an individual making an election under subsection (a) who is described by subparagraph (A), (C), or (E) of paragraph (1) of that subsection, the amount of educational assistance payable to the individual under this chapter as a monthly stipend payable under paragraph (1)(B) of section 3313(c) of this title, or under paragraphs (2) through (7) of that section (as applicable), shall be the amount otherwise payable as a monthly stipend under the applicable paragraph increased by the amount equal to--

**(A)** the total amount of contributions toward basic educational assistance made by the individual under section 3011(b) or 3012(c) of this title, as of the date of the election, multiplied by

**(B)** the fraction--

**(i)** the numerator of which is--

**(I)** the number of months of entitlement to basic educational assistance under chapter 30 of this title remaining to the individual at the time of the election; plus

**(II)** the number of months, if any, of entitlement under chapter 30 of this title revoked by the individual under subsection (c)(1); and

**(ii)** the denominator of which is 36 months.

**(2) Months of remaining entitlement for certain individuals.**--In the case of an individual covered by paragraph (1) who is described by subsection (a)(1)(E), the number of months of entitlement to basic educational assistance remaining to the individual for purposes of paragraph (1)(B)(i)(II) shall be 36 months.

**(3) Timing of payment.**--The amount payable with respect to an individual under paragraph (1) shall be paid to the individual together with the last payment of the monthly stipend payable to the individual under paragraph (1)(B) of section 3313(c) of this title, or under paragraphs (2) through (7) of that section (as applicable), before the exhaustion of the individual's entitlement to educational assistance under this chapter.

**(g) Continuing entitlement to additional assistance for critical skills or specialty and additional service.**--An individual making an election under subsection (a)(1) who, at the time of the election, is entitled to increased educational assistance under section 3015(d) of this title, or section 16131(i) of title 10, or supplemental educational assistance under subchapter III of chapter 30 of this title, shall remain entitled to such increased educational assistance or supplemental educational assistance in

the utilization of entitlement to educational assistance under this chapter, in an amount equal to the quarter, semester, or term, as applicable, equivalent of the monthly amount of such increased educational assistance or supplemental educational assistance payable with respect to the individual at the time of the election.

**(h) Alternative election by Secretary.--**

**(1) In general.--**In the case of an individual who, on or after January 1, 2017, submits to the Secretary an election under this section that the Secretary determines is clearly against the interests of the individual, or who fails to make an election under this section, the Secretary may make an alternative election on behalf of the individual that the Secretary determines is in the best interests of the individual.

**(2) Notice.--**If the Secretary makes an election on behalf of an individual under this subsection, the Secretary shall notify the individual by not later than seven days after making such election and shall provide the individual with a 30-day period, beginning on the date of the individual's receipt of such notice, during which the individual may modify or revoke the election made by the Secretary on the individual's behalf. The Secretary shall include, as part of such notice, a clear statement of why the alternative election made by the Secretary is in the best interests of the individual as compared to the election submitted by the individual. The Secretary shall provide the notice required under this paragraph by electronic means whenever possible.

**(i) Irrevocability of elections.--**An election under subsection (a) or (c)(1) is irrevocable.

### CREDIT(S)

(Added Pub.L. 114-315, Title IV, § 405(a), Dec. 16, 2016, 130 Stat. 1555.)

38 U.S.C.A. § 3327, 38 USCA § 3327
Current through P.L. 117-102. Some statute sections may be more current, see credits for details.

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 38. Veterans' Benefits (Refs & Annos)
    Part III. Readjustment and Related Benefits (Refs & Annos)
      Chapter 36. Administration of Educational Benefits (Refs & Annos)
        Subchapter II. Miscellaneous Provisions (Refs & Annos)

38 U.S.C.A. § 3695

§ 3695. Limitation on period of assistance under two or more programs

Effective: October 1, 2013
Currentness

**(a)** The aggregate period for which any person may receive assistance under two or more of the provisions of law listed below may not exceed 48 months (or the part-time equivalent thereof):

**(1)** Parts VII or VIII, Veterans Regulation numbered 1(a), as amended.

**(2)** Title II of the Veterans' Readjustment Assistance Act of 1952.

**(3)** The War Orphans' Educational Assistance Act of 1956.

**(4)** Chapters 30, 32, 33, 34, and 36.

**(5)** Chapters 107, 1606, 1607, and 1611 of title 10.

**(6)** Section 903 of the Department of Defense Authorization Act, 1981 (Public Law 96-342, 10 U.S.C. 2141 note).

**(7)** The Hostage Relief Act of 1980 (Public Law 96-449, 5 U.S.C. 5561 note).

**(8)** The Omnibus Diplomatic Security and Antiterrorism Act of 1986 (Public Law 99-399).

**(b)** No person may receive assistance under chapter 31 of this title in combination with assistance under any of the provisions of law cited in subsection (a) of this section in excess of 48 months (or the part-time equivalent thereof) unless the Secretary determines that additional months of benefits under chapter 31 of this title are necessary to accomplish the purposes of a rehabilitation program (as defined in section 3101(5) of this title) in the individual case.

**(c)** The aggregate period for which any person may receive assistance under chapter 35 of this title, on the one hand, and any of the provisions of law referred to in subsection (a), on the other hand, may not exceed 81 months (or the part-time equivalent thereof).

**CREDIT(S)**

(Added Pub.L. 90-631, § 1(d)(1), Oct. 23, 1968, 82 Stat. 1331, § 1791; renumbered § 1795 and amended Pub.L. 92-540, Title III, § 316(2), Title IV, § 403(13), Oct. 24, 1972, 86 Stat. 1086, 1090; Pub.L. 96-466, Title I, § 103, Oct. 17, 1980, 94 Stat. 2187; Pub.L. 98-223, Title II, § 203(c)(2), Mar. 2, 1984, 98 Stat. 41; Pub.L. 98-525, Title VII, § 703(d), Oct. 19, 1984, 98 Stat. 2564; Pub.L. 101-237, Title IV, § 423(a)(8)(B), (b)(1)(A), Dec. 18, 1989, 103 Stat. 2092; renumbered § 3695 and amended Pub.L. 102-83, § 5(a), (c)(1), Aug. 6, 1991, 105 Stat. 406; Pub.L. 106-65, Div. A, Title V, § 551(b), Oct. 5, 1999, 113 Stat. 614; Pub.L. 107-103, Title V, § 509(d), Dec. 27, 2001, 115 Stat. 997; Pub.L. 107-107, Div. A, Title X, § 1048(i)(8), Dec. 28, 2001, 115 Stat. 1229; Pub.L. 108-375, Div. A, Title V, § 527(b)(2), Oct. 28, 2004, 118 Stat. 1894; Pub.L. 110-252, Title V, § 5003(b)(1)(B), June 30, 2008, 122 Stat. 2375; Pub.L. 112-154, Title IV, § 401(a), Aug. 6, 2012, 126 Stat. 1188.)

38 U.S.C.A. § 3695, 38 USCA § 3695
Current through P.L. 117-102. Some statute sections may be more current, see credits for details.

**End of Document**                                         © 2022 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF COMPLIANCE
## <u>PURSUANT TO FED. R. APP. P. 32(g)(1)</u>

This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1).  The brief contains 9,755 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

May 4, 2022                                  /s/  Galina I. Fomenkova
                                                 GALINA I. FOMENKOVA

                                                 *Attorney for the Secretary*